No. 18-1213

# United States Court of Appeals for the Federal Circuit

ASHFORD UNIVERSITY, LLC,

*Petitioner,*

v.

DAVID J. SHULKIN, *in his official capacity as* SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

## MOTION TO STRIKE CERTIFIED LIST, TO CORRECT ADMINISTRATIVE RECORD, AND TO SUSPEND THE BRIEFING SCHEDULE

Gerard D. Kelly
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Carter G. Phillips
   *Counsel of Record*
Kwaku A. Akowuah
Tobias S. Loss-Eaton
Daniel J. Hay
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000
Fax: (202) 736-8711

*Counsel for Petitioner Ashford University, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................ii

INTRODUCTION...............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...............................4

LEGAL STANDARD ..........................................................................9

GROUNDS FOR GRANTING THE MOTION .....................................11

I.    The Administrative Record Is Not Confined to Documents
      Viewed by One Selected Agency Official .......................................12

II.   Ashford Has Made a Clear and Substantial Showing that
      VA's Certified List Is Incomplete..................................................15

III.  VA Misstates the Scope of Ashford's Petition and Ignores
      this Court's February 15 Order Denying the Motion to Dis-
      miss...............................................................................................19

IV.   The Court Should Suspend the Briefing Schedule During the
      Pendency of this Motion.................................................................22

RELIEF SOUGHT................................................................................24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Petroleum Tankers Parent, LLC v. United States*,
    952 F. Supp. 2d 252 (D.D.C. 2013) ..................................................... 15

*Am. Wild Horse Pres. Campaign v. Salazar*,
    859 F. Supp. 2d 33 (D.D.C. 2012) ................................................ 13, 14

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
    143 F. Supp. 2d 7 (D.D.C. 2001) .......................................................... 12

*Animal Legal Def. Fund, Inc. v. Perdue*,
    872 F.3d 602 (D.C. Cir. 2017) ............................................................ 11

*Animal Legal Def. Fund v. Vilsack*,
    110 F. Supp. 3d 157 (D.D.C. 2015) .................................................... 15

*Appalachian Power Co. v. EPA*,
    208 F.3d 1015 (D.C. Cir. 2000) .......................................................... 21

*Aqua Prods., Inc. v. Matal*,
    872 F.3d 1290 (Fed. Cir. 2017) .......................................................... 16

*Bar MK Ranches v. Yuetter*,
    994 F.2d 735 (10th Cir. 1993) ............................................................ 12

*Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
    No. C05-03508 EDL, 2006 WL 708914 (N.D. Cal.
    Mar. 16, 2006) .................................................................................... 13

*Cherokee Nation v. Jewell*,
    No. 12-CV-493-GKF-TLW, 2013 WL 5329787 (N.D. Okla.
    Sept. 20, 2013) ............................................................ 13, 14, 16, 19

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) .......................................................................... 1, 9

*Clairton Sportsmen's Club v. Pa. Tpk. Comm'n*,
    882 F. Supp. 455 (W.D. Pa. 1995) .................................................. 3, 13

*Consumers Union of U.S., Inc. v. Fed. Power Comm'n*,
    510 F.2d 656 (D.C. Cir. 1974) ............................................................. 10

*Ctr. for Native Ecosystems v. Salazar*,
    711 F. Supp. 2d 1267 (D. Colo. 2010) ................................................. 13

*Cty. of San Miguel v. Kempthorne*,
    587 F. Supp. 2d 64 (D.D.C. 2008) ....................................................... 10

*Home Box Office, Inc. v. FCC*,
    567 F.2d 9 (D.C. Cir. 1977) .................................................................. 22

*Maritel, Inc. v. Collins*,
    422 F. Supp. 2d 188 (D.D.C. 2006) ..................................................... 16

*Miami Nation of Indians of Ind. v. Babbitt*,
    979 F. Supp. 771 (N.D. Ind. 1996) ...................................................... 13

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................ 16

*Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*,
    516 F.2d 1229 (D.C. Cir. 1975) ........................................................ 2, 10

*Nat'l Small Shipments Traffic Conference, Inc. v. ICC*,
    725 F.2d 1442 (D.C. Cir. 1984) ........................................................... 14

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    No. C 17-05211 WHA, 2017 WL 4642324 (N.D. Cal. Oct.
    17, 2017), *vacated on other grounds sub nom. In re United
    States*, 138 S. Ct. 443 (2017) .............................................................. 13

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    No. C 17-05211 WHA, 2018 WL 1210551 (N.D. Cal.
    Mar. 8, 2018) .......................................................................................... 6

*Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan*,
    512 F. Supp. 2d 32 (D.D.C. 2007) ....................................................... 11

*Thompson v. U.S. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) .................................................. 12

*In re United States*,
    138 S. Ct. 371 (2017) ............................................................. 20

## Statutes and Regulations

5 U.S.C. § 706 .............................................................................. 4, 9

28 U.S.C. § 2112(b) .................................................................... 10

38 U.S.C. § 3682 ......................................................................... 20

38 C.F.R. § 21.4151 ................................................................... 20

38 C.F.R. § 21.4214(k) ............................................................... 18

38 C.F.R. § 21.4215(b)(1)(iii) .................................................... 18

38 C.F.R. § 21.4250(a)(3) ........................................................... 19

## Rules

Fed. Cir. R. 17(b)(2) .................................................................... 9

Fed. R. App. P. 16(a) ................................................................. 10

Fed. R. App. P. 17(b)(1)(B) ........................................................ 9

Pursuant to Federal Rules of Appellate Procedure 16(b) and 27, Petitioner Ashford University, LLC ("Ashford") respectfully moves to strike the incomplete certified list filed by the Department of Veterans Affairs ("VA") on February 28 (Dkt. 21) and to order VA to correct the certified list to include "the full administrative record that was before [VA]." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Ashford further asks that the Court suspend the briefing schedule while considering this Motion, which VA opposes.

