No. 18-1213

# United States Court of Appeals for the Federal Circuit

---

Ashford University, LLC,

*Petitioner,*

v.

Secretary of Veterans Affairs,

*Respondent.*

---

## PETITIONER'S REPLY BRIEF

---

Gerard D. Kelly
Sidley Austin llp
1 South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Carter G. Phillips
*Counsel of Record*
Kwaku A. Akowuah
Tobias S. Loss-Eaton
Daniel J. Hay
Sidley Austin llp
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000
Fax: (202) 736-8711

*Counsel for Petitioner Ashford University, LLC*

# CERTIFICATE OF INTEREST

Counsel for Petitioner Ashford University, LLC, certifies the following:

1.    The full name of every party represented by me is:

**Ashford University, LLC.**

2.    The name of the real party in interest represented by me is:

**Ashford University, LLC.**

3.    All parent corporations that own 10 percent or more of the stock of the party represented by me are:

**Zovio Inc**

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

**N/A.**

5.    A statement of related cases is set forth at page 7 of Ashford's Opening Brief.

Dated:  May 3, 2019                    By:    <u>/s/ Carter G. Phillips</u>
                                              Carter G. Phillips
                                              *Counsel for Ashford University, LLC*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................... i

TABLE OF AUTHORITIES ...................................................... iii

INTRODUCTION ..................................................................... 1

ARGUMENT ........................................................................... 6

    I.    THIS COURT HAS JURISDICTION TO REVIEW VA'S
        IMPROPER RULEMAKING. ................................................. 6

        A.    It Does Not Matter Whether The Letter Was Part Of
            An Adjudication. ............................................................ 8

        B.    The Letter's Legal Interpretations Are Generally
            Applicable, Binding, And New. .................................... 12

        C.    Policy Considerations Support Ashford's Arguments
            And Undermine VA's Position....................................... 17

    II.   THE NEW RULES ANNOUNCED IN VA'S LETTER ARE
        PROCEDURALLY AND SUBSTANTIVELY INVALID. ...... 19

        A.    Congress Expressly Prohibited VA From Overruling
            SAAs' Approval Decisions............................................. 19

        B.    VA's Letter Amends A Prior Legislative Rule Without
            Notice And Comment.................................................... 23

        C.    Even If It Is Interpretive, VA's New "Main Campus"
            Rule Is Arbitrary And Capricious. ............................... 32

CONCLUSION ....................................................................... 35

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Airlines, Inc. v. Civil Aeronautics Bd.*,
    359 F.2d 624 (D.C. Cir. 1966) ................................................ 14

*Am. Mining Cong. v. Mine Safety & Health Admin.*,
    995 F.2d 1106 (D.C. Cir. 1993) ........................................... 25

*Appalachian Power Co. v. EPA*,
    208 F.3d 1015 (D.C. Cir. 2000) ........................... 4, 15, 16, 28

*In re Application of United States*,
    45 F. Supp. 3d. 1 (D.D.C. 2014) ............................................ 6

*Batterton v. Marshall*,
    648 F.2d 694 (D.C. Cir. 1980) .............................................. 16

*Coal. for Common Sense in Gov't Procurement v. Sec'y of
    Veterans Affairs*,
    464 F.3d 1306 (Fed. Cir. 2006) ...................................... 11, 27

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) .......................................................... 33

*Gray v. Wilkie*,
    875 F.3d 1102 (Fed. Cir. 2017), *cert. granted*, 139 S. Ct.
    451 (2018) ...................................................................... 4, 18

*Hilario v. Sec'y, Dep't of Veterans Affairs*,
    937 F.2d 586 (Fed. Cir. 1991) ............................................... 9

*Morton v. Ruiz*,
    415 U.S. 199 (1974) ............................................................... 1

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut.
    Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................ 34

*N.Y. State Comm'n on Cable Television v. FCC*,
    749 F.2d 804 (D.C. Cir. 1984) ............................................................... 11

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
    417 F.3d 1272 (D.C. Cir. 2005) ........................................................ 9, 10

*Nat'l Family Planning & Reproductive Health Ass'n, Inc. v.*
    *Sullivan,*
    979 F.2d 227 (D.C. Cir. 1992) ............................................................... 27

*Nat'l Mining Ass'n v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014) ............................................................... 28

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans*
    *Affairs,*
    260 F.3d 1365 (Fed. Cir. 2001) ............................................................. 27

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans*
    *Affairs,*
    330 F.3d 1345 (Fed. Cir. 2003) ................................................... 4, 7, 19

*Nielsen v. Preap*,
    139 S. Ct. 954 (2019) ............................................................................. 30

*NLRB v. Wyman-Gordon Co.*,
    394 U.S. 759 (1969) .......................................................... 3, 9, 10, 12

*Perez v. Mortg. Bankers Ass'n*,
    135 S. Ct. 1199 (2015) .................................................... 2, 25, 26

*Safari Club Int'l v. Zinke*,
    878 F.3d 316 (D.C. Cir. 2017) ........................................................ 10, 12

*Salmon Spawning & Recovery All. v. U.S. Customs & Border*
    *Prot.,*
    550 F.3d 1121 (Fed. Cir. 2008) ............................................................. 24

*Seacoast Anti-Pollution League v. Costle*,
    572 F.2d 872 (1st Cir. 1978) ................................................................. 11

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) ................................................................... 24

*Shalala v. Guernsey Mem'l Hosp.*,
  514 U.S. 87 (1995) ................................................................... 26

*Snyder v. Sec'y of Veterans Affairs*,
  858 F.3d 1410 (Fed. Cir. 2017) .................................... 3, 8, 12

*Sprint Corp. v. FCC*,
  315 F.3d 369 (D.C. Cir. 2003) ............................................... 28

*Stern v. Marshall*,
  564 U.S. 462 (2011) ................................................................... 6