## **<u>INTRODUCTION</u>**

The pending Petition for Review challenges new rules adopted by VA without notice and comment, which were instead publicly announced for the first time in a letter (the "Letter") purporting to apply those rules to Ashford. VA initially moved to dismiss the Petition on jurisdictional grounds and, alternatively, asked the Court to waive the certified list requirement of Circuit Rule 17(b)(3), which locally implements a federal agency's obligation, upon service of a petition for review, to file the record on which the court's review of the petition will proceed. *See* Fed. R. App. P. 17(a). The Court denied the motion to dismiss without prejudice and ordered VA to file the certified list within 14 days.

VA's certified list, filed in response to that order, identifies just twelve documents. One is Ashford's 323-page academic catalog. The remaining 11 documents total just 36 pages. VA contends that this handful of documents comprises the full administrative record that was before VA.

In communications precipitating this Motion, Ashford identified to VA discrete, material omissions from the certified list and further raised concerns with VA's methodology for compiling the record. VA refused to reconsider the contents of the record, taking the position that the administrative record is limited only to documents directly reviewed by the specific VA official (C. Jason McClellan) who signed the Letter. According to VA, all materials reviewed or considered in connection with this matter by VA officials other than McClellan himself, are exempt.

VA's selective approach is directly contrary to the rules that govern administrative litigation. For decades, courts have emphasized that a complete administrative record must include any documents that "might have influenced the agency's decision," whether directly or indirectly. *E.g.*, *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975). In keeping with that basic rule, courts have

specifically rejected the precise approach VA has taken here, consistently holding that "[a] document need not literally pass before the eyes of the final agency decisionmaker to be considered part of the administrative record." *Clairton Sportsmen's Club v. Pa. Tpk. Comm'n*, 882 F. Supp. 455, 465 (W.D. Pa. 1995). Thus, the record is not and cannot be limited to the hand-picked documents that were presented to McClellan by other unknown VA officials. The record, rather, consists of all documents that the ***agency as a whole*** may have considered, directly or indirectly, in arriving at the interpretations of law that are stated in the Letter.

VA seeks to justify its McClellan's-eyes-only approach by insisting that the Letter is part of an adjudication and did not involve a rulemaking. VA made this same argument in its motion to dismiss. The Court denied that motion without prejudice, deeming it "more appropriate for the parties to address the issues in the briefs," and ordered VA to produce the certified list—thus deferring questions regarding the nature of VA's actions to the merits panel. Dkt. 19, at 1. The clear implication of that order was to set this case for decision on full briefing ***and*** a complete record. Moreover, VA's obligation to produce the record does not depend

on whether its action is characterized as a rulemaking (as Ashford contends) or an adjudication (as VA contends).  Either way, VA is obligated under 5 U.S.C. § 706 to identify the "whole record" of the agency's decision-making.  The Court should order VA to do exactly that.

## FACTUAL AND PROCEDURAL BACKGROUND

For nearly two years, Ashford has attempted to work with VA to ensure that veterans enrolled at Ashford receive uninterrupted access to the G.I. Bill educational benefits they earned in service to our country. During this time, Ashford has engaged in an ongoing dialogue with VA regarding Ashford's still-extant approvals by the Iowa and Arizona State Approving Agencies ("SAAs"), as well as the potential that Ashford would receive approval from yet a third SAA in California.  All the while, VA has worked behind the scenes to interfere with Ashford's G.I. Bill status—first by coercing Iowa to announce its intention to withdraw its approval (an action that has not taken place due to a stay pending litigation), then by unsuccessfully pressuring the Arizona SAA to withdraw its approval, and perhaps undertaking further, undisclosed efforts in connection with the California SAA or others.

In furtherance of this years-long, multi-state campaign, on November 9, 2017, McClellan, the Director of VA's Muskogee (Oklahoma) Regional Processing Office, informed Ashford in the Letter of VA's decision to suspend payment of G.I. Bill benefits to veteran students enrolled at Ashford.[1]  At the same time, Curtis Coy, VA's Deputy Undersecretary for Economic Opportunity, informed Ashford's approximately 5,000 veteran students of McClellan's actions.  For reasons set forth in Ashford's Petition for Review, Dkt. 1-2 ("Petition"), and Opposition to VA's Motion to Dismiss, Dkt. 15, and that will be further described in Ashford's merits briefing, the Letter and the Coy email announce agency rules that are both procedurally and substantively unlawful.

VA moved to dismiss the Petition and to waive the certified list on December 14, 2017.  Dkt. 9; *see also* Dkt. 15 (Ashford's opposition).  The core dispute in the motion-to-dismiss briefs was whether the Letter announced or amended substantive, procedural, or interpretive rules, which this Court has jurisdiction to review under 38 U.S.C. § 502, or solely commenced an adjudication.  *See* Dkt. 15, at 18–19.  On February 15, 2018,

---

[1] On December 6, 2017, VA agreed to stay the suspension of G.I. Bill benefits until the Court issues judgment in this proceeding.  Ex. A.

Chief Judge Prost denied VA's motion to dismiss without prejudice. Dkt. 19. In so doing, the February 15 order recognized that whether the Letter is a rule or an adjudication is a decision that the merits panel should decide on a full administrative record; had Chief Judge Prost agreed with VA that the Letter is necessarily an adjudication, she would have granted the motion to dismiss. *See* Dkt. 15, at 22–23 (collecting cases where the Court deferred a § 502 jurisdictional issue for the merits stage). The February 15 order also denied VA's motion for relief from the certified list requirement, and instructed VA to file the certified list within 14 days. Dkt. 19, at 2.