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) ................................................................... 21

*United States v. E-Gold, Ltd.*,
  550 F. Supp. 2d 82 (D.D.C. 2008) ........................................ 30

*United States v. Lachman*,
  387 F.3d 42 (1st Cir. 2004) ................................................... 17

*Util. Air Regulatory Grp. v. EPA*,
  573 U.S. 302 (2014) ................................................................ 29

*Wyeth Holdings Corp. v. Sebelius*,
  603 F.3d 1291 (Fed. Cir. 2010) ............................................ 32

## Statutes and Regulations

5 U.S.C.   § 551 ................................................................. 10, 11, 14

   § 552(a)(1) ............................................................. 1

   § 553 ............................................................................. 2

   § 706(2) ................................................................... 23

38 U.S.C. § 502 ........................................................................ 4

   § 3672 ............................................................ 2, 5, 21

§ 3673....................................................................... 2, 5, 22, 23

§ 3682................................................................... 2, 19, 22, 23

§ 3690(b)(3)(A) ................................................................ 20

38 C.F.R. § 21.4151(b) ..................................................... 2, 5, 22

§ 21.4250.................................................................. 2, 23, 24

§ 21.4266...................................................................... 23, 30

Proposed Rule, 71 Fed. Reg. 9196 (Feb. 22, 2006)................................. 31

Withdrawal of Proposed Rule and Promulgation of a New
  Proposed Rule, 71 Fed. Reg. 9052 (Feb. 22, 2006) ........................... 31

Proposed Rule, 68 Fed. Reg. 38,657 (June 30, 2003)............................. 30

# **INTRODUCTION**

VA contends that its November 9, 2017 letter (the "Letter") "contains no new or amended rules, but simply applied existing law to the facts of the Arizona SAA's approval of Ashford's course." VA Br. 35. If that were true, VA would be able to identify at least one instance, in one public document, where it previously articulated the legal interpretations stated in the Letter.

VA cannot do so, because there is none. It has *never* published the interpretations that it now seeks to enforce against Ashford, contrary to 5 U.S.C. § 552(a)(1) and the bedrock rule that "administrative policies affecting individual rights and obligations [must] be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished *ad hoc* determinations." *Morton v. Ruiz*, 415 U.S. 199, 232 (1974). A legal rule must be made—and made properly—before the government can punish a violation of that rule. In three respects, the unannounced rules that VA claims Ashford broke were not properly crafted.

*First,* VA asserted that it may nullify an approval issued by a state approving agency (SAA) based on an unpublished interpretation of federal law. Appx0001, Appx0003. As the opening brief demonstrates (at 32–36), that assertion is incompatible with controlling provisions that give SAAs the power to approve and prohibit VA from "exercis[ing] any supervision or control, *whatsoever*, over any [SAA], *see* 38 U.S.C. §§ 3672(a), 3673(a), 3682; 38 C.F.R. § 21.4151(b).

*Second*, VA interpreted "main campus," in 38 C.F.R. § 21.4250(a)(3) as being "defined in 38 C.F.R. § 21.4266(a)(3)." Appx0001–0002. As explained (Br. 36–42) that interpretation effectively amends both above-mentioned regulations without notice and comment, contrary to required APA procedure, *see* 5 U.S.C. § 553; *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199 (2015).

*Third*, this same regulatory interpretation is arbitrary and capricious because VA neither acknowledged the change it embodies nor provided a reasoned justification for that change. Br. 42–45.

VA's brief fails to refute these points. As often happens when the federal government's position lacks substantive merit, VA primarily contends that the Court lacks jurisdiction to review its legal interpretations

(VA Br. 21–35), and only then that those interpretations are valid (*id.* at 35–52).  On both counts, VA is wrong.

### *Jurisdiction*

VA's main contention is that § 502 bars review because the Letter was "part of an individualized adjudication." VA Br. 24.  But the Court rejected this argument in *Snyder v. Secretary of Veterans Affairs*, which reviewed a legal interpretation issued during an adjudication—and did so while the underlying dispute "remain[ed] pending before the Board [of Veterans' Appeals]."  858 F.3d 1410, 1412–13 (Fed. Cir. 2017).  *Snyder* correctly holds that whether a legal interpretation is a reviewable "rule" depends on its character and effect, not on whether it was announced in an adjudication.  *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) (plurality opinion) (APA's "rule-making provisions … may not be avoided by the process of making rules in the course of adjudicatory proceedings.").  *Snyder* held VA's interpretation reviewable because it was "binding"—specifically, on officials *inside* VA. *See* 858 F.3d. at 1412–13.

Here, too, the Court has jurisdiction because VA treated its legal interpretations as binding—this time on parties *outside* VA.  By bringing an *enforcement action* that seeks to punish Ashford and the Arizona SAA

for failing to comply with the Letter's new interpretations, VA made those new interpretations binding. Its action is thus one to which "section 552(a)(1) … of title 5 … refers," 38 U.S.C. § 502, and to which section 553 likewise refers, *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020–21 (D.C. Cir. 2000).

The enforcement context also answers VA's assertion that Ashford's position would extend jurisdiction over "more than one million annual claims for benefits that VA adjudicates … outside the context of the GI Bill." VA Br. 35. Not so. When an agency uses a new interpretation to punish, it clearly treats its interpretation as binding. Nothing remotely similar occurs when VA processes routine benefits claims. To the contrary, as this Court knows, the legal interpretations relevant to those claims are compiled in manuals that bind VA adjudicators; whether changes to those manuals are reviewable under § 502 is the subject of a different case. *See Gray v. Wilkie*, 875 F.3d 1102 (Fed. Cir. 2017), *cert. granted*, 139 S. Ct. 451 (2018).