On February 28, VA served and filed a certified list comprising just twelve documents. *Cf. Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2018 WL 1210551, at *2 (N.D. Cal. Mar. 8, 2018) (finding it "strains credulity" that the government terminated a program "based solely on fourteen publicly available documents") (citing decisions from Second and Ninth Circuits). Those twelve documents are (1) the Letter itself, (2) the Arizona state approving agency's ("SAA") approval of Ashford's application, (3–7) correspondence between VA and the

6

Arizona SAA, (8–10) incomplete correspondence between VA and Ashford, (11) one internal agency memorandum, and (12) Ashford's academic catalog. Dkt. 21 Ex. A. Apart from the academic catalog, the record proposed by VA is just 36 pages long.

On March 8, counsel for Ashford wrote VA's litigation counsel to express concern that the certified list was materially incomplete. Ex. B. In particular, Ashford's letter noted:

- VA's certified list included correspondence between VA and Ashford dated September 13–15, 2017, but omitted Ashford's final response, dated September 18, 2017, addressing critical misstatements in VA's prior communication. Ex. C.

- VA also omitted an email and attachment from VA to Ashford on October 31, 2017, offering follow-on "comments related to discussion" between Ashford and VA on October 26, 2017. The attachment was previously submitted to the Court as Exhibit E to Ashford's opposition to VA's motion to dismiss.[2]

---

[2] In fact, none of the documents submitted in connection with the motion to dismiss briefing is included in VA's certified list.

- Finally, VA included an internal memorandum summarizing certain actions and communications concerning Ashford's approval status but did not include any documents underlying that summary.

Ex. B, at 1–2. Also missing from the certified list was the Coy email sent at or near the same time as the Letter and announcing the same rules. In light of those examples and the likelihood that other, relevant documents that were before the agency had been omitted, Ashford asked VA to amend and correct its certified list and to explain the agency's methodology for identifying relevant materials.

VA responded several days later, stating that it would not revise the certified list. VA's litigation counsel represented that the certified list "includes the entirety of the documents **considered by Mr. C. Jason McClellan** when issuing the November 9, 2017 letter that Ashford challenges." Ex. D (emphasis added). In identifying documents comprising the administrative record, VA insisted that the Letter is "part of an adjudicative determination," *id.*, despite the Court leaving that question open for the merits panel to decide on a full record, Dkt. 19. In response to particular documents missing from the certified list, VA stated that

those were left off the list because they were not provided to Mr. McClellan, even though those documents were unquestionably before and considered by VA. Ex. D. In addition, VA refused to amend the certified list to include materials that are referenced in or otherwise underlie the internal memorandum because "Mr. McClellon [*sic*] received the memorandum without additional materials." *Id.* Finally, VA stated, erroneously, that "Ashford's eligibility efforts in Iowa and California" are beyond the scope of this litigation. *Id. But see, e.g.*, Petition 7–9 (describing VA's actions designed to destroy Ashford's Iowa approval); Ex. A, at 1 (stating that applying to California would be deemed "corrective action" in response to the Letter).

## **LEGAL STANDARD**

Review of agency action is based on "the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *see Overton Park*, 401 U.S. at 420 ("review is to be based on the full administrative record"). The agency is tasked in the first instance with filing "a certified list adequately describing all documents, transcripts of testimony, exhibits, and other material constituting the record." Fed. R. App. P. 17(b)(1)(B); *see also* Fed. Cir. R. 17(b)(2). The administrative record consists of "(1) the order involved, (2)

9

any findings or report on which it is based, and (3) the pleadings, evidence, and other parts of the proceedings before the agency." Fed. R. App. P. 16(a); *see* 28 U.S.C. § 2112(b) (same); *see also Nat'l Courier Ass'n*, 516 F.2d at 1241 ("any document that might have influenced the agency's decision [is] evidence within the statutory definition").

While the agency's designation of the record is entitled to a presumption of regularity, a court of appeals has "wide latitude in correcting omissions from the agency record under review." *Consumers Union of U.S., Inc. v. Fed. Power Comm'n*, 510 F.2d 656, 661 (D.C. Cir. 1974). To rebut the presumption of regularity, the Court need only find "clear evidence that the agency's designated record is not accurate and complete." *Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 72 (D.D.C. 2008). At a minimum, the Court should not defer to the agency's identification of the record where:

> (1) The agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the … court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review.

*Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (alterations omitted).  In addition, "[w]here the administrative record as produced by the agency is not complete, a plaintiff may be entitled to discovery to identify materials that are properly part of the administrative record."  *Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan*, 512 F. Supp. 2d 32, 39 (D.D.C. 2007).

## GROUNDS FOR GRANTING THE MOTION

VA has taken the position that the "whole record" consists only of the twelve selected documents that were directly provided to McClellan (evidently by other unidentified VA officials); VA insists that these twelve documents were all he relied upon in issuing the Letter, thus nothing else need be included in the record.  Court after court, however, has rejected this myopic approach, holding that the administrative record consists of ***all*** materials ***the agency*** directly or indirectly considered.  VA does not deny that there were other documents and materials before ***the agency***. Those documents and materials are necessarily and properly part of the administrative record.

VA's narrow view of the administrative record rests on its contention that Ashford's petition challenges "an adjudicative determination."

Ex. D.  But this puts the cart before the horse.  As the Court's February 15 order makes clear, the merits panel will decide **whether** the Letter announced new rules (as Ashford argues) or is purely adjudicative (as VA contends).  VA's litigating position cannot dictate the scope of the record that the Court will have before it in deciding which side's position is correct.