VA's transparent attempt to invoke the "slippery slope" has no merit, and would disserve § 502's goal of facilitating "preenforcement review of agency rules," *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of*

*Veterans Affairs*, 330 F.3d 1345, 1347 (Fed. Cir. 2003) ("*NVA*"), by deny-

ing this Court jurisdiction to review unpublished legal interpretations

that VA seeks to enforce, contrary to section 552(a)(1)'s command.

### *Merits*

VA does not dispute that controlling statutes and regulations

(1) grant SAAs authority to "[d]etermin[e] those courses which may be

approved for the enrollment of veterans and eligible persons," 38 C.F.R.

§ 21.4151(b); (2) authorize SAAs to carry out their approval authority un-

der such "regulations and policies as *the State approving agency may*

*adopt*," 38 U.S.C. § 3672(a) (emphasis added); (3) assign "definite duties,

functions, and responsibilities upon the Secretary and each [SAA]," re-

spectively, *id.* § 3673(a), and (4) mandate that "*[e]xcept as provided in*

*section 3674 of this title*, no department, agency, or officer of the United

States, in carrying out this chapter, shall exercise any supervision or con-

trol, *whatsoever*, over any [SAA]." *Id.* § 3682 (emphases added).  But VA's

interpretation gives these provisions no meaningful weight—which ex-

plains how VA arrives at the implausible position that § 3690 authorizes

it to review every SAA approval decision *de novo*, creating just the "su-

pervision or control" over state officials that Congress prohibited.  *Cf.*

*Stern v. Marshall*, 564 U.S. 462, 515 (2011) (Breyer, J., dissenting) ("Article III judges control and supervise the bankruptcy court's determinations" by "review[ing] all determinations of law *de novo.*"); *In re Application of United States*, 45 F. Supp. 3d. 1, 5 (D.D.C. 2014) (same concerning magistrate judges).

VA's remaining arguments ignore the APA's strictures. If an agency proposes and adopts a regulatory definition through notice and comment that expressly applies only in one section and does not change SAA jurisdictional authority, it cannot later "interpret" the definition as applying to other sections and conclusive of SAA jurisdiction. To change the regulation, the agency must go back through notice and comment, which VA did not do. In all events, the APA requires an agency to *acknowledge* and *explain* its change of position. VA did neither. For these reasons, the legal interpretations stated in the Letter are unlawful and should be vacated.

## **ARGUMENT**

## I.   **THIS COURT HAS JURISDICTION TO REVIEW VA'S IMPROPER RULEMAKING.**

It is common ground that section 502 empowers this Court to review VA's creation and amendment of rules, *see* Br. 46–47; VA Br. 18–19,

and to conduct "preenforcement review" of such rules.  *NVA*, 330 F.3d at 1347.

That "preenforcement review" necessarily encompasses the power to review the unpublished interpretations of federal law that the Letter seeks to enforce against Ashford, just as it includes power to review new rules that VA properly publishes.  Otherwise, VA would have a strong disincentive to write down and to publish the rules it intends to enforce.  Publication would permit judicial review that VA could otherwise avoid.

As explained (Br. 47–50), the legal interpretations that VA has enforced fit comfortably within the APA's definition of "rule," and the matters to which section 552(a)(1) and section 553 each "refer," precisely because VA has treated them as binding on "Ashford, the Arizona SAA, and the GI Bill students attending Ashford."  VA Br. 30.  Legal interpretations that underlie an enforcement action that seeks to punish a private educational institution, nullify the official act of a State government, put at risk the GI Bill benefits of approximately 5,000 veteran student (Pet. 12), and indirectly threaten the GI Bill benefits of another 6,000 active-duty military students (*id.*) easily qualify as APA "rules."

In response, VA contends that because the Letter "was issued to Ashford as part of an individualized adjudication," it cannot support section 502 jurisdiction. VA Br. 24. And VA argues that the Letter cannot contain reviewable rules because it was sent only to Ashford. *Id.* at 30, 32. These arguments are mistaken.

## A.    It Does Not Matter Whether The Letter Was Part Of An Adjudication.

VA says the "threshold" jurisdictional question "is whether VA's Cure Letter was [part of] a rulemaking or an adjudication." VA Br. 21. In VA's view, if the Letter was part of an adjudication, it is *per se* not reviewable. *Id.* That is wrong, as *Snyder* shows. There, this Court exercised § 502 jurisdiction to review a VA legal interpretation adopted during an adjudication that was "pending before the Board" of Veterans' Appeals when the Court acted. 858 F.3d at 1412. The Court focused on the legal force and effect of the VA General Counsel's interpretation, concluding that it "*readily falls within the broad category of rules and interpretations encompassed by § 552(a)(1)(D)*" because it is a "formal agency action that is binding on the Board." *Id.* at 1412–13 (emphasis added).

*Snyder* thus rejected VA's premise here. That the interpretation was "part of an adjudication" does not matter.[1]

The key question under *Snyder*, and the decisions of the D.C. Circuit and other courts, is not whether the agency's process "fits the APA's definition of adjudication," but whether that process produces an agency statement that "fits within the APA's definition of 'rule.'" *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1284–85 (D.C. Cir. 2005). Agencies may choose "whether to proceed by rule or adjudication, but 'rules is rules,' no matter their gloss." *Id.*

The Supreme Court's decision in *NLRB v. Wyman-Gordon Co.* confirms that conclusion. There, as part of an adjudication, the agency "purported to establish [a] general rule." 394 U.S. at 763 (plurality opinion).

---

[1] VA (at 34) characterizes *Hilario v. Secretary, Department of Veterans Affairs*, 937 F.2d 586, 589 (Fed. Cir. 1991), as holding that this Court may not review "individualized decisions" under § 502. *Hilario* does not say that. There, a *pro se* petitioner sought *solely* "to challenge the VA's *application* of the veterans' benefits statutes to the facts of his particular claim." *Id.* He did not allege that "any VA rule making was without observance of procedure required by law" or "any VA rule or regulation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 588. Ashford, in contrast, has raised precisely those APA claims.