## I.    The Administrative Record Is Not Confined to Documents Viewed by One Selected Agency Official.

It is fundamental that "a complete administrative record should include all materials that '**might have influenced the agency's decision**,' and not merely those on which the agency relied in its final decision." *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (emphasis added); *accord, e.g.*, *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989).  Thus, the administrative record includes "all documents and materials directly **or indirectly** considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (emphasis added).  In cases such as this, where "the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." *Amfac*, 143 F. Supp. 2d at 12.

Applying these principles, courts nationwide have long and consist-

ently held that "[a] document ***need not literally pass before the eyes

of the final agency decisionmaker*** to be considered part of the admin-

istrative record." *Clairton*, 882 F. Supp. at 465 (emphasis added).[3] These

decisions, and numerous others, reject the position that only those docu-

ments directly reviewed by the official who signed off on the challenged

agency action are part of the record. *See also, e.g.*, *Regents of Univ. of

Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL

4642324, at \*3 (N.D. Cal. Oct. 17, 2017) ("Nor is defendants' contention

that it need only produce documents directly considered by the Acting

Secretary correct."), *vacated on other grounds sub nom. In re United

States*, 138 S. Ct. 443 (2017).  Instead, a document should be included in

the administrative record if it had the potential to directly or indirectly

influence the agency's decision.

---

[3] *Accord, e.g.*, *Cherokee Nation v. Jewell*, No. 12-CV-493-GKF-TLW, 2013 WL 5329787, at \*3–6 (N.D. Okla. Sept. 20, 2013); *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275–76 (D. Colo. 2010); *Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at \*2–3 (N.D. Cal. Mar. 16, 2006); *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 777 (N.D. Ind. 1996); *see also Am. Wild Horse Pres. Campaign v. Salazar*, 859 F. Supp. 2d 33, 44 (D.D.C. 2012).

A simple hypothetical illustrates the inherent flaw in VA's McClellan's-eyes-only approach. Consider an agency rulemaking or adjudicative proceeding that elicits comments from 1,000 interested observers. Agency staffers conclude that 10 of those documents are of particular interest, and forward only those 10 to a high-ranking agency official, who then makes the final call. In the event of an administrative challenge, the court's review could not possibly be limited to the 10 selected documents. Indeed, the validity of the agency's action under the Administrative Procedure Act might well turn on its treatment of some or all of the remaining 990. *Cf. Nat'l Small Shipments Traffic Conference, Inc. v. ICC*, 725 F.2d 1442, 1451 (D.C. Cir. 1984) ("[I]f subordinates systematically eliminated from their reports all mention of record comments adverse to the agency's final action, the consideration requirement would not be satisfied unless the decisionmakers took independent steps to familiarize themselves with withheld portions of the record.").[4]

---

[4] VA takes the position that "Ashford's eligibility efforts in Iowa and California" are beyond the scope of the Petition. Ex. D. But to the extent the new rules "flowed directly" from information adduced through those other approval efforts, that information too should be part of the administrative record. *Cherokee Nation*, 2013 WL 5329787, at *6; *see also Am. Wild Horse*, 859 F. Supp. 2d at 44 (record included declarations agency

## II.    VA's Certified List Is Clearly Incomplete.

VA does not dispute that other documents were before the agency when McClellan issued the Letter, nor does VA deny that others at VA provided McClellan with an incomplete set of documents and summaries of documents and events.  Instead, VA takes the position that because McClellan ***did not personally see*** those other documents and materials, they are now outside the administrative record.  The Court should reject VA's position that the record consists only of documents that "pass[ed] before [McClellan's] eyes" and order VA to provide a complete record—or alternatively permit limited discovery to identify the whole record.

First, the record should include not only those documents that others at VA provided to McClellan, but also the documents those people considered but opted ***not*** to provide to McClellan.  An agency "may not exclude information from the record simply because it did not 'rely' on the excluded information in its final decision." *Animal Legal Def. Fund v. Vilsack*, 110 F. Supp. 3d 157, 160 (D.D.C. 2015); *see also Am. Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 261 (D.D.C.

---

discussed, but not submitted as part of public comments, because relevant decisionmakers received the declarations in separate civil litigation).

2013) (same); *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (same). "The administrative record must include not only the documents and materials the agency ultimately credits when reaching its decision, but also those that the agency **considered and rejected in reaching its final conclusion**." *Cherokee Nation v. Jewell*, No. 12-CV-493-GKF-TLW, 2013 WL 5329787, at *3 (N.D. Okla. Sept. 20, 2013) (emphasis added).

As noted above, for example, the certified list contains three letters in a four-letter exchange between VA and Ashford that took place between September 13, 2017, and September 18, 2017. Omitted from this correspondence is Ashford's final response (dated September 18, 2017), which corrects material misstatements in VA's previous letter. Ex. C. It is plainly relevant that individuals at VA elected to provide McClellan with only selected materials concerning Ashford's approval status—indeed, a decisionmaker's failure to consider all relevant information may well be dispositive of whether its action or decision was arbitrary and capricious. *See Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983); *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) (en banc) ("[A]n agency's refusal to consider evidence

bearing on the issue before it is, by definition, arbitrary and capricious ….").  Moreover, the October 31 email and attachment from Worley summarizes the give-and-take between Ashford and VA at an in-person meeting.  Whether this Court ultimately decides that meeting was part of an adjudication or a rulemaking, the email providing further comments on that meeting unquestionably represented information that was before VA that could have directly or indirectly influenced its decision.  It is troubling, to say the least, that McClellan would take the action at issue while wearing so restrictive a set of blinders, but that does not permit VA to place that same set of blinders on this Court and on Ashford.

Second, the record should include whatever documents or materials were considered by other agency officials who advised or consulted with McClellan in issuing the Letter.  While McClellan alone signed the letter, it is evident that his decision was informed by others at VA who had reviewed a wider array of documents.  Most notably, VA's certified list includes an internal memorandum summarizing the status of Ashford's approvals in Iowa and Arizona, as well as litigation in Iowa and the possibility that Ashford would apply for approval in California.  Dkt. 21 Ex. A.