Nonetheless, because the agency's statement satisfied the APA's definition of a "rule," *id.* at 763–64 & n.2, it had to comply with the APA's rulemaking provisions, *even though* the agency "promulgated it [in a] … proceeding[ ] in which the requirements for valid adjudication had been met," *id.* at 765.  As the plurality and the dissenters agreed, "it is no answer to say that the order under review was 'adjudicatory.'"  *Id.* at 777 (Douglas, J., dissenting); *see also id.* at 780–81 (Harlan, J., dissenting).  Put another way, "[a]n agency may not escape the [rulemaking] requirements of § 553 by labeling its rule an 'adjudication.'"  *Safari Club Int'l v. Zinke*, 878 F.3d 316, 332 (D.C. Cir. 2017); *Nat'l Ass'n of Home Builders*, 417 F.3d at 1284–85 (similar).

This follows from the structure of the APA itself.  The Act defines "adjudication" by reference to rules and rulemaking.  An "adjudication" is the "agency process for the formulation of an order"; an "order" is "a final disposition … in a matter *other than rule making*"; and "rule making" is the "agency process for formulating, amending, or repealing a rule."  5 U.S.C. § 551(5)–(7) (emphasis added).  Thus, an agency proceeding is an "adjudication" free from the APA's rulemaking requirements

*only* to the extent it does not "formulat[e], amend[], or repeal[] a rule." *Id.*

VA's cases are not to the contrary. They confirm that courts *first* ask whether the agency's action qualifies as a rule. *E.g.*, *Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872, 875 n.4 (1st Cir. 1978) ("Since the determination is not a rule, it is an order.") (cited at VA Br. 25). And while they reflect that agencies generally have broad discretion "to proceed by rulemaking or adjudication," *N.Y. State Comm'n on Cable Television v. FCC*, 749 F.2d 804, 815 (D.C. Cir. 1984) (cited at VA Br. 26), agencies remain subject to the APA's rulemaking requirements *whenever* they create, amend, or repeal a rule—including during an adjudication. *See Nat'l Ass'n of Home Builders*, 417 F.3d at 1284–85.

Likewise, VA continues to misread *Coalition for Common Sense in Government Procurement v. Secretary of Veterans Affairs*, 464 F.3d 1306 (Fed. Cir. 2006). To be sure, the Court noted that the "Dear Manufacturer" letter at issue there "was not written as part of an adjudicative process." *Id.* at 1317 (quoted at VA Br. 24). But the Court did not suggest that an agency statement that *was* "part of an adjudicative process" would be unreviewable even if it met the APA's definition of a rule. *See*

11

Br. 51. And while VA emphasizes *Coalition*'s holding that this Court "does not have jurisdiction to review orders pursuant to section 502" (VA Br. 22, 28), it concedes that the Letter is not itself an "order." *See id.* at 25. The Court's inability to review "orders" under section 502 is thus irrelevant—a point that *Snyder* illustrates by making clear that this Court can review legal interpretations under § 502 separate from the result of an underlying adjudication. *See* 858 F.3d at 1413.

VA's insistence that it conducted an adjudication "pursuant to the statutory grant of authority in section 3690" (VA Br. 23–24, 26–27), thus "misses the point," *Wyman-Gordon*, 394 U.S. at 765 (plurality opinion). The APA's "rule-making provisions … may not be avoided by the process of making rules in the course of adjudicatory proceedings." *Id.* at 764. Any agency action that "satisfies the APA's definition of a rule" is subject to those provisions, *Safari Club*, 878 F.3d at 332, and reviewable here.

## B.   The Letter's Legal Interpretations Are Generally Applicable, Binding, And New.

VA fares no better in arguing that the Letter cannot state "interpretations of general applicability" with "future effect" because it "is specific to Ashford." VA Br. 30–32. That argument erroneously conflates the Letter itself with the legal prescriptions stated in the Letter. The

*Letter* was "addressed [and] sent" only to Ashford and the Arizona SAA. *Id.* at 24. But the legal propositions in dispute—whether VA may override a State's GI Bill approval, and whether the term "main campus" in § 21.4250 means the same thing as in § 21.4266—are in no way "specific to Ashford." They reflect VA's (erroneous) interpretations of a generally applicable statutory and regulatory regime. *See* VA Br. 4–6, 43–46.

VA does not suggest that it could lawfully apply an interpretation of generally applicable federal law *only* to Ashford and the Arizona SAA (and thousands of veteran students enrolled at Ashford) without intending to apply the same interpretations to others. To the contrary, VA claims (at 35) that it "applied existing law" to Ashford and (at 18) that it is "exercising its statutory mandate in a fair and objective manner." Further, the record contains many statements indicating that VA views its legal interpretations as good for more than one ride only. VA has asserted that "the [Arizona SAA's] approval of Ashford does not meet the requirements of 38 U.S.C. § 3672(a)." Appx1298. It claims these "requirements," are "outlined in VA guidance" (evidently, unpublished), *see* Appx1310, and have been applied to other educational institutions that had "the same approval issues" as Ashford, *see* Appx0057. And VA has

told other states that is "authorized to independently determine whether the institution, its programs, or its courses fail to meet any of the requirements of chapter 36 of title 38, United States Code," Appx1298, prompting a vigorous protest from the Virginia SAA. *See* Appx1323–1326.

In any event, what matters is not whether VA has already applied the same interpretation to others, but whether the interpretation on its face is generally applicable. On VA's contrary view, the outcome in *Coalition for Common Sense* depended entirely on the *form* of how the agency chose to convey its new rule. VA agrees that because the agency sent one "form letter … to all providers of prescription medications" imposing new obligations, the letter conveyed a reviewable rule. VA Br. 24. But under VA's argument here, that rule would *not* have been reviewable if VA had simply "addressed [and] sent" a *separate* letter, containing exactly the same commands, to each manufacturer individually. *Id.* The APA is not so easily evaded.