The administrative record should include not only the memorandum itself but whatever documents and materials were summarized or identified in that memorandum.

Beyond the memorandum, moreover, it is clear from the record that McClellan's decision reflects input—perhaps slanted input—from other VA employees or officials. McClellan is the director of the Muskogee regional processing office, and he lacks authority to interpret—much less to promulgate or to amend—agency regulations. *See* 38 C.F.R. § 21.4215(b)(1)(iii) (director may base decision "on legal issues referred to appropriate authority"); *see also id.* § 21.4214(k) (Committee on Educational Allowances must refer legal challenges to the Office of General Counsel). That the Letter reflects policymaking input from others at VA is further reflected by the fact that the Coy and Worley emails, Dkt. 15 Exs. D & E, advance identical constructions of state authority to approve educational institutions. Either McClellan was responsible for this regulatory interpretation (which he lacked authority to issue), several officials reached identical conclusions independently, or—most likely—others at VA were responsible for crafting these rules.

### III. VA Misstates the Scope of Ashford's Petition and Ignores this Court's February 15 Order Denying the Motion to Dismiss.

VA's primary justification for its incomplete certified list is its position that "Ashford challenges the November 9, 2017 letter, which is part of an adjudicative determination." Ex. D. This position is wrong in at least two relevant ways.[5]

First, Ashford's Petition does not challenge the Letter, per se, but rather substantive and interpretive rules announced for the first time in the Letter (and moments later in the Coy email). *See, e.g.*, Petition 1 ("Ashford … petitions the Court for review of legal rules adopted by [VA] … first publicly announced in a November 9, 2017 letter that purports to enforce those same rules against Ashford ….") (emphasis omitted). Thus, the scope of Ashford's Petition is not just what went into McClellan's authorship of the Letter; it also includes whatever VA policymakers considered in arriving at the new construction of "main campus" in 38 C.F.R. § 21.4250(a)(3) or in deciding that VA has effective veto

---

[5] Additionally, for the reasons just explained, VA's justification is incorrect even on its own terms: information that may have indirectly influenced an adjudicatory decision is part of the record. *See, e.g.*, *Cherokee Nation*, 2013 WL 5329787, at *3–6.

power over SAAs notwithstanding 38 U.S.C. § 3682 and 38 C.F.R. § 21.4151.

Second, VA's insistence that the record on review is limited to an adjudicatory record begs the question. VA argued in its motion to dismiss that the Letter was an adjudicatory challenge immune from review under section 502. The Court denied that motion without prejudice—signaling that the Court would consider that characterization on a full record. The record, therefore, must permit the Court to decide *whether* VA has announced a new or amended rule, or whether VA instead has engaged purely in adjudication. VA's approach would cloud the Court's review by narrowing the record artificially, excluding all evidence that McClellan did not personally review, and thus removing evidence that may well support Ashford's position that VA's challenged actions encompass unlawful rulemaking. That should not be permitted. *See In re United States*, 138 S. Ct. 371, 372 (2017) (Breyer, J., dissenting from grant of stay) ("[J]udicial review cannot function if the agency is permitted to decide unilaterally what documents it submits to the reviewing court as the administrative record.").

And it is indisputable that VA's treatment and implementation of the statements made in the Letter are relevant to Court's determination of whether VA engaged in rulemaking.  As the D.C. Circuit classically observed, where an agency "bases enforcement actions on the policies or interpretations formulated in [a challenged] document, [or] if it leads private parties or State permitting authorities to believe that it will declare permits invalid unless they comply with the terms of the document, then the agency's document is for all practical purposes 'binding,' " and qualifies as a "rule." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020–21 (D.C. Cir. 2000).

These concerns are particularly acute in this case, where Ashford's very contention is that VA has announced new and far-reaching rules under the guise of initiating a single, private adjudication.  Because VA did not engage in any public process, and purported to act only with respect to Ashford, even Ashford has only limited visibility into what information VA considered and how it considered that information; other educational institutions, and the veterans who will make use of tuition assistance benefits, know even less about these rules, which could have profound and harmful effects on them.  VA's approach would facilitate such

clandestine rulemaking by allowing the creation of an "intolerable" situation where "there is here one administrative record for the public and this court and another for the Commission and those 'in the know.'" *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 54 (D.C. Cir. 1977) (per curiam). The Court should reject VA's attempt to limit the record to only those documents that McClellan personally reviewed. It should instead insist that "the public record … reflect what representations were made to an agency so that relevant information supporting or refuting those representations may be brought to the attention of the reviewing courts." *Id.*

## IV. The Court Should Suspend the Briefing Schedule During the Pendency of this Motion.[6]

The Court should also suspend the briefing schedule in this case until it decides whether to order VA to correct its certified list. VA conveyed, through its counsel, that it will oppose any request to alter the current briefing schedule.

In agency review cases, the briefing schedule ordinarily runs from service of the certified list, allowing a petitioner to prepare its initial brief

---

[6] Due to the impending briefing deadline, Ashford respectfully requests that the Court treat this request as a procedural motion and suspend the briefing schedule in advance of deciding the substantive aspects of the Motion. *See* Fed. R. App. P. 27(b); Fed. Cir. R. 27(h).

based on the record prepared by the agency.  Fed. Cir. Rule 31(a)(1)(B).

Here, until this motion is resolved and Ashford knows whether VA will

be ordered to correct its certified list, the state of the record will remain

unsettled.  If the parties are required to proceed with briefing under the

current schedule, and VA subsequently produces new documents in a cor-

rected certified list, obvious inefficiencies will result—one or both parties

may need to file corrected briefs addressing materials produced after the

first set of briefs was filed.