VA's argument is also wrong because the APA's definition of rule encompasses statements of "*particular* applicability." 5 U.S.C. § 551(4) (emphasis added). That language was added to the APA "to 'assure coverage of rule making addressed to named persons.'" *Am. Airlines, Inc. v.*

*Civil Aeronautics Bd.*, 359 F.2d 624, 630 n.17 (D.C. Cir. 1966) (en banc). That the Letter was addressed to Ashford and the Arizona SAA thus does not take it outside the definition of "rule."

VA next seeks to distinguish the D.C. Circuit's *Appalachian Power* decision, which held that "an agency document is considered 'binding' 'if it bases enforcement actions on the policies or interpretations formulated in the document.'" VA Br. 31 (quoting *Appalachian Power Co.*, 208 F.3d at 1021). VA says "EPA planned to apply the guidance as binding when issuing future permits," but the Letter does not say it applies to other parties. *Id.* at 32. VA misreads *Appalachian Power*. EPA, like VA here, claimed its policy "is not binding." 208 F.3d at 1021. The D.C. Circuit nonetheless held the document binding because EPA led private parties and States to believe permits would be declared invalid if they did not comply with the agency's view. *Id.* Likewise, here, VA has initiated "enforcement actions" and held the Arizona SAA's approval "invalid" based on legal interpretations stated in the Letter. *Id.*[2]

---

[2] VA notably does not argue that the Letter's legal interpretations are "non-binding" in APA terms. "Non-binding action … merely expresses an agency's interpretation, policy, or internal practice or procedure. Such actions or statements are not determinative of issues or

*Appalachian Power* also answers VA's suggestion that it might apply a different interpretation to other States and institutions in the future. EPA made the same argument. 208 F.3d at 1022. The D.C. Circuit, however, responded that any rule "may be amended from time to time," and that "[t]he fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *Id.* So too here.

VA concludes its jurisdictional section by beginning to argue the merits, contending in essence that its legal interpretations are not new, or are so clearly correct that they do not count as interpretations at all. VA Br. 33. Those erroneous merits arguments are addressed in Part II, below. For purposes of jurisdiction, the key point is the one noted in the introduction: VA cannot point to *any* published document in which it stated, prior to its issuance of the Letter, that § 3690 authorizes VA to override a State's GI Bill approval. VA also cannot identify *any* prior statement in which it publicly announced that the § 21.4266 definition of "main campus" controls § 21.4250.

---

rights addressed. … They do not … foreclose alternate courses of action or conclusively affect rights of private parties." *Batterton v. Marshall*, 648 F.2d 694, 702 (D.C. Cir. 1980).

VA may mean that the interpretations stated in the Letter are not "new" because they are consistent with VA's long-held private views. But VA's undisclosed beliefs are irrelevant. So far as the APA is concerned, "agency interpretations are only relevant if they are reflected in public documents." *United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004) (Dyk, J., sitting by designation). The Letter revealed these views and made them reviewable under § 502.

### C.    Policy Considerations Support Ashford's Arguments And Undermine VA's Position.

VA contends that Ashford's position "would lead to illogical results" by establishing that "any order that binds any party in any adjudication would be subject to judicial review as a rule under section 502." VA Br. 30–31. It claims that accepting jurisdiction here would sweep in "the more than one million annual claims for benefits that VA adjudicates." *Id.* at 35. These claims are unfounded.

Ashford *agrees* that section 502 jurisdiction does not encompass mere "application of law to facts." VA Br. 35. Section 502 concerns rulemaking and the agency's processes for making, amending, or repealing substantive, procedural or interpretive rules. Unlike an agency's use of

a new interpretation to punish or to invalidate a State approval, the overwhelming majority of benefits determinations should not involve the creation, amendment, or repeal of any legal rule. Indeed, the legal interpretations relevant to health benefits claims are compiled in adjudication manuals that bind VA's employees; whether changes to those manuals are reviewable under § 502 will be decided elsewhere. *Gray*, 139 S. Ct. 451 (granting *certiorari*).[3]

VA's position, by contrast, would improperly insulate agency lawmaking from review. *See* Br. 51–52. VA accuses Ashford of "hyperbole" in raising this point. VA Br. 27. But it is no exaggeration to observe that VA's position would eliminate pre-enforcement judicial review of unpublished legal interpretations when VA bases enforcement actions on those interpretations. That is particularly problematic because, as VA

---

[3] VA (at 29) accuses Ashford of misrepresenting its brief in *Gray*, but cannot identify any inaccuracy. In fact, it is clear that Ashford's statements are true: The Secretary told the Supreme Court that section 552(a)(1) applies to "interpretations that are 'binding on' the agency *or on persons who interact with it*," such as "*interested members of the public*," and that if such interpretations are not published, they cannot have any "force and effect." *See* Brief for the Respondent 31–33, *Gray v. Wilkie*, No. 17-1679 (U.S. Jan. 16, 1019) (emphases added). Those and other statements in the brief support Ashford's jurisdictional argument and contradict VA's position here.

itself concedes, it is not clear there is any legal channel that would allow Ashford itself to *ever* obtain review of VA's interpretations if the section 502 path is closed.  VA Br. 34–35 & n.2.  VA thinks that is a good thing.  This Court should disagree.  Section 502 authorizes "preenforcement review of agency rules" to ensure VA complies with APA rulemaking requirements.  *NVA*, 330 F.3d at 1347.  When VA fails to publish its interpretation prior to enforcement, the only way for this Court to carry out its statutory mandate is to take jurisdiction when the enforcement action discloses the existence of the rule.