Ashford respectfully submits that the better and more efficient

course would be for the Court to suspend briefing while this motion is

pending, and then to reset the briefing schedule as it deems fit upon res-

olution of the motion.[7]  The parties will then be able to proceed to briefing

and argument on the basis of a single, settled agency record, just as the

rules and the APA contemplate.

---

[7] One approach the Court may wish to consider derives from the fact that
Ashford's opening brief is currently due in 33 days (April 30, 2018).  If
the Court grants this Motion and strikes the certified list, then it could
reset the briefing schedule in line with Rule 31(a)(1)(B), and make Ash-
ford's opening brief due 60 days after VA files its corrected certified list.
If the Court declines to order a corrected certified list, it could reset the
briefing schedule by granting Ashford the balance of the 33 days that
currently remain.

## RELIEF SOUGHT

For the foregoing reasons, the Court should strike the certified list filed on February 28, 2018; order VA to file a corrected certified list containing all documents, materials, and information that may have directly or indirectly influenced VA's construction of the regulatory term "main campus" or its newly asserted authority to veto approval decisions by SAAs; and suspend the briefing schedule during the time this Motion remains pending.

March 28, 2018

Respectfully submitted,

/s/ Carter G. Phillips
Carter G. Phillips
  *Counsel of Record*
Kwaku A. Akowuah
Tobias S. Loss-Eaton
Daniel J. Hay
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000
Fax: (202) 736-8711

Gerard D. Kelly
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Petitioner Ashford University, LLC*

# **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Appellate Procedure 15(c), I hereby certify that the foregoing motion was filed with the U.S. Court of Appeals for the Federal Circuit via CM/ECF on March 28, 2018.

/s/ Carter G. Phillips
Carter G. Phillips

## **CERTIFICATE OF COMPLIANCE**

This Motion complies with the type-volume limitations of Federal Circuit Rule 18(b) because it contains 4,780 words (as determined by the Microsoft Word 2016 word-processing system used to prepare the brief). In addition, this Motion complies with the type-face and type-style requirements set forth in Federal Rule of Appellate Procedure 27(d) because it has been prepared in a proportionally spaced typeface using the Microsoft Word 2016 word-processing system in 14-point Century Schoolbook font.

/s/  Carter G. Phillips
Carter G. Phillips

ATTACHMENT

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

ASHFORD UNIVERSITY, LLC,
*Petitioner,*

v.

DAVID J. SHULKIN, *in his*
*official capacity as*
SECRETARY OF VETERANS
AFFAIRS,
*Respondent.*

No. 18-1213

## DECLARATION OF KWAKU A. AKOWUAH

I, Kwaku A. Akowuah, declare as follows:

1.     I am a partner of the law firm Sidley Austin LLP.  I submit

this declaration in support of Ashford University, LLC's ("Ashford")

Motion to Strike Certified List, to Correct Administrative Record, and

to Suspend the Briefing Schedule.  Except as otherwise stated, the

matters set forth herein are based upon my personal knowledge, and I

could and would testify competently thereto if called upon to do so.

2.     Attached hereto as **Exhibit A** is a true and correct copy of a

letter from William Grimaldi, litigation counsel for the Department of

Veterans Affairs ("VA"), agreeing to voluntarily stay the suspension of

Ashford's G.I. Bill eligibility until the Court issues judgment in this case.

3.     On February 28, 2018, VA filed a certified list of the documents comprising the administrative record.  Dkt. 20.  Attached hereto as **Exhibit B** is a true and correct copy of a letter I sent to Mr. Grimaldi, dated March 8, 2018, raising concerns with the certified list and asking VA to explain the criteria employed to identify relevant documents.

4.     As an example, the certified list includes three letters in a four-letter exchange between VA and Ashford that took place between September 13, 2017, and September 18, 2017.  Omitted from this correspondence is Ashford's final response (dated September 18, 2017), which corrects material misstatements in VA's previous letter.   A true and correct copy of that September 18 letter is attached hereto as **Exhibit C.**

5.     Attached hereto as **Exhibit D** is a true and correct copy of Mr. Grimaldi's response to my March 8 letter, which was transmitted via email on March 12, 2018.  I have deleted from this exhibit prior

correspondence between myself and Mr. Grimaldi concerning unrelated issues.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, DC, on March 28, 2018.

_____
Kwaku A. Akowuah

# EXHIBIT A



**U.S. Department of Justice**

Civil Division

MFH:WGrimaldi
DJ No. 154-F18-32

Telephone: (202) 616-0471
william.j.grimaldi@usdoj.gov

_____

*Washington, DC 20530*

December 6, 2017

Kwaku A. Akowuah
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
kakowuah@sidley.com

  Re: *Ashford University, LLC v. Shulkin*, Fed. Cir. No. 18-1213

Dear Kwaku:

  I am writing to confirm that the Department of Veterans Affairs (VA) does not intend to suspend GI Bill educational assistance based on enrollment in Ashford's online programs at this time. As discussed in the November 9, 2017 letter sent to Ashford by VA, per the 60-day requirement in 38 U.S.C. 3690(b)(3)(B)(ii), students will be able to receive GI Bill funds based on enrollment at Ashford through January 8, 2018, regardless of Ashford's pending legal action before the United States Court of Appeals for the Federal Circuit.

  VA also intends to voluntarily stay the suspension of GI Bill eligibility that would otherwise go into effect on January 9, 2018, until judgment is issued in *Ashford University LLC v. Shulkin*, Fed. Cir. No. 18-1213. This voluntary stay is conditioned upon Ashford undertaking corrective action in accordance with 38 U.S.C. 3690(b)(3)(B)(ii) by requesting an application from the California state approving agency (SAA) to approve Ashford's online courses by December 18, 2017, submitting an application by January 8, 2018, and participating in all aspects of California's process to determine eligibility in good faith until that process is completed.