## II.   THE NEW RULES ANNOUNCED IN VA'S LETTER ARE PROCEDURALLY AND SUBSTANTIVELY INVALID.

### A.   Congress Expressly Prohibited VA From Overruling SAAs' Approval Decisions.

The Letter's assertion that VA can override a state's GI Bill approval is contrary to statute.  "Except as provided in section 3674A of [Title 38]," VA may not "exercise any supervision or control, whatsoever, over any State approving agency."  38 U.S.C. § 3682.  The Letter does not mention or attempt to exercise any authority under section 3674A.  VA

instead claims a *different* provision, section 3690(b), authorizes it to override SAA approval determinations.  That provision, however, cannot be read as VA wishes.

Section 3690(b) allows VA to "suspend educational assistance" and "disapprove [new] enrollment … in any course as to which the Secretary has evidence showing" that enrolled students "are not entitled to such assistance because … the course approval requirements of [Title 38, chapter 36] are not being met."  *Id.* § 3690(b)(3)(A).  VA says "[o]ne such course approval requirement is that the SAA 'for the State where such education institution is located' approve the applicable course," and says it follows that "VA is statutorily authorized to suspend GI Bill payments if the VA finds that the students are enrolled in a course that was not approved by the SAA where the school is located."  VA Br. 5–6 (quoting 38 U.S.C. § 3672(a)(1)).  The upshot of VA's reading is that VA *may* "supervis[e] or control" the SAAs' approval decisions; if VA disagrees, it can simply suspend payment and disapprove the course, thereby nullifying the approval.

The Court should reject this reading, which effectively re-writes section 3682's introductory clause to read: "Except as provided in section

3674A *or 3690(b)* of this title…." Congress knows how to make exceptions to its own prohibitions and could have given VA authority to supervise approval decisions. VA may not accrue new power by adding new exceptions not granted by Congress. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent").

Ashford agrees that courts should strive to read statutes in harmony with one another. VA Br. 40–41. What VA misses is that sections 3690 and 3682 can be easily harmonized without rewriting either.

Section 3690 says payments may be discontinued if the educational institution is in violation of a GI Bill requirement. The requirement at issue here is that the educational institution must have an approval from the SAA "for the State where such educational institution is located." 38 U.S.C. § 3672(a). "Approval of courses by State approving agencies shall be in accordance with the provisions of this chapter and chapters 34 and 35 of this title and such other regulations and policies as the State approving agency may adopt," *id.*, meaning that SAAs have statutory authority to adopt "regulations and policies" appropriate to "[d]etermining

21

those courses which may be approved." 38 C.F.R. § 21.4151(b). The natural way to harmonize these provisions, therefore, is to say that if the SAA has applied its "regulations and policies" and determined that the "educational institution is located" within its borders, the educational institution has satisfied the relevant "requirement[]" within the meaning of section 3690(b).

VA's position, in contrast, violates the harmonization principle. In VA's view, the GI Bill gives SAAs "definite duties, functions, and responsibilities" to be exercised free of "any [VA] supervision or control, whatsoever," 38 U.S.C. §§ 3673, 3682, but nonetheless permits VA to veto the SAAs' decisions in discharging those duties, functions, and responsibilities. That makes a hash of the allocation of defined powers as between VA and the SAAs; it does not respect the prohibition against supervision and control; and it gives no weight to Congress's decision to make *one* exception to that prohibition, but no others.

Moreover, VA's proposed reading makes no sense of the GI Bill scheme itself. The only purpose served by a course approval is to allow enrolled students to access their GI Bill benefits. To say that VA has a *separate* role with regard to course approvals is to claim that Congress

wanted SAAs and VA to have overlapping authority—which it didn't, *see* 38 U.S.C. § 3673(a)—or for VA to be able to strip an SAA's approval decisions of all practical effect, which is the *opposite* of what Congress said, *see id.* § 3682.

VA's new definition, in short, is "not in accordance with law," in "excess of statutory jurisdiction," and "short of statutory right." 5 U.S.C. § 706(2)(A) & (C).

## B.   VA's Letter Amends A Prior Legislative Rule Without Notice And Comment.

The Letter is procedurally invalid because it effectively amends two existing legislative rules—38 C.F.R. §§ 21.4250 and 21.4266—without notice and comment. *See* Br. § I.B.   VA's interpretation amends § 21.4266's definition of "main campus" by effectively deleting the "in this section" limitation, and effectively amends § 21.4250 by interpreting its reference to "main campus" to contain a silent cross-reference to the definition in § 21.4266.   VA's response misconstrues Ashford's arguments and the APA itself.

VA first argues that Ashford lacks standing to challenge its new and revised definitions of "main campus." *See* VA Br. 42–43.   That makes no sense.   As VA admits, what matters for standing purposes is whether

Ashford is "harmed or 'adversely affected'" by the Letter. *Id*. at 42. Ashford's standing is thus obvious; the Letter seeks to prevent veteran students from using GI Bill benefits at Ashford, which will diminish the university's student body and reduce its tuition revenues. *See* Pet. 11–13. If the Letter is vacated, that threat will be removed, and Ashford's injury will be remedied. No more is required. *E.g.*, *Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1129–31 (Fed. Cir. 2008).

Even so, VA says that Ashford lacks standing because "Ashford does not establish that it can meet *any* definition of 'main campus' in Arizona." VA Br. 42–43.[4] VA apparently thinks that even if the Letter rests on an invalid rule, it can be upheld based on a *different* interpretation that the Letter did not articulate. Not so. Under the APA, an agency's action "must be measured by what [it] did, not by what it might have done." *SEC v. Chenery Corp.*, 318 U.S. 80, 93–94 (1943). Thus, if the

---

[4] This claim is also wrong. Ashford's online students register for classes and connect to one another, to course instructors, and to advisors, through Arizona-based facilities and operations. It thus is completely reasonable, in this digital-age context, to treat Ashford's "main campus" as being in Arizona for purposes of SAA approval.