  VA further intends to request that the Federal Circuit expedite Fed. Cir. No. 18-1213 to facilitate a speedy resolution that minimizes uncertainty for veterans and their families who are using their GI Bill benefits at Ashford. For similar reasons, VA will continue the regulatory process related to the section 3690 action, of which the letter on November 9, 2017, was a part. Ashford's parent company, Bridgepoint Education, Inc., informed its investors via Security and Exchange Commission Form 8-k that, following receipt of the November 9, 2017 letter, Ashford has voluntarily declined to enroll new GI Bill students beginning November 14, 2017. VA agrees that this is a prudent course and encourages Ashford to continue this restriction throughout the pendency of the voluntary stay.

VA greatly appreciates Ashford's attempts to minimize the impact on future GI Bill students, to include voluntarily declining to enroll new GI Bill students until resolution of the issue and filing an application for approval of its online programs with the California SAA.

Best,

/s/William J. Grimaldi
WILLIAM J. GRIMALDI
Senior Trial Attorney

# EXHIBIT B

**SIDLEY**

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

KAKOWUAH@SIDLEY.COM
+1 202 736 8739

March 8, 2018

**VIA EMAIL**

William J. Grimaldi
Senior Trial Counsel
U.S. Department of Justice
Civil Division – Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

Re: *Ashford University, LLC v. Shulkin, No. 18-1213 (Fed. Cir.)*

Dear Bill,

I write to raise with you the subject of the certified list you filed last week, which I am concerned is materially incomplete.

I trust you will agree that the agency record in an administrative review case must reflect all documents and materials that the agency directly or indirectly considered in relation to the challenged agency action. *See generally Citizens to Protect Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971).

The certified list you have filed is very brief. It contains just twelve documents, including the November 9, 2017 letter at the heart of this case. While your certified list contains some correspondence between the Department of Veterans Affairs (VA) and Ashford, key pieces of that correspondence are missing. For example, Documents 8, 9, and 10 on the certified list reflect a series of letters exchanged between Ashford and VA on September 13, 2017, September 14, 2017, and September 15, 2017, respectively. Omitted, however, is a September 18, 2017 letter from Ashford's Iowa counsel, Angel A. West, to Robert M. Worley, a VA official with direct responsibility for VA's actions toward Ashford. Ms. West's September 18, 2017 letter responds directly to VA's September 15, 2017 letter (Document 10) and corrects misstatements made therein regarding Iowa law and procedure. Also absent from the certified list is an email, with attachment, that was sent by Mr. Worley to Ashford Executive Vice President Vickie Schray on October 31, 2017. The attachment to that email was filed with the court as Exhibit E to Ashford's opposition to VA's motion to dismiss. Indeed, all five documents that were attached as exhibits to Ashford's opposition are absent from the certified list. Moreover, although Document 11 on the certified list makes clear that VA considered the history of VA's efforts to secure the compelled withdrawal of Ashford's Iowa approval and force Ashford to obtain approval in California, the

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

William J. Grimaldi
March 8, 2018
Page 2

certified list does not contain documents reflecting VA's communications with Iowa or California officials, or reflecting VA's actions with regard to Ashford's Iowa approval or California applications.

In the circumstances, I must ask you to confer with your client about whether the certified list should be revised and supplemented. Please also state what criteria have been used to search agency files for materials that are properly part of the part of the record and prepare the certified list, so my client can have assurance that all necessary and appropriate materials have been disclosed and made amenable to judicial review.

As you know, Federal Circuit Rule 30(b) generally requires a petitioner, in the absence of agreement, to serve a designation of materials from which the appendix will be prepared and a statement of the issues to be presented for review within 14 days after service of the certified list. I would suggest that we mutually agree to extend that service date by an additional 14 days to allow time for resolution of questions regarding the certified list.

Should you have any questions, please feel free to contact me. I look forward to your timely response.

Best regards,

Kwaku A. Akowuah

KAA/lmt

# EXHIBIT C



ANGEL A. WEST

Direct Number: (515) 283-3127| Facsimile: (515) 283-3108 | E-Mail: aaw@nyemaster.com
700 Walnut, Suite 1600 | Des Moines, IA 50309-3899 | (515) 283-3100

Attorneys at Law | Offices in Des Moines, Ames and Cedar Rapids

www.nyemaster.com

September 18, 2017

**VIA E-Mail and U.S. Mail**
Robert M. Worley, II
Director, Education Service
Veteran Benefits Administration
Washington, DC 20420

   RE: *Ashford University, LLC et al. v. Iowa Department of Education et al.*
     NO. EQCE080188

Dear Mr. Worley,

   We are counsel for Ashford University in the above-captioned matter. This letter is written in partial response to your letter dated September 15, 2017, directed to Bobbye Stull (the "Letter"). Therein, you appear to take the position that the supersedeas bond filed by Ashford University on August 25, 2017, is ineffective to stay proceedings in this matter pending final adjudication of the appeal by the Supreme Court of Iowa. Your position is incorrect, contravenes Iowa law and the Iowa Rules of Appellate Procedure, and reveals a fundamental misunderstanding of the current posture of this matter – to which, of course, the Department of Veterans Affairs ("VA") is not even a party.