Letter's interpretation of "main campus" is procedurally invalid, the Letter must be vacated, and Ashford's injury will be redressed.

VA's argument fares no better on the merits. An agency may not effectively amend a prior *legislative* rule in the guise of interpreting it. *See, e.g.*, *Perez*, 135 S. Ct. at 1206; *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993). VA's interpretation does precisely that, effectively adding language to one legislative rule and excising language from another. That cannot be done without notice and comment. Agencies must "use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance." *Perez*, 135 S. Ct. at 1206.

VA's lengthy response (at 47–50) is difficult to follow. Its contention seems to be that because Ashford cited a Federal Circuit decision that, in turn, cites D.C. Circuit decisions overturned in *Perez*, Ashford must be making an argument of a kind that was rejected in *Perez*, even though VA *admits* (at 47) Ashford brief contains no such argument.

Ashford is not making "circuitous" hidden arguments based on "abrogated" law (VA Br. 47)—it would make no sense to do so. Ashford's

argument is the one expressly stated in the opening brief (§ II.B): In reliance on *Perez*, 135 S. Ct. at 1206, Ashford contends that the Letter's redefinition of "main campus" amends prior regulations that were enacted through notice-and-comment, and thus cannot be amended without notice-and-comment.

To the extent VA is arguing (at 50) that *Perez* unleashed federal agencies to effectively amend regulations originally adopted through notice-and-comment through simple re-interpretation, and without again following notice-and-comment procedure, VA is dead wrong. As *Perez* itself confirms, an agency absolutely may not do *that*. *Perez*, 135 S. Ct. at 1206 (agencies must "use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance"); *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995).

VA further contends (at 50–52) that Ashford's description of the Letter as "interpreting" the term "main campus" somehow forecloses Ashford from asking the Court to enforce the APA's notice-and-comment requirements. VA is again mistaken. Ashford's position is clear: From the Petition for Review (at 5–7), through the pre-merits motions practice (*e.g.*, ECF 15, at 10; ECF 22, at 5–6), through its opening brief (at 36–42),

Ashford has consistently argued that VA's effective amendment of §§ 21.4250 and 21.4266 is a *legislative* rule that should have been promulgated through a rulemaking.

Moreover, there is no conflict between Ashford's claim that VA engaged in legislative rulemaking and Ashford's description of the Letter as containing "interpretations." Contrary to VA's suggestion (at 50–51), legislative rules frequently involve interpretation. *E.g.*, *Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 236 (D.C. Cir. 1992) (agency may "change … its interpretation of the statute through notice and comment rulemaking").

The key difference is that an interpretive rule "*merely* interprets"— it lets the public know the agency's "reading of statutes and rules," but no more. *Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1375 (Fed. Cir. 2001) (emphasis added). If the agency "did *more than just interpret*," it often will have crossed the line into legislative rulemaking. *See Coal. for Common Sense*, 464 F.3d at 1318 (emphasis added). In particular, if the agency "purports to impose legally binding obligations or prohibitions on regulated parties … that would be the

basis for an enforcement action for violations of those obligations or requirements," *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251–52 (D.C. Cir. 2014), or if its new interpretation effectively amends a prior binding regulation, it becomes a legislative rule that must go through notice and comment, *Appalachian Power*, 208 F.3d 1015 (EPA guidance document invalid because it effectively amended the regulation it purported to interpret); *Sprint Corp. v. FCC*, 315 F.3d 369 (D.C. Cir. 2003) (similar). Both interpretive and legislative rules may thus involve acts of "interpretation."

VA also argues—as it did in its Motion to Dismiss (ECF 9) and its Opposition to Ashford's Motion to Correct the Administrative Record (ECF 26)—that the definition of "main campus" applied to Ashford does not reflect a "change in course." *See* VA Br. 43–44. Yet VA still cannot point to a single prior time where it declared that the term "main campus" in section 21.4250(a)(3) means what it says in section 21.4266. *See* Appx0002; *supra* p. 16. In fact, as detailed in Ashford's opening brief, VA said several times that the definition of "main campus" in § 21.4266 does *not* apply to the use of that term in other regulations. Br. 44–45.

VA instead argues that § 21.4266's definition of main campus should apply equally to § 21.4250 based on the presumption that identical terms used in separate regulations have the same meaning. VA Br. 44. The argument fails for two reasons. First, the presumption of consistent usage is not self-executing. It "readily yields to context." *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 320 (2014). And as explained, context shows here that the definition cannot be simply cross-applied. VA knows how to write regulatory definitions that apply to more than one section (Br. 40–41), and it did not use such language here.

Second, the presumption does not provide any excuse for VA to skip notice-and-comment rulemaking. Even if it would *make sense* (as VA stridently argues) to apply the same definition to both provisions, it would still require an act of revision to change what the regulations *now* say to what VA thinks they *should* say. There clearly is no single "legal meaning" to the term "main campus," and it renders the APA's process meaningless to assume that the agency's policy choice would not be influenced by the comments it would receive if it put its definition out for public comment.

Section 21.4266's definition of "main campus" "appl[ies] to the terms used in th[at] section." 38 C.F.R. § 21.4266(a)(3). That limiting clause means the term should "be given that definition *only* in that section." *United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 92 (D.D.C. 2008) (emphasis added). A contrary reading would violate the cardinal rule that "every word and every provision is to be given effect." *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (alteration omitted). If the definition of "main campus" in § 21.4266 applied to uses of the same term in other sections, then the phrase "in this section" would be meaningless. If VA now believes it was a mistake to limit the definition in § 21.4266, it is free to delete that limitation, but it must make that amendment through the notice-and-comment process.