   First, Iowa Rule of Appellate Procedure 6.601(1) speaks to situations where an appeal stays proceedings under a judgment or order. See Iowa R. App. P. 6.601(1). Under that rule, "no appeal shall stay proceedings under a judgment or order unless the appellant executes a bond with sureties, to be filed with and approved by the clerk of court where the judgment or order was entered." *Id.*

   On August 25, 2017, Ashford University posted a cash bond in the amount of $1,000.00. *See* Iowa R. App. P. 6.601(2). The Clerk of Court accepted this amount of the bond and issued a receipt. The Clerk of Court's acceptance of the bond is approval of the sureties. The Clerk of Court has the ability to reject the posting of the bond but did not do so in this case. The Clerk's approval of the bond satisfies Iowa Rule of Appellate Procedure 6.601(1). Moreover, the Clerk has issued an order staying the proceedings and judgment pending the appeal. See the enclosure.

   More importantly, your letter indicates that you are under the misimpression that the Court's ruling resulted in the Iowa SAA withdrawing its approval. This is factually and legally incorrect. This matter is currently on appeal, and the Assistant Attorney General handling this matter on behalf of the Iowa SAA has advised Ashford's counsel that no action would be taken pending the post-ruling motions and appeal.

Robert M. Worley, II
September 18, 2017
Page 2

As a result, even if a supersedeas bond had not been filed, the position taken in your Letter that Ashford University's approval has been withdrawn would still be incorrect. Consistent with the Assistant Attorney General's representation and the Clerk's order, the Iowa SAA has taken no further action to attempt to withdraw its approval of Ashford University.

We trust that this letter satisfies your concerns regarding whether this matter is currently stayed.

Very truly yours,

Angel A. West

Angel A. West

Encl.

Cc:

Curtis Coy (via e-mail w/ encl)
James Ruhlman (via e-mail w/ encl)
Bryan Thompson (via e-mail w/ encl)
Bobbye Stull (via e-mail w/ encl)
Vickie Schray (via e-mail w/ encl)
Gerard Kelly (via e-mail w/ encl)
Diane Thompson (via e-mail w/ encl)

E-FILED  2017 SEP 18 8:11 AM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

MICHAEL BLACKWELL
ASHFORD UNIVERSITY LLC

      Plaintiff

v.

IOWA STATE APPROVING AUTHORITY
IOWA DEPARTMENT OF EDUCATION

      Defendant

Case No. 05771  EQCE080188

**Notice Re: Posting of Appeal Bond**

**Charge(s):**

Petition for Judicial Review is denied. Plaintiff posting appeal bond to stay case.
Notice is hereby given to the Court that bond has been posted in the above entitled matter.

**Bond Type:** CASH

**Posted in Polk County**

**Bond Amount:** $1000.00

**Posted By:** Matthew Eslick, ,

The proceedings and judgment are stayed due to an appeal.

\* \* \* \* \* \* \* \* \* \*

The  is hereby notified to discharge the above named defendant from custody in regard to the above named charge(s) as sufficient bail has been posted in this case.

Dated: 09/18/2017

/s/ Jennifer Tietjen

E-FILED  2017 SEP 18 8:11 AM POLK - CLERK OF DISTRICT COURT



**Clerk of District Court/Designee**
**POLK County Iowa**

# EXHIBIT D

| | |
|---|---|
| **From:** | Grimaldi, William J (CIV) |
| **To:** | Akowuah, Kwaku |
| **Cc:** | Phillips, Carter G.; Kelly, Gerard D.; Loss-Eaton, Tobias; Hay, Daniel |
| **Subject:** | RE: Ashford v. Shulkin, No. 18-1213 |
| **Date:** | Monday, March 12, 2018 12:01:22 PM |

Kwaku,

Thank you for your letter.  We will  not be revising the index in this matter.  As we explained in our index notice and motion to dismiss, Ashford challenges the November 9, 2017 letter, which is part of an adjudicative determination.  The index thus includes the entirety of the documents considered by Mr. C. Jason McClellan when issuing the November 9, 2017 letter that Ashford challenges.

I have confirmed with VA that Mr. McClellon was not provided the September 18, 2017 letter and October 31, 2017 email for consideration in his decision.  Nor was Mr. McClellon provided the five documents comprising of the attachments to Ashford's response to the motion to dismiss.  In fact, two of these attachments post-date both the challenged November 9, 2017 letter and Ashford's petition.  Regarding Document 11, the September 19, 2017 internal VA memorandum, Mr. McClellon received the memorandum without additional materials that you identify as referenced within it.

Further, we are confused as to the nature of some of your requests.  Specifically, some of the documents you identify appear to focus on Ashford's eligibility efforts in Iowa and California.  The sole focus of the November 9, 2017 letter, however, is Ashford's eligibility efforts in Arizona.  We are thus concerned that Ashford intends to broaden the scope of its petition.

At this point, we consider the index to be complete and all questions regarding it to be resolved.  We are, however, happy to continue discussions regarding designation of documents.

Thank you,

Bill

**William J. Grimaldi**
Senior Trial Counsel
U.S. Department of Justice
Civil Division - Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 616-0471
Fax : (202) 514-8624
william.j.grimaldi@usdoj.gov

**For overnight mail, please use:**
1100 L Street, N.W., Room 9110
Washington, D.C. 20005

---

**From:** Akowuah, Kwaku [mailto:kakowuah@sidley.com]
**Sent:** Thursday, March 08, 2018 7:59 PM
**To:** Grimaldi, William J (CIV) <WGrimald@civ.usdoj.gov>
**Cc:** Phillips, Carter G. <cpphillips@sidley.com>; Kelly, Gerard D. <gkelly@sidley.com>; Loss-Eaton, Tobias <tlosseaton@sidley.com>; Hay, Daniel <dhay@sidley.com>
**Subject:** RE: Ashford v. Shulkin, No. 18-1213

Bill,

Please see the attached correspondence concerning the certified list filed on February 28.

Best regards,
Kwaku

**KWAKU A. AKOWUAH**

**SIDLEY AUSTIN LLP**
+1 202 736 8739
kakowuah@sidley.com