If there were any question that "in this section" means "*only* in this section," VA answered it in the rulemaking process. *See* Br. 41. In 2003, VA issued a Notice of Proposed Rulemaking that proposed the definition of "main campus" that now appears in § 21.4266. Proposed Rule, 68 Fed. Reg. 38,657, 38,658 (June 30, 2003). VA stated expressly that the definitions being proposed "would apply *only* to the section of our regulations that the proposed rule amends." *Id.* (emphasis added).

30

VA rejoins that those proposed rules were withdrawn, VA Br. 45, but that is a half-truth. The full story is that VA withdrew *and re-proposed* the original proposed rules. *See* Withdrawal of Proposed Rule and Promulgation of a New Proposed Rule, 71 Fed. Reg. 9052 (Feb. 22, 2006). VA's 2006 statement described the "differences between the now withdrawn proposed rule and the new proposed rule," but did not separately address or explain the parts that had been in the original rule. *See id.* at 9052–53. In other words, VA did not repeat in 2006 that the definition of "main campus" in § 21.4266 "would apply *only* to th[at] section," because VA already said so in 2003 and was not changing position in 2006. VA's 2003 statement that this definition "would apply *only* to the section of our regulations that the proposed rule amends" applies equally to the 2006 proposal that was adopted.[5]

---

[5] Moreover, on the very same day it re-proposed the definition of "main campus" in § 21.4266, VA promulgated a different proposed rulemaking setting forth the use of "main campus" in § 21.4250 that is at issue in this litigation. *See* Proposed Rule, 71 Fed. Reg. 9196, 9210 (Feb. 22, 2006). Had VA intended for these terms to mean the same thing, it could have said so. It chose not to do that.

Finally, even if the definitions in § 21.4266 were not on their face limited to that regulation, they could not apply to delimit SAAs' jurisdictional authority under § 21.4250, because § 21.4266(b) states expressly the regulation "will not serve to change jurisdictional authority." S*ee* Br. 27, 45. VA has no answer on this point, and understandably so. It defeats VA's argument. VA used the definition of main campus in § 21.4266 as its sole basis for concluding that the Arizona SAA "provided insufficient evidence to establish that it has *jurisdictional authority* over [Ashford's] online programs." Appx0001 (emphasis added). That is exactly what VA's regulation says, in black-and-white, that its definition will not do.

In short, VA's new rules changed the meaning and scope of §§ 21.4250 and 21.4266; such a change can be made only through notice and comment rulemaking, which VA did not pursue here.

### C. Even If It Is Interpretive, VA's New "Main Campus" Rule Is Arbitrary And Capricious.

While interpretive rules are not subject to the APA's rulemaking procedures, an agency still is prohibited from promulgating interpretations that are arbitrary and capricious. *See, e.g.*, *Wyeth Holdings Corp. v. Sebelius*, 603 F.3d 1291, 1300 (Fed. Cir. 2010). And an interpretation

is arbitrary and capricious if the agency changes position without "display[ing] awareness" that it is doing so "and show[ing] that there are good reasons for the new policy." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016). Not only does the Letter fail to acknowledge VA's change in course, but VA's brief insists that the Letter's "main campus" rule is *not* a new approach. *See* VA Br. 43–44. *But see supra* pp. 10–11; Br. 44–45. That is reason enough to grant Ashford's petition and vacate the "main campus" rule announced in the Letter.

What is more, VA ignores its own admission, just days before the Letter, that the definition of "main campus" in § 21.4266 is "arguably not as well suited to institutions that provide training solely through an online modality." Appx1304; *see* Br. 44–45. Instead, VA argues that § 21.4266's definition of "main campus" "does account for online institutions" because it includes a tiebreaker (the location of the school's CEO) for when "the school's primary teaching facility is unclear." VA Br. 46. But the Letter does not state this rationale for applying § 21.4266's "main campus" definition; in fact, it states no rationale at all. And "courts may not accept appellate counsel's *post hoc* rationalizations for agency action."

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

Even if the Court could consider VA's belated justification, that argument simply begs the question. The CEO-location tiebreaker is relevant only if identifying an online institution's "primary teaching facility" is a relevant consideration for approval. And VA has no response at all to Ashford's showing that "the contextual differences" between online institutions and the "physical campuses addressed in section 21.4266 … make it so anomalous for VA to attempt to use a single definition for both settings." Br. 45–46. VA simply assumes, as it did in the Letter, that "'main campus' is defined in 38 CFR § 21.4266(a)(3) as the location where the primary teaching facilities of an educational institution are located," without explaining *why* that is an appropriate regulatory approach. VA Br. 41.[6] VA did none of the work necessary to survive arbitrary-and-capricious review.

---

[6] VA further argues that its interpretation of 38 C.F.R. § 4250(a)(3) "is not specific to online institutions." VA Br. 45–46. Contrary to VA's suggestion, Ashford has never argued otherwise. *See* Br. 12–13, 27.

## **CONCLUSION**

For the foregoing reasons, Ashford's Petition for Review should be granted.

May 3, 2019                              Respectfully submitted,

                                         /s/ Carter G. Phillips

Gerard D. Kelly                          Carter G. Phillips
SIDLEY AUSTIN LLP                            *Counsel of Record*
1 South Dearborn                         Kwaku A. Akowuah
Chicago, Illinois 60603                  Tobias S. Loss-Eaton
Tel: (312) 853-7000                      Daniel J. Hay
Fax: (312) 853-7036                      SIDLEY AUSTIN LLP
                                         1501 K Street, N.W.
                                         Washington, D.C. 20005
                                         Tel: (202) 736-8000
                                         Fax: (202) 736-8711

*Counsel for Petitioner Ashford University, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of May, 2019, I filed the fore-going Petitioner's Reply Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ Carter G. Phillips
Carter G. Phillips

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and the rules of this court, because this brief contains 6,996 words (as determined by the Microsoft Word 2016 word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using the 2016 version of Microsoft Word in 14-point Century Schoolbook font.

/s/ Carter G. Phillips
Carter G. Phillips