No. 18-1213

# United States Court of Appeals
# for the Federal Circuit

---

ASHFORD UNIVERSITY, LLC,

*Petitioner,*

v.

SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

---

## JOINT APPENDIX

---

WILLIAM J. GRIMALDI
  *Counsel of Record*
JOSEPH H. HUNT
ROBERT E. KIRSCHMAN, JR.
MARTIN F. HOCKEY, JR.
U.S. DEP'T OF JUSTICE
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-0471

CARTER G. PHILLIPS
  *Counsel of Record*
KWAKU A. AKOWUAH
TOBIAS S. LOSS-EATON
DANIEL J. HAY
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 736-8000

*Counsel for Respondent*          *Counsel for Petitioner*

[Additional Counsel Listed on Inside Cover]

Y. KEN LEE
BRYAN THOMPSON
DEP'T OF VETERANS AFFAIRS
810 Vermont Ave., N.W.
Washington, D.C. 20420
Tel.: (202) 461-7699

*Counsel for Respondent*

GERARD D. KELLY
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000

*Counsel for Petitioner*

| Document Description | Page |
| --- | --- |
| Department of Veterans Affairs Muskogee Regional Office Cure Letter (Nov. 9, 2017) | Appx0001 |
| Certified List of Documents | Appx0004 |
| Arizona State Approving Agency Approval of Ashford University (July 6, 2017) | Appx0026 |
| Arizona State Approving Agency Letter to VA (Aug. 8, 2017) | Appx0033 |
| Arizona State Approving Agency Letter to VA and attachments (Sept. 7, 2017) | Appx0038 |
| VA Letter to Arizona State Approving Agency (Sept. 13, 2017) | Appx0047 |
| VA Memorandum Re: Ashford Background & Talking Points (Sept. 19, 2017) | Appx0056 |
| 2017-2018 Ashford Class Catalog | Appx0059 |
| E-mail from Michael W. Marks, to James Ruhlman et al., Re: Ashford into AZ (July 26, 2017); | Appx0387 |
| Arizona Veterans' Services Evaluation Report (June 28, 2017) | Appx0395 |
| E-mail from Michael W. Marks, to James Ruhlman et al., Re: Ashford into AZ (July 28, 2017) | Appx0398 |
| Letter from Western Ass'n of Schools and Colleges to Ashford University (June 30, 2017) | Appx0400 |
| Ashford Executive Update (July 21, 2017) | Appx1132 |
| Ashford's Motion to Reconsider (Aug. 2, 2017) | Appx1183 |

i

| Document Description | Page |
|---|---|
| E-mail from James Ruhlman, to Cheryl Amitay, Re: Control of State Approving Agencies (May 27, 2016) | Appx1293 |
| Letter from VA to Arizona State Approving Agency Re: Performance Concern (Dec. 4, 2017) | Appx1297 |
| Email from VA to Students, Redacted Re: Ashford University (Nov. 9, 2017) | Appx1302 |
| Oct. 31 2017 Email Attachment, VA Comments Related to Discussion of Evidence for Main Campus | Appx1304 |
| Letter from Nyemaster Goode to VA Re: Ashford University (Sept. 18, 2017) | Appx1306 |
| Letter from VA to Arizona Dep't of Veterans Services Re: Rating (Jan. 23, 2018) | Appx1310 |
| Letter from VA to California VA  Re: Intention Not To Act (Jan. 2, 2019) | Appx1313 |
| Letter from California VA to U.S. VA in Response to 1/2/2019 Letter (Jan. 15, 2019) | Appx1314 |
| Ruling on Requests to Vacate Judgment, No. CV54775, *Ashford Univ., LLC v. Iowa Dep't of Educ.* (Iowa Dist. Ct. Polk Cty. Apr. 26, 2018) | Appx1316 |
| Letter from California Approving Agency for Veterans Education to Ashford Univ. Re: Notice of Intention Not to Act (Dec. 14, 2018) | Appx1322 |
| Letter from Virginia Secretary of Veterans & Defense Affairs to Secretary of U.S. Dep't of Veterans Affairs (Jan. 14, 2019) | Appx1323 |



**U.S. DEPARTMENT OF VETERANS AFFAIRS**
Muskogee Regional Office
125 South Main Street
Muskogee, OK 74401

November 9, 2017

Dr. Craig Swenson
University President and CEO
Ashford University
8620 Spectrum Center Blvd.
San Diego, CA 92123

Leanna DeKing
Director, Arizona State Approving Agency
3839 N. 3rd Street, Suite 200
Phoenix, AZ 85012

Dear Dr. Swenson and Ms. DeKing:

The purpose of this letter is to notify you that I intend to suspend payment of educational assistance and suspend approval of new enrollments and reenrollments for Ashford University's (Ashford) distance education (i.e., online) programs in 60 days unless corrective action is taken. I am taking this action because the Arizona State Approving Agency (SAA) has provided insufficient evidence to establish that it has jurisdictional authority over your online programs in accordance with 38 C.F.R. § 21.4250(a)(3). Consequently, the Arizona SAA's approval does not constitute an approval by the SAA for the State where your educational institution is located, as required by 38 U.S.C. § 3672(a)(1). Therefore, in accordance with 38 C.F.R. § 21.4210(e), I intend to suspend payment of educational assistance and suspend approval of new enrollments and reenrollments for your online programs if you refuse to take corrective action or do not take corrective action within 60 days. I am taking these actions in accordance with 38 U.S.C. § 3690(b) and 38 C.F.R. §§ 21.4210(d) and 21.4211(a)(6).

I have reached my conclusion based on the following reasoning:

Section 3672(a)(1) allocates jurisdiction for approval of an educational instutition to the SAA where it "is located." Section 21.4250(a)(3) implements this authority and clarifies that courses offered by independent study may only be approved for VA educational assistance by the SAA for the State in which the institution's main campus is located. The term "main

campus" is defined in 38 CFR § 21.4266(a)(3) as the location where the primary teaching facilities of an educational institution are located. There does not appear to be any teaching location in Phoenix, AZ, according to the evidence provided by the Arizona SAA.

The Western Association of Schools and Colleges (WASC) does not list a recognized teaching location for Ashford in Arizona. Ashford's main campus is listed in San Diego, CA, with an additional campus location in Clinton, Iowa, and an Administrative Online Student Services Center in Phoenix, Arizona. Consequently, I conclude that the Phoenix, AZ, location is not a teaching facility for purposes of section 21.4266(a)(3) based on the evidence available to me. As discussed below in more detail, I encourage you to submit additional evidence to the extent that you disagree with my conclusion.

Additionally, I note that both WASC and the U.S. Department of Education recognize Ashford University's main campus as being in San Diego. While the school's 2016-2017 Academic Catalog and Supplement do not identify a main campus, it is stated on page 1 of the catalog that "With the growth of the online student population, the University's leadership decided to move its headquarters from Clinton, IA, to San Diego, CA, and to apply for accreditation with [WASC]." WASC only has jurisdiction to approve institutions with main campuses in California, Hawaii, and the Pacific, as well as a limited number of institutions outside the U.S. This fact also suggests that the main campus is not in Phoenix, AZ.

Further supporting this conclusion, it appears that the Arizona State Board of Private Postsecondary Education (Board) does not consider Ashford to be an Arizona institution and does not appear to recognize an Ashford teaching location in Arizona. Ashford is only listed in that office's online directory of out-of-state institutions; therefore, it appears that the Board does not recognize Ashford as an Arizona institution. Additionally, the Board recognizes a single Ashford location in Phoenix, which it described merely as an "online administrative and student services center." Nor are any Ashford programs listed as being approved for the Phoenix location. For the sake of comparison, the Board does not describe the Phoenix, AZ, location of the University of Phoenix, Online, as an administrative center, instead listing dozens of programs as being taught at that location. This evidence is consistent with what we received regarding WASC's approval of your school, and also supports my conclusion that the Phoenix, AZ, location is not a teaching location.

Furthermore, the regulation defining "main campus," 38 CFR § 21.4266(a)(3), states that "[i]f it is unclear which of the education institution's teaching facilities is primary, the main campus is the location of the primary office of its Chief Executive Officer [(CEO)]." Therefore, if a teaching facility existed in Arizona and a disagreement over which of Ashford's teaching facilities is primary existed, the regulations use the location of the primary office of the CEO as the main campus. The Arizona SAA provided us no evidence that the CEO's primary office is not located at Ashford's Headquarters at 8620 Spectrum Center Blvd., San Diego, CA, suggesting that the main campus would be in San Diego, CA, and not Phoenix, AZ, even under this scenario.

To put it succinctly, the information provided by the SAA strongly indicates that the Phoenix, AZ, location does not meet the definition of a main campus.  Therefore, the Arizona SAA lacks jurisdiction under 38 C.F.R. § 21.4250(a)(3) and, consequently, the SAA's approval of Ashford's online programs does not comply with Title 38 requirements.

Please note that if Ashford fails to remedy this deficiency through corrective action within 60 days, I will suspend payment of educational assistance and suspend approval of new enrollments and reenrollments in your online programs.  I will then refer the matter to the Committee on Educational Allowances in accordance with 38 C.F.R. §§ 21.4210(g), 21.4211 and 21.4212, to assist me in making a determination as to whether educational assistance should be discontinued for all individuals enrolled in your online courses, and, if appropriate, whether approval of all further enrollments or reenrollments in your online courses should be denied to veterans, servicemembers, reservists, or other eligible persons pursuing those courses under educational assistance programs administered by VA.  Ashford will be provided with the opportunity for a hearing before the Committee in accordance with 38 C.F.R. §§ 21.4212-14.  The Committee will make a recommendation to me, and I will render a decision pursuant to 38 C.F.R. § 21.4215 regarding discontinuance.  Ashford will then be afforded an opportunity to request a review of such decision by the Director, Education Service, Veterans Benefits Administration, pursuant to 38 C.F.R. § 21.4216.  However, if Ashford has any additional information regarding the Pheonix, AZ, location that justifies a conclusion that the Phoenix, AZ, location is indeed the "main campus" in accordance with 38 C.F.R. § 21.43266(a)(3), or makes changes to its existing structure, please provide such information to this office as soon as possible as such information may resolve this issue.  Please submit any additional information to U.S. Department of Veterans Affairs, 125 S. Main Street, Muskogee, OK 74401.

I look forward to working with you to ensure that our nation's Servicemembers and Veterans can continue to receive benefits for enrollment in your school's programs.

Sincerely,

C. JASON McCLELLAN
Director, Muskogee Regional Office

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| **ASHFORD UNIVERSITY, LLC,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 2018-1213** |
| | ) | |
| **SECRETARY OF VETERANS AFFAIRS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## NOTICE OF FILING OF SECOND
## <u>SUPPLEMENTAL INDEX OF RECORD</u>

Pursuant to the Court's September 27, 2018 Order and Federal Circuit Rule 17(b)(2), respondent, Secretary of Veterans Affairs, respectfully submits the attached supplement to the index of the decision record relating to the Department of Veterans Affairs (VA) Muskogee Regional Office Cure Letter of November 9, 2017.  *See* Exhibit A.  This index includes both respondent's initial February 28, 2018 index (items 1-12), and the supplement index (items 13-25).  The November 9, 2017 Cure Letter is attached as Exhibit B.

Although Federal Circuit Rule 17(b)(2) refers to "rule making," the filing of this supplemental certified list should not be interpreted as an admission by the Secretary that the November 9, 2017 Cure Letter constitutes "rule making" within the meaning of 38 U.S.C. § 502.  Indeed, the letter is part of an adjudicative determination not subject to a 38 U.S.C. § 502 challenge, as we will establish in

our brief pursuant to the Court's February 15, 2018 ordering denying our motion to

dismiss without prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |  |
|  | JOSEPH H. HUNT<br>Assistant Attorney General |
|  |  |
|  | ROBERT E. KIRSCHMAN, JR.<br>Director |
| OF COUNSEL: |  |
|  | /s/Martin F. Hockey, Jr. |
| Y.  KEN LEE<br>Deputy Chief Counsel | MARTIN F. HOCKEY, JR.<br>Deputy Director |
|  |  |
| BRYAN THOMPSON | /s/William J. Grimaldi<br>WILLIAM J. GRIMALDI |
| Attorney | Senior Trial Attorney |
| Department of Veterans Affairs | Civil Division |
| 810 Vermont Ave., NW | Department of Justice |
| Washington, DC  20420 | PO Box 480, Ben Franklin Station<br>Washington, DC 20044<br>Tel: (202) 616-0471<br>william.j.grimaldi@usdoj.gov |
|  |  |
| October 15, 2018 | Attorneys for Respondent |

# Exhibit A

## Index of Decision Record of Department of Veterans Affairs Muskogee Regional Office Cure Letter of November 9, 2017

### I.    Initial Certified List Documents Identified February 28, 2018

1. Department of Veterans Affairs (VA) Muskogee Regional Office Cure Letter (Nov. 9, 2017);

2. Arizona State Approving Agency approval of Ashford University (Ashford) (July 6, 2017);

3. VA letter to Arizona State Approving Agency (Aug. 3, 2017);

4. Arizona State Approving Agency letter to VA (Aug. 8, 2017);

5. VA letter to Arizona State Approving Agency (Aug. 17, 2017);

6. Arizona State Approving Agency letter to VA and attachments (Sept. 7, 2017);

7. VA letter to Arizona State Approving Agency (Sept. 13, 2017);

8. VA letter to Ashford (Sept. 13, 2017);

9. Ashford letter to VA (Sept. 14, 2017);

10. VA letter to Ashford (Sept. 15, 2017);

11. Internal VA memorandum (Sept. 19, 2017);

12. 2017-2018 Ashford Class Catalog.

### II.    Supplemental Certified List Documents Identified August 20, 2018 and October 10, 2018

13. E-mail, from James Ruhlman, to Thomas Alphonso, *et al*, "FW: Ashford into AZ" (July 26, 2017);

   a.  Attachment: 2017 Initial Approval;

14. E-mail, from Michael W. Marks, to James Ruhlman, *et al*, "RE: Ashford into AZ" (July 26, 2017);

15. E-mail, from Suzanne Swafford, to James Ruhlman, *et al*, "RE: Ashford into AZ" (July 26, 2017);

   a.  Attachment: Ashford – SAA Approval;

   b.  Attachment: Ashford – Site Visit;

   c. Attachment: Ashford – Table of Contents;

16. E-mail, from Michael W. Marks, to James Ruhlman, *et al*, "RE: Ashford into AZ" (July 28, 2017);

   a. Attachment: Ashford Accreditor;

   b. Attachment: Full page photo;

   c. Attachment: Full page photo 2;

17. E-mail, from James Ruhlman, to Thomas Alphonso, "FW: Approval review" (Aug. 1, 2017);

   a. Attachment: Approval;

18. E-mail, from James Ruhlman, to Thomas Alphonso, "FW: [EXTERNAL] RE: Ashford University review" (Aug. 9, 2017);

   a. Attachment: Response to VA Denial of Approval;

   b. Attachment: 22-8794 aug17;

   c. Attachment: 2016-17 Ashford Catalog Supplement for AZ;

   d. Attachment: MOU VA Once 8-8-17;

   e. Attachment: 2017-18 Ashford University Full Catalog;

   f. Attachment: 2017 Initial Approval;

19. E-mail, from James Ruhlman, to Thomas Alphonso, "'Main Campus'" (Sept. 22, 2017);

   a. Attachment: 2017-18 Ashford University Full Catalog;

   b. Attachment: Attachments to response to VA Denial Letter #2.

20. Ashford Executive Update (July 21, 2017);

21. E-mail, from Curtis L. Coy, Deputy Under Secretary for Economic Opportunity, to Students, "Critical Information for Students Attending Ashford University on the GI Bill" (July 20, 2017);

22. E-mail, from Robert Worley, to James Ruhlman, *et al*, "Fwd: Ashford's Motion to Reconsider" (Aug. 2, 2017);

   a. Attachment: Motion to Reconsider Amend or Enlarge Pleadings;

   b. Attachment: Exhibit A to Motion to Reconsider;

23.    E-mail, from Robert Worley, to Thomas Alphonso, *et al*, "FW: Filings" (Aug. 29, 2017);

    a.  Attachment: Notice of Appeal;

    b.  Attachment: Petition to Vacate or Modify Ruling Based on Material Evidence;

    c.  Attachment: Exhibit A to Petition to Vacate, Declaration of Thomas Beasley;

    d.  Attachment: Exhibit B to Petition to Vacate, Declaration of Vicki Schray;

    e.  Attachment: Exhibit C to Petition to Vacate, Deposition of Michael Dommer;

    f.  Attachment: Original Notice;

    g.  Attachment: Acceptance of Service;

24.    E-mail, from Patrick Dworakowski, to James Ruhlman, *et al*, "Fwd: Ashford stay" (Sept. 18, 2017);

    a.  Attachment: Ashford stay.

25.    E-mail, from Curtis L. Coy, Deputy Under Secretary for Economic Opportunity, to Students (Aug. 4, 2017), *text available at* https://www.benefits.va.gov/gibill/ashford.asp.

## **Exhibit B**



**U.S. DEPARTMENT OF VETERANS AFFAIRS**
Muskogee Regional Office
125 South Main Street
Muskogee, OK  74401

November 9, 2017

Dr. Craig Swenson
University President and CEO
Ashford University
8620 Spectrum Center Blvd.
San Diego, CA  92123

Leanna DeKing
Director, Arizona State Approving Agency
3839 N. 3rd Street, Suite 200
Phoenix, AZ 85012

Dear Dr. Swenson and Ms. DeKing:

The purpose of this letter is to notify you that I intend to suspend payment of educational assistance and suspend approval of new enrollments and reenrollments for Ashford University's (Ashford) distance education (i.e., online) programs in 60 days unless corrective action is taken.  I am taking this action because the Arizona State Approving Agency (SAA) has provided insufficient evidence to establish that it has jurisdictional authority over your online programs in accordance with 38 C.F.R. § 21.4250(a)(3).  Consequently, the Arizona SAA's approval does not constitute an approval by the SAA for the State where your educational institution is located, as required by 38 U.S.C. § 3672(a)(1).  Therefore, in accordance with 38 C.F.R. § 21.4210(e), I intend to suspend payment of educational assistance and suspend approval of new enrollments and reenrollments for your online programs if you refuse to take corrective action or do not take corrective action within 60 days.  I am taking these actions in accordance with 38 U.S.C. § 3690(b) and 38 C.F.R. §§ 21.4210(d) and 21.4211(a)(6).

I have reached my conclusion based on the following reasoning:

Section 3672(a)(1) allocates jurisdiction for approval of an educational instutition to the SAA where it "is located."  Section 21.4250(a)(3) implements this authority and clarifies that courses offered by independent study may only be approved for VA educational assistance by the SAA for the State in which the institution's main campus is located.  The term "main

campus" is defined in 38 CFR § 21.4266(a)(3) as the location where the primary teaching facilities of an educational institution are located.  There does not appear to be any teaching location in Phoenix, AZ, according to the evidence provided by the Arizona SAA.

The Western Association of Schools and Colleges (WASC) does not list a recognized teaching location for Ashford in Arizona.  Ashford's main campus is listed in San Diego, CA, with an additional campus location in Clinton, Iowa, and an Administrative Online Student Services Center  in Phoenix, Arizona.  Consequently, I conclude that the Phoenix, AZ, location is not a teaching facility for purposes of section 21.4266(a)(3) based on the evidence available to me. As discussed below in more detail, I encourage you to submit additional evidence to the extent that you disagree with my conclusion.

Additionally, I note that both WASC and the U.S. Department of Education recognize Ashford University's main campus as being in San Diego.  While the school's 2016-2017 Academic Catalog and Supplement do not identify a main campus, it is stated on page 1 of the catalog that "With the growth of the online student population, the University's leadership decided to move its headquarters from Clinton, IA, to San Diego, CA, and to apply for accreditation with [WASC]."  WASC only has jurisdiction to approve institutions with main campuses in California, Hawaii, and the Pacific, as well as a limited number of institutions outside the U.S.  This fact also suggests that the main campus is not in Phoenix, AZ.

Further supporting this conclusion, it appears that the Arizona State Board of Private Postsecondary Education (Board) does not consider Ashford to be an Arizona institution and does not appear to recognize an Ashford teaching location in Arizona.  Ashford is only listed in that office's online directory of out-of-state institutions; therefore, it appears that the Board does not recognize Ashford as an Arizona institution.  Additionally, the Board recognizes a single Ashford  location in Phoenix, which it described merely as an "online administrative and student services center."  Nor are any Ashford programs listed as being approved for the Phoenix location.  For the sake of comparison, the Board does not describe the Phoenix, AZ, location of the University of Phoenix, Online, as an administrative center, instead listing dozens of programs as being taught at that location.  This evidence is consistent with what we received regarding WASC's approval of your school, and also supports my conclusion that the Phoenix, AZ, location is not a teaching location.

Furthermore, the regulation defining "main campus," 38 CFR § 21.4266(a)(3), states that "[i]f it is unclear which of the education institution's teaching facilities is primary, the main campus is the location of the primary office of its Chief Executive Officer [(CEO)]."  Therefore, if a teaching facility existed in Arizona and a disagreement over which of Ashford's teaching facilities is primary existed, the regulations use the location of the primary office of the CEO as the main campus.  The Arizona SAA provided us no evidence that the CEO's primary office is not located at Ashford's Headquarters at 8620 Spectrum Center Blvd., San Diego, CA, suggesting that the main campus would be in San Diego, CA, and not Phoenix, AZ, even under this scenario.

To put it succinctly, the information provided by the SAA strongly indicates that the Phoenix, AZ, location does not meet the definition of a main campus.  Therefore, the Arizona SAA lacks jurisdiction under 38 C.F.R. § 21.4250(a)(3) and, consequently, the SAA's approval of Ashford's online programs does not comply with Title 38 requirements.

Please note that if Ashford fails to remedy this deficiency through corrective action within 60 days, I will suspend payment of educational assistance and suspend approval of new enrollments and reenrollments in your online programs.  I will then refer the matter to the Committee on Educational Allowances in accordance with 38 C.F.R. §§ 21.4210(g), 21.4211 and 21.4212, to assist me in making a determination as to whether educational assistance should be discontinued for all individuals enrolled in your online courses, and, if appropriate, whether approval of all further enrollments or reenrollments in your online courses should be denied to veterans, servicemembers, reservists, or other eligible persons pursuing those courses under educational assistance programs administered by VA.  Ashford will be provided with the opportunity for a hearing before the Committee in accordance with 38 C.F.R. §§ 21.4212-14. The Committee will make a recommendation to me, and I will render a decision pursuant to 38 C.F.R. § 21.4215 regarding discontinuance.  Ashford will then be afforded an opportunity to request a review of such decision by the Director, Education Service, Veterans Benefits Administration, pursuant to 38 C.F.R. § 21.4216.  However, if Ashford has any additional information regarding the Pheonix, AZ, location that justifies a conclusion that the Phoenix, AZ, location is indeed the "main campus" in accordance with 38 C.F.R. § 21.43266(a)(3), or makes changes to its existing structure, please provide such information to this office as soon as possible as such information may resolve this issue.  Please submit any additional information to U.S. Department of Veterans Affairs, 125 S. Main Street, Muskogee, OK 74401.

I look forward to working with you to ensure that our nation's Servicemembers and Veterans can continue to receive benefits for enrollment in your school's programs.

Sincerely,

C. JASON McCLELLAN
Director, Muskogee Regional Office

Appx0013

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 15th day of

October, 2018, a copy of the foregoing "NOTICE OF FILING OF SECOND

SUPPLEMENTAL INDEX OF RECORD" was filed electronically.

    <u>X</u> This filing was served electronically to all parties by operation of the

Court's electronic filing system.

/s/William J. Grimaldi



# State of Arizona
# Arizona State Approving Agency

Certifies that

<div style="background-color:maroon; color:white; text-align:center">Ashford University</div>

is granted approval for the education and training of veterans and their eligible dependents, using United States Department of Veterans Affairs educational benefits, in the State of Arizona, in accordance with Section 3675, Title 38, United States Code.  This approval is based on the institution's accreditation by the Western Association of Schools and Colleges Senior College and University Commission, licensure by the Arizona State Board of Private Postsecondary Education, the provisions of Titles 10 and 38, United States Code, and on the standards of the Arizona State Approving Agency (SAA).

<div style="background-color:maroon; color:white; text-align:center">INSTITUTION APPROVAL INFORMATION</div>

**Institution Name:** Ashford University
**Address:** 2555 E Camelback Rd., Suite 250, Phoenix, AZ 85016
**Phone:** 866-711-1700                     **Approval Action:** Initial
**Institution Type:** IHL               **Approval Type:**   ☒ Initial    ☐ Revised
**Facility Code:**                           **Approval Date:** 7/6/17
**Catalog Version:** June 26, 2017     **Approval Effective Date:** 7/10/17
**Catalog Years:** 2017      **Catalog Start Date:** 6/22/17      **Catalog End Date:** 6/22/18
Note:  New institution catalogs must be submitted to the SAA within 30 days of catalog end/expiration date.

**Independent Study/Distance Learning:** ☒ Yes ☐ No    **Cooperative:** ☐ Yes ☒ No
**Practical Training:** ☐ Yes ☒ No          **Remedial Courses:** ☐ Yes ☒ No
**Accreditation:** ☒ Yes ☐ No               **Accredited by:** WASC-SCUC
**Licensed:** ☒ Yes ☐ No                    **Licensure by:** AZPPE
**FAA Air Agency:** ☐ Yes ☒ No              **FAA Air Agency Certificate Number:**
**FAA Air Agency Certificate Date:**        **Letter of Authority:**

**Enrollment Limit:** N/A                    **VA-ONCE:** ☒ Yes ☐ No
**Branch Locations:** N/A

---

**Arizona Department of Veterans' Services**
**Arizona State Approving Agency**
**3839 North 3RD Street, Suite 209**
**Phoenix, Arizona 85012**



## CERTIFYING OFFICIALS

| Name | Title |
|------|-------|
| Conan Stanley | Director of Veteran & Military Financial Services |
| Bobbye Stull | Financial Services Manager |
| Stephanie Cowsert | Director of Financial Aid & Policy |

## REMARKS

Ashford University is recognized by their Accreditor, WASC-SCUC, a U.S. Department of Education recognized accreditor, as having an online program which is based in the State of Arizona and covered as such. Additionally, Ashford University is licensed in the State of Arizona by the Arizona State Board of Private Post-Secondary Education. Ashford University demonstrates full administrative capability in the State of Arizona. This approval is done in accordance with 38 U.S.C. § 3672 and 38 U.S.C. § 3675.

Ashford University is responsible for maintaining the following approval criteria.  The institution:

- Maintains a written record of previous education and training that clearly indicates that appropriate credit has been granted and the training period shortened proportionately.
- Advises the SAA of any changes in institution name/ownership, chief administrative officer(s), VA certifying official(s), licensure, accreditation, programs, facilities, address/location, catalogs, schedules, tuition and fees, or any other pertinent information, as soon as it becomes available;
- Maintains adequate records as prescribed by the SAA to show that satisfactory standards relating to progress and conduct are enforced;
- Maintains these records for at least three years following completion of the training program;
- Makes these records available for inspections by authorized representatives of the Arizona State Approving Agency (SAA) and the U.S. Department of Veterans Affairs (VA);
- Does not utilize advertising, sales, or enrollment practices that are erroneous, misleading or deceptive;
- Offers programs, curriculum, and instruction that are consistent in quality, content, and length with similar programs in other accredited public and private schools in the state;
- Has adequate space, equipment, instructional materials, and instructor personnel to provide training of good quality; and
- Employs instructors and staff that have appropriate education, experience and qualifications.

The VA Certifying Officials at Ashford University are responsible for identifying and correctly certifying all courses and for maintaining and monitoring individual program plans and class schedules for the duration of the approved program.  The institution must fulfill all reporting requirements under 38 Code of Federal Regulations 21.4203.

## APPROVED PROGRAMS

| # | Major or Program Title | Degree or Certificate | Credit Hours | Catalog Page # | Remarks |
|---|------------------------|-----------------------|--------------|----------------|---------|
| | **Degree Programs** | | | | |
| 1. | Accounting | BA | 120 | 133 | |
| 2. | Business Administration | BA | 120 | 134 | |
| 3. | Business Economics | BA | 120 | 135 | |
| 4. | Business Information Systems | BA | 120 | 135 | |
| 5. | Business Leadership | BA | 120 | 136 | |
| 6. | Consumer  & Family Financial Services | BA | 120 | 137 | |
| 7. | eMarketing | BA | 120 | 138 | |

2

| # | Major or Program Title | Degree or Certificate | Credit Hours | Catalog Page # | Remarks |
|---|---|---|---|---|---|
| 8. | Entrepreneurship | BA | 120 | 139 | |
| 9. | Finance | BA | 120 | 140 | |
| 10. | Human Resources Management | BA | 120 | 141 | |
| 11. | International Business | BA | 120 | 141 | |
| 12. | Operations Management & Analysis | BA | 120 | 142 | |
| 13. | Organizational Management | BA | 120 | 143 | |
| 14. | Project Management | BA | 120 | 144 | |
| 15. | Public Administration | BA | 120 | 145 | |
| 16. | Public Relations & Marketing | BA | 120 | 146 | |
| 17. | Real Estate Studies | BA | 120 | 147 | |
| 18. | Service Management | BA | 120 | 148 | |
| 19. | Sports & Recreation Management | BA | 120 | 149 | |
| 20. | Supply Chain Management | BA | 120 | 150 | |
| 21. | Sustainable Enterprise Management | BA | 120 | 151 | |
| 22. | Early Childhood Education | AA | 67 | 152 | |
| 23. | Child Development | AA | 120 | 154 | |
| 24. | Cognitive Studies | AA | 120 | 155 | |
| 25. | Early Childhood Education | BA | 120 | 157 | |
| 26. | Early Childhood Education Administration | BA | 120 | 158 | |
| 27. | Education Studies | BA | 120 | 161 | |
| 28. | English Language Learner Studies | BA | 120 | 163 | |
| 29. | Instructional Design | BA | 120 | 164 | |
| 30. | Library Science and Media | BA | 120 | 165 | |
| 31. | Adult Development | BA | 120 | 166 | |
| 32. | Applied Behavioral Science | BA | 120 | 167 | |
| 33. | Complementary and Alternative Health | BA | 120 | 168 | |
| 34. | Gerontology | BA | 120 | 169 | |
| 35. | Health and Human Services | BA | 120 | 170 | |
| 36. | Health and Wellness | BA | 120 | 171 | |
| 37. | Health Care Administration | BA | 120 | 172 | |
| 38. | Health Education | BA | 120 | 173 | |
| 39. | Psychology | BA | 120 | 176 | |
| 40. | Nursing – RN to BSN | BS | 120 | 179 | |
| 41. | Military Studies | AA | 64 | 180 | |
| 42. | Applied Linguistics | BA | 120 | 181 | |
| 43. | Communication Studies | BA | 120 | 182 | |
| 44. | Cultural Anthropology | BA | 120 | 183 | |
| 45. | English | BA | 120 | 184 | |
| 46. | Environmental Studies | BA | 120 | 185 | |
| 47. | History | BA | 120 | 186 | |
| 48. | Homeland Security and Emergency Management | BA | 120 | 187 | |
| 49. | Journalism & Mass Communication | BA | 120 | 188 | |
| 50. | Law Enforcement Administration | BA | 120 | 189 | |
| 51. | Liberal Arts | BA | 120 | 190 | |
| 52. | Military Studies | BA | 120 | 191 | |
| 53. | Political Science and Government | BA | 120 | 191 | |
| 54. | Social and Criminal Justice | BA | 120 | 192 | |
| 55. | Social Science | BA | 120 | 193 | |
| 56. | Sociology | BA | 120 | 194 | |
| 57. | Accountancy | MA | 48 | 218 | |
| 58. | Arts in Organizational Management | MA | 33 | 220 | |
| 59. | Business Administration | MBA | 42 | 221 | |
| 60. | Public Administration | MPA | 36 | 223 | |
| 61. | Education | MA | 36-39 | 224 | |
| 62. | Education, Instructional Practice | MA | 36 | 227 | |
| 63. | Special Education | MA | 30 | 231 | |

3

| # | Major or Program Title | Degree or Certificate | Credit Hours | Catalog Page # | Remarks |
|---|---|---|---|---|---|
| 64. | Teaching & Learning with Technology | MA | 30 | 233 | |
| 65. | Health Care Administration | MA | 36 | 234 | |
| 66. | Psychology | MA | 36 | 235 | |
| 67. | Criminal Justice | MS | 39 | 236 | |

**Total Programs Record Count:**          **67 Approved**

## PROGRAMS NOT APPROVED

| # | Major or Program Title | Degree or Certificate | Credit Hours | Catalog Page # | Remarks |
|---|---|---|---|---|---|
| 1. | Health Information Management | BS | 120 | 177 | Not approvable until accredited by CAHIIM. Without accreditation students will not be eligible to sit for RHIA national certification exam. |

**Total Non-Approved Programs Record Count:**          **1**

## APPROVED EDUCATION SITES

| Name | Address |
|---|---|
| Ashford University | 2555 E Camelback Rd., Suite 250, Phoenix, AZ 85016 |

## APPROVAL CERTIFICATION

| | |
|---|---|
| **SAA Approval:** | *Leanna DeKing*                                    7/6/17 <br> Leanna DeKing, SAA Director                Date <br> State Approving Agency - Arizona (SAA) <br> 3839 N. 3rd St., Phoenix, AZ 85012 <br> Phone: 602-653-9026    Email: ldeking@azdvs.gov |
| **VA Acceptance:** | VA Form 22-1998, Web Enabled Approval Management System (WEAMS) Document, dated   (Enclosed) |
| Distribution: | VARO <br> LO File |

4

**Appx0029**



**DOUGLAS A. DUCEY**
GOVERNOR

**ARIZONA DEPARTMENT OF
VETERANS' SERVICES**

**WANDA A. WRIGHT**
DIRECTOR

**STATE APPROVING AGENCY**
3839 NORTH 3RD STREET, SUITE 209
PHOENIX, ARIZONA 85012
PHONE (602) 255-3373  FAX (602) 255-1038

August 8, 2017

Suzanne Swafford
Educational Liaison Representative
Department of Veterans Affairs
VA Regional Office
3333 N Central Ave.
Phoenix, AZ 85012-2458

Dear Ms. Swafford:

The State Approving Agency (SAA) for the State of Arizona is in receipt of your letter dated August 3, 2017 stating that the VA was unable to accept the notice of approval submitted for programs at Ashford University, 2555 E. Camelback Rd., Suite 250, Phoenix, AZ 85016. Attached to this letter you will find the additional information and documentation as requested. Based on previous and current documents, the Arizona SAA submits our approval of Ashford University. In response to your numbered items requesting further detail:

1. *38 U.S.C. §3672(a) states VA education benefits are payable to individuals enrolled in a course of education offered by an educational institution.*

   Both the facility's licensor, Arizona State Board for Private Postsecondary Education and Ashford University's accrediting body, Western Association of School and Colleges – Senior College and University Commission (WSCUC) recognize Ashford University as an educational institution offering a course of education in Arizona as evidenced and supplied with the original SAA approval. The supporting documentation provided to the VA included a letter from Christopher N. Oberg the Vice President/COO of WASC Senior College and University Commission, Ashford's accreditor, stating the Arizona online campus was accredited with specific wording, "*All programs, courses and departments are included under this accreditation, including distance education. This accreditation currently covers the following locations*" which included California, Iowa and Arizona. Arizona location was listed as *Ashford University Administrative Online Student Services Center*. "*This center will equally be authorized to operate under the institutions accrediting with the agency.*"

In an online environment there is no traditional teaching structure and thus it cannot be shown that instruction emanates from any one state. Teachers are located throughout the United States. The licensing body and the accreditor both recognize and identify the Phoenix, Arizona location as containing the Online Administrative and Student Services Center which supports the determination made by the SAA in its approval of this institution in the State of Arizona.

2. *38 C.F.R. §21.4253(d)(7) and (8) states the institution must possess adequate space, equipment, instructional material, and instructor personnel to provide training of good quality, and must demonstrate it employs directors, administrators, and instructors with adequate education and experience.*

The approval application material provided to the VA did include the qualifications of the Board of Trustees, Administration and Faculty in the Ashford University Catalog Supplement linked content under Section Eleven: University Personnel. Attached again hereto for your review. The SAA believes that the information provided demonstrates adequate education and experience of these individuals. Additionally, the SAA also provided the VA with the site inspection visit report of the Ashford University Campus location in Arizona which clearly states that there is adequate space. The information you require can be found in the attached catalogs.

3. *38 C.F.R. §21.4250(a)(3) states courses offered by independent study may only be approved for VA benefit purposes by the State Approving Agency for the State where the institution's main campus is located.*

Arizona SAA does not interpret that the definition of "main campus" in 38 CFR §21.4266(a)(3) controls whether a state may approve an institution that is accredited to operate an Online Administrative and Student Services Center within its borders. In fact, the governing federal statute, 38 USC § 3672(a), makes clear that "the State approving agency for the State where such educational institution is located" has authority to make approval decisions in accordance with federal statutes and such other regulations and policies as the State approving agency may adopt. As noted, Arizona SAA has determined that its approval authority extends to online institutions that have an online administrative and services center in Arizona, at least where that Arizona location is recognized by the licensing body and the accreditor for the institution.

Further, for two reasons, the "main campus" definition in 38 C.F.R. §21.4266(a)(3) would not be dispositive even if the relevant question were whether Ashford's Phoenix center is a "main campus." First, 38 CFR § 21.4266 says that "[t]he following definitions," including the "main campus" definition, "apply to the terms used in this section." The regulatory language VA has cited on approvals, however, is not contained in § 21.4266. It lies instead in a different section of the regulations, § 21.4250. The definition in § 21.4266, therefore, plainly does not apply to the approval authority discussion in § 21.4250. Second, other language in 38 C.F.R. §21.4266 makes clear that Arizona's approval authority is not limited to main campuses. To the contrary, §21.4266(b)(3) makes clear that "[t]he fact that the main campus of the educational institution may be located in another State from that in which the course is being taught will not serve to change jurisdictional authority." And §21.4266(c) allows an SAA in the state in which a branch/extension campus is located to approve/disapprove courses offered through that campus, so long as (1) each location where

the course or program is offered has administrative capability and (2) the location has a certifying official on site. Ashford's Phoenix location meets both prongs of this test.

4. *38 CFR §21.4266 (c)(2) states the State Approving Agency may only approve courses offered at a branch campus or extension of an educational institution if the location has a certifying official on site.*

Bobbye Stull who is listed on the Designation of Certifying Officials resides and is located in the State of Arizona. As such, there is a designated school certifying official located on site at Arizona campus location. The Arizona campus location does not yet have a facility code assigned to it but an MOU for the Arizona Specific Campus will have Ms. Stull listed once a facility code is issued. This is evidenced in the attached MOU containing Ms. Stull.

5. *38 C.F.R. § 21.4253(d)(1) requires the institution to submit copies of its catalog or bulletin to the SAA.*

An updated catalog is enclosed with the current catalog dates. These dates have been corrected in the Approval Letter.

This contains all required information for approval of Ashford University. If you have questions, please feel free to contact me at (602) 653-9026 or ldeking@azdvs.gov.

Sincerely,

*Leanna DeKing*

Leanna DeKing
Arizona State Approving Agency Director
Arizona Department of Veteran's Services
3839 North 3rd Street, Suite 209
Phoenix, Arizona 85012



**DOUGLAS A. DUCEY**
GOVERNOR

## ARIZONA DEPARTMENT OF
## VETERANS' SERVICES

**WANDA A. WRIGHT**
DIRECTOR

### STATE APPROVING AGENCY
3839 NORTH 3RD STREET, SUITE 209
PHOENIX, ARIZONA 85012
PHONE (602) 255-3373  FAX (602) 255-1038

September 7, 2017

Suzanne Swafford
Educational Liaison Representative
Department of Veterans Affairs
VA Regional Office
3333 N Central Ave.
Phoenix, AZ 85012-2458

Dear Ms. Swafford:

The State Approving Agency (SAA) for the State of Arizona is in receipt of your letter dated August 17, 2017 stating that the VA was unable to accept the notice of approval submitted for programs at Ashford University, 2555 E. Camelback Rd., Suite 250, Phoenix, AZ 85016. Attached to this letter you will find the additional information and documentation as requested. Based on previous and current documents, the Arizona SAA once again submits our approval of Ashford University. In response to your numbered items requesting further detail:

1. *VA agrees that the requirements of 38 CFR §21.4253(d)(7) and (8) have been satisfied in part.  Page 43 of the facility's current 2017 – 2018 catalog gives a description of the space, equipment, instructional materials, and instructor personnel to be utilized at the Arizona location.  Your letter and site inspection visit report confirm your belief that it is adequate.  However, while the documentation provided identifies Ashford University's administrative personnel, it fails to specifically identify the director(s) and administrators for the Arizona location.*

   Although this request has not been required for other school approvals that have been submit to the VA in the past, we have attached the Ashford University Organizational Chart specific to the Arizona location hereto.

2. *VA does not agree that the requirements of 38 U.S.C. §3672(a) have been met. We do not concur with your assertion that the facility has provided adequate evidence of being recognized as a provider of a course of education offered by an educational institution by its licensor, the Arizona State Board for Private Postsecondary Education (AZPPE).  The approval package included an excerpt from the AZPPE website indicating the facility is recognized as an "Administrative and Student Services Center," and it does not identify any approved educational programs.  In addition, the letter dated June 30, 2017 from Christopher N. Oberg of the facility's accrediting agency, Western Association of Schools and Colleges (WASC), states "This [Arizona] center will equally be authorized to operate under the institution's accreditation with the agency."  It doesn't indicate the facility is authorized to operate as such as of July 1, 2017, the date on which the facility is requesting*

*approval. As of August 10, 2017, the WASC website (www.wscuc.org) only lists Ashford University's Main (San Diego) and Clinton campuses as approved locations.*

    a.  Attached hereto you will find a copy of Ashford University's license, a regular degree granting license which includes a listing of all programs. The listing attached with the license from the AZPPE denotes on the bottom"6/22/17 – Board approved the Regular Degree-Granting License for the Online Administrative and Support Service Center.

    b.  Also attached is an updated letter from WASC specifying the Arizona location is authorized to operate as of July 1, 2017.

3.   *VA reaffirms our determination that Ashford University's Arizona location does not meet the definition of a "main campus." Your letter cites the language of 38 U.S.C §3672(a) as establishing your authority to approve "online institutions." Section 3672(a) affords jurisdiction for approvals to the SAA "where such educational institution is located," but does not provide a process for assessing the location of online or other programs. We clarified via regulation that courses offered by independent study or correspondence shall be approved by the SAA of the State in which the institution's main campus is located and view this definition as applicable to online courses. 38 C.F.R. § 21.4250(a)(3). "[M]ain campus" is defined relative to "branch" and "extension" campuses in 38 C.F.R. § 21.4266(a)(3), with the focus being on primary teaching facilities.*

The Arizona SAA reaffirms its original jurisdictional determination as provided in the original approval to the VA, as well as the Arizona SAA's last response to the VA dated August 8, 2017.

4.   *Finally, although Ashford University has been withdrawn by the Iowa SAA, VA is continuing to pay GI Bill students as litigation in the Iowa District Court progresses. Should you and the institution demonstrate satisfaction of all approval requirements, VA cannot duplicate payment to students certified from Arizona.*

The aforementioned is not an approval issue and as such, is not an issue applicable to the SAA's approval of Ashford University. Payment issues reside with the VA. The VA would need only to determine a date upon which the payment would be moved from IA to AZ.

This contains all required information for approval of Ashford University. If you have questions, please feel free to contact me at (602) 653-9026 or ldeking@azdvs.gov.

Sincerely,

*Leanna DeKing*

Leanna DeKing
Arizona State Approving Agency Director
Arizona Department of Veteran's Services
3839 North 3rd Street, Suite 209
Phoenix, Arizona 85012

**APPENDIX A: ORGANIZATIONAL CHART AND EMPLOYEE LIST**

Ashford University
Administrative Online Student Services
Phoenix, Arizona



Case: 18-1213    Document: 46    Page: 28    Filed: 05/10/2019



Ashford
UNIVERSITY

 Senior College and
University Commission

August 21, 2017

Laura Noone, MBA, JD, Ph.D.
Senior Vice President of Academic Affairs and Chief Academic Officer
Accreditation Liaison Officer
Ashford University
8620 Spectrum Center Boulevard
San Diego, CA 92123

Dear Dr. Noone:

This letter is to confirm Ashford University's accreditation with the WASC Senior College and
University Commission (WSCUC) and to clarify our communication of June 30, 2017,
regarding the status of the new Administrative Online Student Services Center in Phoenix, AZ.

Ashford University received Initial Accreditation from WSCUC on July 10, 2013, for a period
of five years, with a scheduled reaffirmation review in spring 2018 (Offsite Review) and fall
2018 (Accreditation Visit). All programs, courses, and departments are included under this
accreditation, including distance education programs. This accreditation covers the following
locations:

> Ashford University Main Campus
> 8620 Spectrum Center Boulevard
> San Diego, CA 92123
>
> Ashford University Clinton Campus
> 1310 19th Avenue NW
> Clinton, VA 52732

We received a notification in June 2017 concerning the opening of an additional administrative
center at the following address:

> Ashford University Administrative Online Student Services Center
> 2555 E. Camelback Road, Suite 250
> Phoenix, AZ 85016

To clarify, this center is equally authorized to operate as of July 1, 2017, under the institution's
accreditation with the agency.

As you know, WSCUC is one of seven regional accrediting commissions in the United States
recognized by the U.S. Department of Education and the Council for Higher Education
Accreditation.

Sincerely,

Christopher N. Oberg, PhD
WSCUC Vice President and COO



# STATE OF ARIZONA

## 2017

### STATE BOARD FOR PRIVATE POSTSECONDARY EDUCATION

**1400 W. WASHINGTON STREET, ROOM 260 in PHOENIX, AZ 85007**

HEREBY GRANTS A REGULAR DEGREE PROGRAM
LICENSE # D1664 AND LEGALLY AUTHORIZES
FOR THE PERIOD OF

June 22, 2017 - June 30, 2018

**Ashford University
Esplanade V, Suite 250
2555 E. Camelback Road**

**Phoenix, AZ 85016**

Online Administrative and Student Services Center.



In witness whereof, the State Board has caused this
License to be signed by its duly authorized officers.

_____
Chairman

_____
Executive Director

A.R.S. § 32-3001 et. seq.

## INSTITUTION INFORMATION

| | | | |
|---|---|---|---|
| Name: | Ashford University | Licensed: | 06-22-2017 |
| Director: | Craig Swenson, President | Closed: | |
| License Contact: | Vickie Schray | Profit: | Yes |
| Degree Types: | Regular | Vocational Type: | N/A |
| State Incorporated: | Iowa | Legal Status: | Limited Liability Company |
| Website: | www.ashford.edu | Renewal Cycle: | July |
| Title 4: | Yes | Bond: | $15,000.00 |
| Active: | Yes | Reporting: | No |
| Describe Operations: | Online Administrative and Student Services Center | Out of State: | Yes |

## ACCREDITATIONS

WSCUC

## ADDRESSES

| Type | Street | City | State | Zip |
|---|---|---|---|---|
| Corporate | 8620 Spectrum Center Blvd. | San Diego | CA | 92123 |
| Main | Esplanade V, Suite 250 2555 E. Camelback Road | Phoenix | AZ | 85016 |

## PHONE NUMBERS

| Type | Phone |
|---|---|
| License Contact | 858-776-9772 |

## EMAIL ADDRESSES

| Type | Email |
|---|---|
| License Contact | VSchray@bpiedu.com |

## STATISTICS

## PROGRAMS

| Program | Clock | Credit | Tuition | Type |
|---|---|---|---|---|
| Accountancy | | 48 | $32,486.00 | Degree |
| Accounting | | 120 | $56,390.00 | Degree |
| Adult Development | | 120 | $56,390.00 | Degree |
| Applied Behavioral Science | | 120 | $56,390.00 | Degree |
| Applied Linguistics | | 120 | $56,390.00 | Degree |

Appx0043

| | | | |
|---|---|---|---|
| Business | 67 | $31,534.00 | Degree |
| Business Administration | 120 | $56,390.00 | Degree |
| Business Administration | 42 | $28,464.00 | Degree |
| Business Economics | 120 | $56,390.00 | Degree |
| Business Information Systems | 120 | $56,390.00 | Degree |

1 2 3 4 5 6 7 8

## OWNERS

**Owners:**
Bridgepoint Education

**City:**

**President:**
Craig Swenson

**Addresses:**

**Phone Numbers:**

**Email Addresses:**

## COMPLAINTS

## NOTES

| NoteText | ModifiedDate |
|---|---|
| 6.6.17 Surety Bond No. 0735511 for Ashford University in the amount of $15,000 effective beginning May 30th 2017 from Everest Reinsurance Company and International Fidelity Insurance Company. | 6.6.2017 12:23:17 PM |
| 6.22.17 Board approved the Regular Degree-Granting License for the Online Administrative and Support Services Center. Maintain the $15,000 Surety Bond. | 7/6/2017 12:11:45 PM |

**Appx0044**

Programs                                                                                                    Page 1 of 2

Search

Programs

| | Program | Description | Clock | Credit | Tuition & Fees | Type |
|---|---|---|---|---|---|---|
| | Accountancy | Master of | | 48 | 32,486.00 | Degree |
| | Accounting | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Adult Development | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Applied Behavioral Science | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Applied Linguistics | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Business | Associate of Arts in | | 67 | 31,534.00 | Degree |
| | Business Administration | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Business Administration | Master of | | 42 | 28,444.00 | Degree |
| | Business Economics | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Business Information Systems | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Business Leadership | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Child Development | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Cognitive Studies | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Communication Studies | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Complementary and Alternative Health | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Consumer and Family Financial Services | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Criminal Justice | Master of Science in | | 39 | 26,423.00 | Degree |
| | Cultural Anthropology | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Early Childhood Education | Associate of Arts in | | 67 | 31,534.00 | Degree |
| | Early Childhood Education | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Early Childhood Education Administration | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Education | Master of Arts in | | 39 | 23,771.00 | Degree |
| | Education and Public Policy | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Education Studies | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | eMarketing | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | English | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | English Language Learner Studies | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Entrepreneurship | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Environmental Studies | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Finance | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Gerontology | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Health and Human Services | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Health and Wellness | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| | Health Care Administration | Bachelor of Arts in | | 120 | 56,390.00 | Degree |

Appx0045

| | | | | | |
|---|---|---|---|---|---|
| ✿ | Health Care Administration | Master of Arts in | | 36 | 24,402.00 | Degree |
| ✿ | Health Care Studies | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Health Education | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Health Informatics | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Health Information Management | Bachelor of Science in | | 120 | 56,390.00 | Degree |
| ✿ | Health Marketing and Communication | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | History | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Homeland Security and Emergency Management | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Human Resources Management | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Information Systems Management | Master of | | 42 | 28,444.00 | Degree |
| ✿ | Instructional Design | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | International Business | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Journalism and Mass Communications | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Law Enforcement Administration | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Liberal Arts | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Library Science and Media | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Military Studies | Associate of Arts in | | 64 | 30,128.00 | Degree |
| ✿ | Military Studies | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Nursing | Bachelor of Science in | | 120 | 56,390.00 | Degree |
| ✿ | Operations Management and Analysis | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Organizational Management | Associate of Arts in | | 67 | 31,534.00 | Degree |
| ✿ | Organizational Management | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Organizational Management | Master of Arts in | | 33 | 22,381.00 | Degree |
| ✿ | Political Science and Government | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Project Management | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Psychology | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Psychology | Master of Arts in | | 36 | 21,954.00 | Degree |
| ✿ | Public Administration | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Public Administration | Master of | | 36 | 24,402.00 | Degree |
| ✿ | Public Relations and Marketing | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Real Estate Studies | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Service Management | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Social and Criminal Justice | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Social Science | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Sociology | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Special Education | Master of Arts in | | 30 | 18,320.00 | Degree |
| ✿ | Sports and Recreation Management | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Supply Chain Management | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Sustainable Enterprise Management | Bachelor of Arts in | | 120 | 56,390.00 | Degree |
| ✿ | Teaching | Master of Arts in | | 45 | 27,405.00 | Degree |
| ✿ | Teaching and Learning with Technology | Master of Arts in | | 30 | 18,320.00 | Degree |

Support    1400 W. Washington St Room 260, Phoenix, AZ 85007

Appx0046



**DEPARTMENT OF VETERANS AFFAIRS**
**VA REGIONAL OFFICE**
**3333 North Central Avenue**
**Phoenix, AZ 85012-2458**

SEPTEMBER 13, 2017

LEANNA DEKING
PROGRAM DIRECTOR
ARIZONA STATE APPROVING AGENCY
3839 N 3ᴿᴰ ST SUITE 209
PHOENIX, AZ  85012-2068

Dear Ms. DeKing:

This is to notify you, the Arizona State Approving Agency (AZ SAA), that the Department of Veterans Affairs (VA) acknowledges receipt of your request for approval of Ashford University, 2555 E. Camelback Rd., Suite 250, Phoenix, AZ  85016.  The facility code for the Arizona campus is 21007103.

The approval package for Ashford University was initially submitted on July 6, 2017.  The information was reviewed for completeness and correctness as it pertains to 38 USC § 3675 and other applicable statutes and regulations.  The approval package was returned to you on August 3, 2017, because it failed to provide sufficient information to demonstrate compliance with five statutory and regulatory requirements.  The school's approval package was resubmitted to VA on August 8, 2017.  However, VA determined that the school failed to provide sufficient evidence to establish compliance with applicable standards to accept the approval, and the approval package therefore was returned to you on August 17, 2017.

On August 20, 2017, a conference call was conducted between representatives of VA Education Service, VA Office of General Counsel (OGC), the AZ SAA, and the Arizona Office of Attorney General.  During that conference call, it was indicated that additional information would be provided regarding the legal basis for Arizona's claim of jurisdiction to approve Ashford University's online programs.  To date, VA has not received that information.  Nevertheless, on September 7, 2017, you reiterated your approval of Ashford University, citing 38 U.S.C. § 3672(a) as your authority.  Because of this approval action, and VA's desire to avoid the disruption of benefits to the greatest extent possible, a facility code has been issued despite VA's continued concern regarding insufficiencies noted in the approval package.

As a reminder, although you have exercised your authority under 38 U.S.C. § 3672(a)(1) to approve Ashford University Online, VA is authorized to independently determine whether the institution, its programs, or its courses fail to meet any of the requirements of chapter 36, title 38, United States Code.  If VA determines that the institution, its programs, or its courses fail one or more of the requirements of chapter 36, then the Director of the Muskogee Regional Processing Office may discontinue all educational assistance allowances of any eligible veteran or eligible person.

Furthermore, VA is required, under 38 U.S.C. § 3674A(a)(1)(A), to conduct annual evaluations of your performance. This review includes whether school approvals comply with the terms of the contract for reimbursement between VA and the AZ SAA and with statutory and regulatory standards. In accordance with your Fiscal Year 2017 business plan, 90% of your approvals will be submitted accurately and accepted without any substantive errors. Failure to meet this or other performance measures may have an impact on our evaluation of you.

If you have any questions, please contact me at (602) 627-3227 or suzanne.swafford@va.gov.

Sincerely,

*Suzanne Swafford*

Suzanne Swafford
Education Liaison Representative



# Ashford University Online
# Background & Talking Points
# September 19, 2017

| GI Bill Impacts |
| --- |
| **Ashford** – 1 school, 8K beneficiaries, $38M in FY16, approximately 5K active students |

## ASHFORD UNIVERSITY ONLINE

### ISSUE
Ashford University, a for-profit school owned by Bridgepoint Education, headquartered in California, has online programs approved in Arizona, and is pursuing litigation to remain approved for the GI Bill in Iowa as well.  This impacts over 5,000 beneficiaries.

### BACKGROUND
- To date, have received approximately 18 complaints for Ashford University - Online
- Ashford is currently "approved" in Iowa
- For online programs to be approved for GI Bill *(Note:  approval is a function of the State Approving Agency (SAA)*
  - Approval should be in the state where the main campus is located
    - Ashford's HQ is California
    - Ashford's programs are accredited by the Western Association of Schools and Colleges (WASC) which covers CA, but not IA or AZ
    - Ashford is licensed in both IA and AZ as an "out-of-state" school

### BRIEF HISTORY
  - 9/2013 – email from Iowa SAA notifies VA that Ashford is changing its accreditation to WASC but will continue to operate its online center and residential campus in Iowa
  - 3/2016 – Conference call w/DoE and California AG questioning Ashford's approval in Iowa
  - 3/2016 – VA reviewed relevant information, sends communication to Iowa SAA requesting an explanation…VA sends follow up email 4/2016
  - 5/2016 – Iowa SAA issues letter to Ashford indicating their intent to no longer grant approval.  Ashford responds stating rationale for remaining under the Iowa SAA
  - 5/2016 – VA sends 'informal' email to Ashford urging them to seek approval in California
  - 5/2016 – Iowa Department of Education legal counsel sends formal reply to Ashford stating they will no longer have program approval once Ashford's residential campus closes on June 30
  - 5/2016 – Ashford sends formal letter to California SAA expressing intent to seek program approval in California
  - 6/2/2016, Ashford delivers application to California SAA
  - 6/8/2016, California SAA informs Ashford application is complete
  - 6/18/2016 California SAA requests additional information

1

- o 6/20/2016 Iowa SAA issues a stay of withdrawal until September 18 in order for California/Ashford to resolve approval
- o 6/30/2016 Ashford withdraws its application
- o 8/12/2016 Ashford notified CA SAA that they will seek continued approval in IA
- o 8/19/2016 IA SAA sent letter to Ashford reiterating its position that IA does not have jurisdiction to approve Ashford's online programs
- o 8/19/2016 Ashford filed an amended motion against the IA Dept of Education requesting a restraining order and reversal of the IA SAA's withdrawal of approval
- o 9/2/2016 Hearing on the above amended motion…awaiting the Court's decision/direction
- o 9/15/2016 Judge grants a stay with no timeline (in force until a decision is issued)
- o 01/09/2017 VA sends email to Ashford students
- o 06/23/2017 Judge holds hearing on the complaint
- o 07/06/2017 AZ SAA approves Ashford's online programs
- o 07/17/2017 Judge dismissed Ashford's petition (i.e., ruled in favor of the IA SAA)
- o 07/20/2017 VA sends email to Ashford students
- o 08/01/2017 Ashford filed a motion to reconsider the District Court's ruling
- o 08/03/2017 VA sends a letter to the AZ SAA pointing out numerous insufficiencies with the approval of Ashford's online programs
- o 08/04/2017 VA sends email to Ashford students
- o 08/08/2017 AZ SAA responded to VA's 08/03 letter, provided additional information but didn't justify AZ SAA's jurisdiction
- o 08/17/2017 Judge denies Ashford's motion to reconsider
- o 08/17/2017 VA sends a letter to the AZ SAA pointing out remaining insufficiencies with the approval of Ashford's online programs, especially the issue of jurisdiction
- o 08/23/2017 Ashford filed a motion to vacate the District Court's ruling
- o 08/25/2017 Ashford filed an appeal of the District Court's ruling with the Iowa Supreme Court
- o 09/07/2017 AZ SAA responded to VA's 08/17 letter, standing by approval without providing justification of AZ SAA's jurisdiction
- o 09/13/2017 VA sends letters to Ashford's primary school certifying official and AZ SAA regarding the AZ approval with notification of possible VA action if a determination is made that AZ SAA does not have jurisdiction to approve Ashford's online programs
- o 09/18/2017 Ashford is granted a stay in Iowa
- VA has sent Ashford students 7 emails to date (most recent was August 4, 2017) – GI Bill enrollments have not changed substantially over time

## RELATED ISSUES
- The same approval issues were discovered in regard to 2 other online campuses:
  - o *Kaplan University Online* – VA worked with the FL and IA SAAs to have the approval moved to IA (the main campus is in Davenport, IA, the authority to grant degrees is from IA, and the accreditor recognizes the main campus in IA)
  - o *Strayer University Online* – VA worked with the UT and DC SAAs to have the approval moved to DC (the main campus is in DC, the authority to grant degrees is from DC, and the accreditor recognizes the main campus in DC)

2

**CURRENT STATUS**

- On September 13, 2017, Education Service issued a new facility code to Ashford University based on the approval of its online programs by the Arizona State Approving Agency (SAA)

- While VA finds the AZ approval legally insufficient, VA does not have the legal authority to directly reject the AZ SAA action (VA does however have independent authority to stop education payments where it believes a school does not meet statutory approval requirements)

- The change in approval from Iowa to Arizona will be seamless to GI Bill beneficiaries, and they will continue to receive GI Bill benefits uninterrupted during the process of this changeover in jurisdiction

- As noted in our correspondence to the Arizona SAA and the primary School Certifying Official, VA finds the AZ approval to be legally insufficient based on the information currently available.  While VA does not have the legal authority to directly reject the AZ SAA action, the Department does have the independent authority to stop education payments when it believes a school does not meet statutory approval requirements.  VA is continuing to assess the situation in order to determine the validity of the approval

3



2017-2018
ACADEMIC CATALOG

Appx0059

# SECTION ONE: INTRODUCTION

## Mission Statement of the University

The mission of Ashford University is to provide high-quality, accessible, affordable, innovative educational programs that meet the diverse needs of individuals pursuing advancement in their lives, professions, and communities.

## Purpose Statements

- To offer online and campus-based educational programs that meet the needs of diverse learners and support student success and completion.

- To integrate current technology that cultivates student-centered learning experiences led by dedicated and qualified faculty wherein students gain knowledge and build skills that support personal and professional development.

- To provide learning opportunities that help students synthesize theory and practice, enabling them to respond ethically to contemporary issues and complex problems.

- To foster a rich student learning environment focused on diverse social, ethnic, economic, and educational experiences and thereby prepare and empower graduates to be collaborative and inclusive within their communities.

- To work closely with employers and workforce development experts to identify the workplace skills and competencies that will enhance our graduates' abilities to contribute to their organizations, achieve greater professional and personal success, and strengthen their organizations.

- To place priority on innovation, continuous assessment, and improvement of student learning, curriculum development, access to learning resources, and responsive students services.

- To maintain operational, financial, and strategic strength that ensures the future of Ashford University.

## History

The University, originally named Mount St. Clare College, was founded in 1918 by the Sisters of St. Francis in Clinton, Iowa, as a junior college for women. In 1950, the College was accredited by the North Central Association of Colleges and Schools (now the Higher Learning Commission [HLC]) and has since maintained its regional accreditation. Its interest in adult learners began in 1962 when an evening program was introduced to serve the needs of students with career and family responsibilities. In 1967, the College became coeducational. Baccalaureate degree programs began in 1979 and graduate degrees in 2002, coinciding with the name change to The Franciscan University. In 2005, the University was acquired by Bridgepoint Education, Inc. and renamed Ashford University.

Also in 2005, HLC extended Ashford's accreditation to offer adult degree-completion programs. Following a Comprehensive Visit in 2006, the University's accreditation with HLC was reaffirmed for ten years. By 2009, three new Master's programs were added to the University's offerings. Today, the University has grown to the extent that students can choose from numerous programs at the undergraduate level and graduate level.

With the growth of the online student population, the University's leadership decided to move its headquarters from Clinton, Iowa to San Diego, California and to apply for accreditation with the Western Association of Colleges and Schools (WASC). On December 6, 2013, the University received final approval from the U.S. Department of Education for the migration of its accreditation to the WASC Senior College and University Commission (WSCUC).

## Accreditation

Ashford University is accredited by WASC Senior College and University Commission (WSCUC), 985 Atlantic Avenue, Suite 100, Alameda, CA 94501, (510) 748-9001, www.wscuc.org. WSCUC is a regional accrediting body recognized by the U.S. Department of Education and the Council on Higher Education Accreditation (CHEA).

## International Accreditation Council for Business Education

Ashford University has received specialized accreditation for its eligible business programs through the International Accreditation Council for Business Education (IACBE), located in Lenexa, Kansas, USA. The business programs in the following degrees are accredited by the IACBE:

- Master of Arts in Organizational Management

- Master of Business Administration

- Master of Public Administration

- Bachelor of Arts in Accounting

- Bachelor of Arts in Business Administration

- Bachelor of Arts in Business Economics

- Bachelor of Arts in Business Information Systems

- Bachelor of Arts in Entrepreneurship

- Bachelor of Arts in Finance

- Bachelor of Arts in Human Resources Management

# SECTION SEVEN: CLINTON CAMPUS UNDERGRADUATE PROGRAMS

## Overview

The Clinton Campus undergraduate programs combine traditional face-to-face classes with the convenience of online classes through the Forbes School of Business & Technology™ at Ashford University.

## Admission Policies and Procedures

### Conditional Admission Requirements

Applicants seeking admission to a Clinton, Iowa bachelor's degree program must meet the following admission requirements prior to the start of the first course at Ashford University:

- Be a resident of Iowa or Illinois;

- Have the ability to attend one 4.5 hour weekday evening session per week at the Ashford campus;

- Have access to a computer with an Internet connection and meet the minimum technology and minimum computer skills, abilities, features, system configurations, hardware, and software outlined in the *General Academic Information & Policies* section of this catalog;

- Have the ability to study in English indicated by one of the following**:

  o Achieved a recognized high school diploma or equivalent in which the primary language of instruction was English^;

  o Received a GED that was taken in English^;

  o A minimum of 30 transferable credits have been earned from regionally or approved nationally accredited colleges/universities in the United States or equivalent in which the primary language of instruction was English; or

  o Test of English as a Foreign Language (TOEFL) or International English Language Testing System (IELTS) examination taken within the past two (2) years. For the TOEFL, a minimum score of 500 paper-based or 61 Internet-based is required. For the IELTS, a minimum score of 6 is required. Copies of official scores must be submitted prior to

provisional enrollment, and official scores must be submitted for full admission; and

- Completion of admissions interview with Clinton Campus President or designee.

***Satisfying the English Language Requirement does not exempt a student who earned his/her high school diploma outside of the United States from the additional admission requirements for applicants with international academic credentials.*

^*If satisfying the English Language Requirement through a high school diploma, GED, or equivalent not completed in the United States, additional documentation may be required. Please contact the Registrar's Office for further information*

Conditionally admitted students who do not achieve provisional or full admission status after one attempt in the Ashford Promise, are allowed a second period of conditional admission in order to be provisionally or fully admitted.

Attendance in the first course (online or face-to-face) is confirmation of a student's intent to matriculate and, therefore, constitutes an attempt. Subsequent withdrawal from the course or institution, whether administrative or student-initiated, concludes an attempt.

Failing to meet Basic Academic Requirements (attaining a cumulative course grade of C- or better as of Day 6 of Week 3 in the first course(s) also concludes an attempt.

Students who fail to meet Basic Academic Requirements (BAR) are denied admission.

Students who are administratively withdrawn for failing to submit required Financial Aid documents during the conditional admission period are required to submit the required documents as a prerequisite to a subsequent attempt.

Ashford University reserves the right to deny admission or re-admission to any applicant. Ashford University does not admit students based on an "ability-to-benefit" test. Ashford University recognizes the importance of protecting student privacy and reserves the right to request documentation to establish or verify any student's identity at any time, for administrative or compliance purposes. Students are expected to provide such documentation, and failure to do so may be considered a violation of the Student Community Standards. The University may deny or rescind admission to any student for failure to authenticate his or her identity.

Applicants are conditionally admitted to a Bachelor's degree program when they submit a completed application indicating that they meet admission requirements outlined for that program and are approved by the Registrar's Office. Applicants in a conditional admission status are not

eligible for Title IV funds and are not considered regular students until granted provisional or full admission.

## Appeal Procedure for a 3rd Consecutive Conditional Admission Period or Ashford Promise

Provisional admission status must be attained by the end of the 2nd attempt of the Ashford Promise, while a student is in conditional standing. Students who fail to attain provisional admission by the end of their second attempt of the Ashford Promise must wait six months from the date they were denied admission to re-apply, or they may appeal the University's decision using the process outlined subsequently to request a 3rd consecutive attempt of conditional admission in the Ashford Promise.

Disagreements over academic quality will not be considered as an appropriate basis for such appeals. In cases of appropriate cause, the Ashford University Admission Appeals Committee reviews the appeals and renders a decision to the student. The decision will be communicated to the student via email from the Registrar's Office. Appeals must include an explanation of the event that occurred, which caused the student to not attain provisional admission to the University after two attempts.

Students must appeal in writing to the University Registrar. The appeal must be submitted to academic.progress@ashford.edu and approved prior to enrollment in any future courses. Additionally, the student's appeal letter must include:

- A reasonable explanation for the student's academic performance to date, which includes mitigating circumstances such as student injury/illness, death of a student's family member, or other reasons resulting in the undue hardship to the student;

- Compelling evidence that they have the ability to succeed in an academic program due to changed circumstances, experience, and/or successful completion of college level credits during their period of absence; and,

- A plan for completion of the coursework required to meet basic academic requirements during their coursework at Ashford University.

*Appeal decisions will be communicated from the Registrar's office to the student via email.*

## Additional Conditional Admission Requirements for Applicants with International Academic Credentials for Bachelor's Degree Programs

The following requirements are applicable to applicants relying on academic credentials earned outside the United States for admission. Please note that visa services are not provided and that the University will not vouch for a nonimmigrant alien student's status or associated charges. In addition to the conditional admission requirements outlined in the admission policy for Clinton, Iowa Bachelor's degree programs, copies of documentation indicating that the student meets the following admission requirements are required for conditional admission:

- Submit copies of an official evaluation from an approved evaluation service indicating that the student has met one of the following requirements:

  ○ Completion of a two-year program from an appropriately accredited post-secondary institution, as defined by Ashford University transfer credit policies.

  ○ A record of having achieved the equivalency of a United States high school diploma.

- All academic records from countries other than the United States must have been evaluated by one of the following evaluation services:

  ○ Educational Credentials Evaluators, Inc. (ECE); or

  ○ World Education Services (WES).

*Note: Applicants who have already had their international credentials evaluated prior to applying to Ashford University may petition the Office of the Registrar for acceptance of evaluations from other credible agencies.*

## Provisional Admission Requirements for Bachelor's Degree Programs

Students must meet the following requirements in order to be provisionally admitted to a Clinton, Iowa Bachelor's degree program at Ashford University:

- Attain a cumulative course grade of C- or better by Day 6 of Week 3 in their first online course; and

- Attend Week 4 of their first online or face-to-face course.

Attendance in Week 4 constitutes a student's confirmation of their intention to continue the program as a regular student. Upon attendance in Week 4, students are considered matriculated, regular students in their degree program. Students who meet the requirements for Full Admission will be fully admitted into the degree program.

## Transfer Credit Evaluation for Bachelor's Degree Programs

Upon being granted conditional admission to an undergraduate degree program, the Ashford University Registrar's Office staff will begin requesting transcripts of

a student's prior postsecondary education using the signed Transcript Request form.

The Registrar's Office will request official transcripts of all prior postsecondary education, as provided by the student in the application for admission, as well as any school appearing in the student's National Student Clearinghouse record. This includes:

- College or university transcripts from any regionally or approved nationally accredited postsecondary educational institution attended.
- Military credits evaluated for equivalency to college credits.

Students are responsible for submitting official documentation of any postsecondary credit previously earned through examination or credit earned through non-collegiate instruction to be evaluated for applicability to Ashford University program requirements.

Once transcripts of all prior postsecondary education have been received, the Registrar's Office staff will complete the student's transfer credit evaluation.

At the conclusion of the second (2nd) attempted Ashford University face-to-face course in a degree seeking program, if any transcripts of prior postsecondary education have not yet been received, the Registrar's Office staff will proceed with the transfer credit evaluation of any transcripts of postsecondary education received to date. The student is then admitted on Academic Watch due to failure to provide confirmation of a combined cumulative grade point average of 2.0 or higher in all prior postsecondary education. Additional transcripts may be submitted for evaluation at a later date, should they become available.

If it is determined prior to the conclusion of the second (2nd) attempted Ashford University face-to-face course that certain transcripts are unable to be provided, students may sign and submit an Authorization to Close File form thereby waiving potential transfer credits from previously attended schools, in order to expedite the transfer credit evaluation process. Any student who signs an Authorization to Close File form, thereby waiving potential transfer credits from previously attended schools, is admitted on Academic Watch due to failure to provide confirmation of a combined cumulative grade point average of 2.0 or higher in all prior postsecondary education. These transcripts may be submitted for evaluation at a later date, should they become available.

Students are responsible for reviewing their transfer credit evaluation as well as their scheduled courses with their Academic Advisor and informing them of any courses that they feel are duplicative or equivalent in content to previously completed coursework or non-traditional learning.

Students may submit official transcripts to Ashford University for review of transfer credits at any time.

## Full Admission Requirements for Bachelor's Degree Programs

The following requirements must be met prior to the conclusion of the second (2nd) attempted Ashford University face-to-face course in a degree seeking program. To start the third (3rd) face-to-face course, students must complete all the requirements subsequently outlined.

- Official TOEFL or IELTS scores, if required for admission.
  - Students that meet the English Language requirement with 30 transferable credits must submit the official transcript(s) where these credits were earned.
- Students who were provisionally admitted with completion of a two-year program from an appropriately accredited postsecondary institution as defined by Ashford University transfer credit policies must have official transcripts of those credits on file to meet full admissions requirements.

Students who do not meet all requirements will not be fully admitted and will be withdrawn from the program. Students may be readmitted to Ashford University at such time that all requirements for full admission have been met.

Students for whom the aforementioned required documentation does not apply, are fully admitted at the time of their transfer credit evaluation, in accordance with the *Transfer Credit Evaluation* policy. Students with no history of postsecondary education are fully admitted upon successful completion of the Conditional Admission Period.

The student is responsible for all eligibility-related assertions, attestations, and verifications relied upon by the institution during the admissions process. Should any of the student's information be subsequently established as inaccurate, resulting in the student's disqualification for full admission, the student will remain responsible for any and all financial obligations incurred while at the institution, including, but not limited to, financial aid funds which were consequently returned by the University.

If at any time it is determined that the student does not meet admission requirements outlined for the program as indicated on the application for admission, provisional and/or full admission will be rescinded and the student will be withdrawn from the University.

Undergraduate degree-seeking transfer students must provide official documentation of an undergraduate cumulative grade point average (CGPA) of 2.0 in all

combined undergraduate coursework attempted at regionally or approved nationally accredited colleges/universities since high school, or he or she is admitted on Academic Watch. Any student who signs an Authorization to Close File form, thereby waiving potential transfer credits from previously attended schools and failing to provide confirmation of a cumulative GPA of 2.0 or higher, is admitted on Academic Watch. Students on Academic Watch are required to have achieved a cumulative Ashford University GPA of 2.00 and successfully complete 67% of credits attempted at the conclusion of the first Satisfactory Academic Progress increment. Students who have not met the requirements at the conclusion of the Academic Watch period will be dismissed from the University. Please refer to the Satisfactory Academic Progress (SAP) Requirements in this section to review all related satisfactory academic progress guidelines.

*Graduates of an Ashford University undergraduate degree program who subsequently enroll in another undergraduate degree program will not be placed on Academic Watch. Students who change programs in the same degree level who have successfully completed one (1) SAP increment and are in good academic standing with the University will not be placed on Academic Watch.*

## Appeal of Dismissal Following Academic Watch

A student who has been dismissed for not meeting satisfactory academic progress requirements following Academic Watch may appeal to the University Registrar for re-admission. Appeals are evaluated by a committee comprised of the University Registrar or designee, and a representative from Academic Affairs. The decision of the Committee will be communicated in writing to the student by the Registrar's Office.

Additionally, the student's appeal letter must include:

- A reasonable explanation for the student's academic performance to date, which includes mitigating circumstances such as student injury/illness, death of a student's family member, or other reasons resulting in undue hardship to the student;

- Compelling evidence that they have the ability to succeed in an academic program due to changed circumstances, experience, and/or successful completion of graduate-level credits during the period of absence; and

- A plan for completion of the coursework required to meet satisfactory academic progress during the following payment period.

The passage of time does not substantiate eligibility for readmission or appeal for readmission, however, students who have experienced mitigating circumstances and have been dismissed from the University for failure to meet satisfactory academic progress requirements and have been denied re-admission after an appeal, may submit another appeal to be readmitted after six months have elapsed since their last appeal was received by the University. The appeal must meet the criteria outlined above and the student must present compelling evidence that they have the ability to succeed in an academic program due to changed circumstances, experience, and/or successful completion of graduate level credits since the last appeal was submitted.

*Note: See the Satisfactory Academic Progress Requirements in this section to review all related Satisfactory Academic Progress guidelines.*

## Additional Full Admission Requirements for Applicants with International Academic Credentials for Bachelor's Degree Programs

In addition to the requirements for full admission outlined in the admission policy for Clinton, Iowa Bachelor's degree programs, applicants relying on academic credentials earned outside the United States must submit an official evaluation sent direct directly from an approved evaluation service indicating that the student meets full admission requirements (student copies are not accepted) prior to the conclusion of the fourth (4th) attempted Ashford University course (equivalent to one academic term). To start the fifth (5th) course, applicants relying on academic credentials earned outside the United States must complete this requirement or they will be withdrawn from the program.

## Clinton, Iowa Undergraduate Program Grant

Students enrolled in a Clinton, Iowa undergraduate program are eligible for the Clinton, Iowa Undergraduate Program Grant so long as they remain continuously enrolled (or on an approved Academic Leave), attend the in-person instructional requirements for each required face-to-face course, and maintain satisfactory academic progress. Grants are applicable to courses for which tuition is in excess of $149 per credit hour.

# Academic Policies and Procedures

## Academic Calendar

The academic calendar is continuous (also known as non-term), rather than defined by semesters. In Clinton, Iowa undergraduate programs, students begin one five-week online course at the same time as one 10-week face-to-face course. Each 10-week course begins at the end of the preceding one. Students will typically take one five-week online course concurrent with each 10-week face-to-face course throughout the program, although exceptions may occur. Opportunities to enroll and begin courses in a Clinton, Iowa undergraduate degree program may be as frequent as five times per year.

There is an annual two-week Winter Break when courses are not scheduled. The Winter Break for 2017-2018 occurs from December 19, 2017 to January 1, 2018.

## Program Enrollment and Cancellation

Initial enrollment in Ashford University undergraduate programs is arranged through a University Enrollment Services Advisor. New students should contact an Enrollment Services Advisor to register. It is the student's responsibility to officially register for the program course of study. After initial enrollment, students will work with their Academic Advisors to register, add courses, or change their course schedule. Any change in the original registration must be communicated to the student's Academic Advisor.

Students have the right to cancel the Enrollment Agreement and obtain a full refund of charges through attendance in week 3 (day 21 of the first course). Applicants who want to cancel an enrollment agreement must contact their Enrollment Services Advisor prior to attending in Week 4 of their first online or face-to-face course. Applicants who cancel enrollment will be allowed one more period of conditional admission at Ashford University. Individuals who cancel their enrollment two times while in conditional standing may re-apply to Ashford University no earlier than six months from their last date of attendance.

Ashford University reserves the right to cancel or terminate the agreement if the applicant fails to meet basic academic requirements during conditional admission, violate the Student Community Standards, fail to make satisfactory academic progress, fail to make payment in accordance with the terms of his or her student finance agreement, and/or fail to meet attendance requirements as outlined in this Catalog. Applicants who are denied admission may be allowed one more period of conditional admission at Ashford University. Individuals who are denied admission two times while in conditional standing may re-apply to Ashford University no earlier than six months from their last date of attendance.

Students who receive federal student financial aid funds are entitled to a refund of money not paid from federal student financial aid program funds.

Students who obtain loan(s) to pay for an educational program will have the responsibility to repay the full amount of the loan plus interest, less the amount of any refund.

## Credit Maximum Policy

A maximum of 12 credits will be scheduled in the first 20 weeks of the program. Following that period, a student may appeal to the Campus President or designee to attempt up to 18 credits in any 20-week timeframe.

## Concurrent Course (Double Up) Registration Policy

Students are typically required to enroll in one five-week online course concurrently with each 10-week face-to-face course. Additional five week online course concurrent enrollments may occur at a student's request when the student has been fully admitted and has successfully completed the first two face-to-face courses.

## Attendance Policy for Undergraduate Courses

Students are expected to attend each week of the course. Attendance is defined as attending an in-person class session; or participating in an academic activity within the online classroom which includes posting in a graded discussion forum, submitting a written assignment or journal entry or submitting a quiz or exam. Postings not related to graded discussion forums or written assignments or journal entries not related to the actual assignment may be reviewed and disqualified for attendance purposes. Attendance on the basis of submitting a quiz or exam is determined by submission status at the conclusion of the calendar day (11:59 pm Mountain Time).

Each instructional week begins on a Tuesday and concludes on the following Monday. A student is recorded either absent or present each day based on participation in an academic activity. All recorded time stamps for assignment submissions, discussion board posts, and attendance records will reflect Mountain Time Zone.

Students enrolled in non-introductory courses who do not attend at least once in any seven consecutive day period will be issued an attendance warning. Students who do not attend at least once in any 14 consecutive day period will be dropped from the course(s) and administratively withdrawn from the University retroactive to the last date of recorded attendance. Students who attend on the first

day following 14 consecutive days of non-attendance will not be dropped from their course or administratively withdrawn.

Students who participate in an academic activity in a course prior to its official start date will not be dropped from their course during Week 1 for non-attendance as long as they subsequently attend at least once during Week 1 of the course.

Students are required to attend the weekly in-person class sessions with Clinton, Iowa Bachelor's Programs. Exceptions for mitigating circumstances such as student injury/ illness, death of a student's family member, or other reasons resulting in undue hardship to the student must be approved by the Clinton Campus President or designee.

Please refer to drop policies for grade implications when not meeting attendance requirements. Students who drop a course or are dropped for not meeting attendance requirements and do not attend within 14 days of their last date of attendance will be administratively withdrawn from the University. A student's last date of attendance following successful completion of a course is the end date of that course. The University may schedule periods of non-enrollment during which no courses are scheduled. When this occurs, such as during the annual winter break, the non-enrollment period may extend the 14 day limit to include the break. No approved Academic Leave can exceed 45 days including University scheduled periods of non-enrollment.

For information regarding the determination of withdrawal date, please see the *Withdrawal from the University* policy in the *General Academic Information and Policies* section in this *Catalog*.

*Note: New students who do not meet attendance requirements for, or do not complete, their first course will be administratively withdrawn from the University and must work with their Enrollment Services Advisor to reschedule their enrollment in the program.*

**Academic Participation**

In addition to meeting attendance requirements, students are expected to participate in their courses by actively engaging in weekly discussion forums with substantial posts and completing the required assignments for each week. A list of all assignments can be found within the course calendar in each class and also by week in the weekly instructional units.

Failure to meet academic participation requirements may negatively impact an assignment and/or course grade. All recorded time stamps for assignment submissions, discussion board posts, and attendance records will reflect Mountain Time Zone.

Students who anticipate being absent for an entire week of a course should contact the instructor in advance and make arrangements to complete the required assignments. While students cannot be tardy in an asynchronous learning environment, nor can they cut class in a traditional sense, acceptance of late or make-up work is at the discretion of the instructor and does not waive attendance requirements.

## Academic Leave

Students who need to take a break in attendance must complete the Clinton, Iowa Undergraduate Program Academic Leave Request form. Academic Leave requests will be reviewed for consideration by the Clinton Campus President.

Students may be required to enroll in additional online courses concurrently within the Clinton, Iowa Undergraduate program if a core course is not successfully completed at the time it is scheduled.

Students who do not return on their scheduled return date from Academic Leave may be withdrawn from the program. Exceptions may be made at the discretion of the Campus President.

# Clinton, Iowa Bachelor's Program Academic Policies

## Residency Requirements in Bachelor's Programs

At least 30 credits included in the degree must be Ashford University credits. Credits earned through Prior Learning Assessment are not included in the 30-credit calculation. Students are not required to complete their final course toward degree completion at Ashford University.

## Bachelor's Program Course Sequencing

All Bachelor's program students are required to successfully complete EXP 105 Personal Dimensions of Education as their first course. Students with zero (0) traditional college-level transferable credits are also required to successfully complete an online orientation prior to enrolling in credit-bearing coursework as outlined in the *Admission Policies and Procedures for Online Bachelor's Degree Programs*. Following successful completion of orientation, students are required to successfully complete EXP 105. Unsuccessful completion of EXP 105 will result in the rescheduling of the course and revision of future course sequence. A minimum grade of C- is required to successfully complete the course. EXP 105 cannot be replaced or waived by credit in transfer, unless a student provides proof of one of the following:

- 90 credits of lower-division transfer credits that are applicable to the student's chosen degree program prior to initial program enrollment;

- A previously earned Bachelor's degree at Ashford University, or from a regionally or approved nationally accredited institution; or

- A Bachelor's degree from a country other than the United States that has been evaluated by an approved evaluation service, and accepted by Ashford University as equivalent to a Bachelor's degree in the United States.

- Earned nine (9) credits or more at Ashford University with a cumulative grade point average of 3.0 or higher.

Students may request changes to course registration by contacting their Enrollment Services Advisor, or Academic Advisor and should include any appropriate supporting documentation. It is the student's responsibility to inform his or her Enrollment Services Advisor and Academic Advisor of potential equivalent transfer courses and to provide appropriate supporting documentation prior to each course start date.

## General Education Course Sequence:

The following General Education course sequence is the standard for the University. On occasion, courses may be substituted to satisfy specific General Education requirements.

- EXP 105 Personal Dimensions of Education (3 credits)

- GEN 102 Digital Literacy for Life & the Workplace (3 credits)

- ENG 121 English Composition I (3 credits)

- GEN 103 Information Literacy (3 credits)

- ENG 122 English Composition II (3 credits)

- COM 200 Interpersonal Communication (3 credits)

- ENG 225 Introduction to Film (3 credits)

- PHI 103 Informal Logic (3 credits)

- PHI 208 Ethics & Moral Reasoning (3 credits)

- POL 201 American National Government (3 credits)

- ANT 101 Introduction to Cultural Anthropology (3 credits)

- SCI 207 Our Dependence upon Environment (4 credits)

- MAT 222 Intermediate Algebra (3 credits)

- GEN 499 General Education Capstone (3 credits)
  *Capstone prerequisite: Completion of a minimum of 75 credits*

## Graduation Requirements for Bachelor's Degrees

To be eligible for a Bachelor's degree, a student must successfully accomplish the following:

- Completion of a minimum of 120 total credits; including:

  - Minimum of 30 credits completed at the University as a matriculated student (residency requirement); and

  - Minimum of 30 credits of upper-division coursework, including 18 credits of upper-division coursework in the chosen major (upper-division requirement).

- Completion of the General Education requirements, including competencies;

- Completion of all required major, minor, and specialization course requirements; and

- Minimum cumulative grade point average of 2.00 in all coursework attempted at the University.

Note: The date of degree conferral recorded on the student's transcript and diploma will reflect the date the student completes all academic degree requirements. However, release of transcripts, diplomas, and verifications for degrees awarded are contingent upon submission of the Petition to Graduate form, payment of the graduation fee, and payment of any outstanding balances with the University.

Program will be noted on the transcript as a Bachelor of Arts in Business Administration. Programs with transfer concentrations or specializations are also noted on the transcript.

# Forbes School of Business & Technology

## Bachelor of Arts in Business Administration

The BA in Business Administration will provide students with the technical knowledge, critical thinking skills, and the ability to communicate ideas in a collaborative environment. Graduates will be equipped with a practical understanding of these and other important business concepts and skills. Ashford University takes great pride in ensuring that students are challenged to open their minds to new ways of thinking and problem solving. The BA in Business Administration degree will assist students in meeting both personal and professional goals.

*Special Terms and Conditions: Successful completion of this program by itself does not lead to licensure or*

CLINTON CAMPUS UNDERGRADUATE PROGRAMS

*certification in any state, regardless of concentration or specialization. Students seeking licensure or certification in a particular profession are strongly encouraged to carefully research the requirements prior to enrollment. Requirements may vary by state. Ashford University does not guarantee that any professional organization will accept a graduate's application to sit for any exam for the purpose of professional certification.*

## Program Outcomes

Business Administration major graduates will be able to:

1. Collaborate to achieve team goals;

2. Develop an awareness of their leadership style;

3. Evaluate a situation and apply an effective leadership style;

4. Use technology tools related to their area of emphasis;

5. Manage change within a dynamic business environment; and

6. Create a strategic business plan.

## Program Requirements

Total number of credits required: 120 credits
General Education Requirements: *43 credits
Major Course Requirements: *45 credits
Electives: 35 credits
Students must earn a minimum of 30 upper-division credits.

*In this program, 3credits from the major may also satisfy General Education requirements.

## Major Course Requirements (45 credits)

- CGD 218 Visual Literacy in Business (3 credits)

- MGT 330 Management for Organizations (3 credits)

- BUS 330 Principles of Marketing (3 credits)

- MGT 415 Group Behavior in Organizations (3 credits)

- MGT 435 Organizational Change (3 credits)

- ACC 205 Principles of Accounting I (3 credits)

- ACC 206 Principles of Accounting II (3 credits)   *Prerequisite: ACC 205*

- BUS 311 Business Law I (3 credits)

- ECO 203 Principles of Macroeconomics (3 credits)

- ECO 204 Principles of Microeconomics (3 credits)

- BUS 303 Human Resource Management (3 credits)

- ^BUS 308 Statistics for Managers (3 credits)

- *PHI 445 Personal & Organizational Ethics (3 credits)

- ^BUS 401 Principles of Finance (3 credits)   *Prerequisite: ACC 205 or ACC 208 or ACC 281*

- BUS 402 Strategic Management & Business Policy (3 credits)   *Prerequisites: BUS 201 or MGT 330; ACC 205, ECO 203 or ECO 204; GEN 499*

* Satisfies General Education requirements.
^ Quantitative Reasoning Core Competency requirement must be met before taking these courses.

*Major courses will be offered at the Clinton, Iowa campus.*

## Elective Courses Offered at the Clinton, Iowa campus (18 credits)

- BUS 317 – Introduction to Advertising (3 credits)

- BUS 319 – The Social Responsibility of Organizations (3 credits)

- BUS 340 - Business Communications (3 credits)

- BUS 357 – International Business (3 credits)

- BUS 370 – Organizational Development (3 credits)

- MGT 380 – Leadership for Organizations (3 credits)

## Transfer Concentration Option

Students may add a transfer concentration to the BA in Business Administration program by transferring in 12 applicable credits in one of the following areas:

- Business Management

- Marketing

- Accounting

- Finance

- Hospitality Management

- Retail Management

- Computer Science Studies

Transfer concentrations are intended for students who have experience and/or extensive transfer credit coursework in a field of study at the time of admission to the program. The following major courses are designated for substitution with concentration coursework, where appropriate: BUS 303, MGT 415, MGT 435, and PHI 445. For additional details, see *Transfer Concentration Guidelines* in the *General Academic Information and Policies* section of the *Catalog*.

Appx0280

| | |
|---|---|
| **From:** | Marks, Michael W., VBAMUSK |
| **To:** | Ruhlman, James, VBAVACO; Amitay, Cheryl, VBAVACO; Bogue (English), Charmain VBAVACO; Alphonso, Thomas, VBAVACO; Dworakowski, Patrick A., VBAVACO; Fisher, Janice, VBAVACO |
| **Cc:** | Worley, Robert, VBAVACO; Stephens, Pam S., VBAMUSK; Baldwin, Gayle, VBAMUSK; Noles, Robyn L., VBAMUSK; McMullen, Mary Ann, VBAMUSK; Swafford, Suzanne, VBAPHNX; Galluzzi, Judy B., VBAMUSK; Scott, Sherry L., VBAMUSK; Young, Rusty, VBAMUSK |
| **Subject:** | RE: Ashford into AZ |
| **Date:** | Wednesday, July 26, 2017 9:20:58 AM |

James:

It is for their on-line instruction.  Understood the main campus is not in AZ.  We need to review the material the SAA provided especially the site visit report.

Michael

**From:** Ruhlman, James, VBAVACO
**Sent:** Wednesday, July 26, 2017 7:01 AM
**To:** Amitay, Cheryl, VBAVACO; Marks, Michael W., VBAMUSK; Bogue (English), Charmain; Alphonso, Thomas, VBAVACO; Dworakowski, Patrick A., VBAVACO; Fisher, Janice, VBAVACO
**Cc:** Worley, Robert, VBAVACO; Stephens, Pam S., VBAMUSK; Baldwin, Gayle, VBAMUSK; Noles, Robyn L., VBAMUSK; McMullen, Mary Ann, VBAMUSK; Swafford, Suzanne, VBAPHNX; Galluzzi, Judy B., VBAMUSK; Scott, Sherry L., VBAMUSK; Young, Rusty, VBAMUSK
**Subject:** RE: Ashford into AZ
**Importance:** High

For what, residential courses?  Ashford's main campus is not in AZ!!!

James D. Ruhlman
Education Service
Acting Deputy Director for Program Management

**From:** Amitay, Cheryl, VBAVACO
**Sent:** Tuesday, July 25, 2017 5:29 PM
**To:** Marks, Michael W., VBAMUSK; Ruhlman, James, VBAVACO; Bogue (English), Charmain
**Cc:** Worley, Robert, VBAVACO; Stephens, Pam S., VBAMUSK; Baldwin, Gayle, VBAMUSK; Noles, Robyn L., VBAMUSK; McMullen, Mary Ann, VBAMUSK; Swafford, Suzanne, VBAPHNX; Galluzzi, Judy B., VBAMUSK; Scott, Sherry L., VBAMUSK; Young, Rusty, VBAMUSK
**Subject:** RE: Ashford into AZ

Thank you for the heads up. To be clear, you are saying SAA received an Ashford approval package to review, correct? (and not that she already approved and sent to ELR to review for completeness).

Sent with Good (www.good.com)

-----Original Message-----
**From:** Marks, Michael W., VBAMUSK
**Sent:** Tuesday, July 25, 2017 05:06 PM Eastern Standard Time
**To:** Amitay, Cheryl, VBAVACO; Ruhlman, James, VBAVACO

**Cc:** Worley, Robert, VBAVACO; Stephens, Pam S., VBAMUSK; Baldwin, Gayle, VBAMUSK; Noles, Robyn L., VBAMUSK; McMullen, Mary Ann, VBAMUSK; Swafford, Suzanne, VBAPHNX; Galluzzi, Judy B., VBAMUSK; Scott, Sherry L., VBAMUSK; Young, Rusty, VBAMUSK
**Subject:** Ashford into AZ

FYSA

Just received a call from the AZ SAA she has accepted Ashford's approval to offer online courses.  The approval was sent to the ELR prior to our WAVES conference. Know if accepted there are roughly 6,000 student records that need to be transferred to the Muskogee jurisdiction if accepted.

Michael W. Marks
Chief Education Liaison Officer
918.781.4074 | Office
267.600.5185 | Cell

**ARIZONA DEPARTMENT OF VETERANS' SERVICES**
**STATE APPROVING AGENCY - ARIZONA**

*INSTITUTIONAL INSPECTION/EVALUATION REPORT*

| | |
|---|---|
| Name of School or Facility *Ashford University* | Date *6-28-17* |
| Main Address (Street, City, Zip Code) *2555 E. Camelback #300, Phx 85016* | Telephone No. *866-753-1883 x 27400* |
| Address at which instruction will be given (Street, City, Zip Code) *On Line - same as above* | |
| Official(s) Interviewed: *Vickie Schray* | Title: *Exec VP Regulatory Affairs & Public Policy* |
| Official(s) Interviewed: *Sheri Jones* | Title: *SVP Shared University Services & Strategic Planning* |
| *Conan Stanley* | *= Director of Veteran & Military Financial Service* |

**FACILITIES:**

Is the facility a stand-alone or located in an office complex?   STAND ALONE ☐   OFFICE COMPLEX ☑

Is the institutional operation in a private home?   YES ☐   NO ☑

Is the school operating with, or, as subsidiary of a commercial enterprise?   YES ☑   NO ☐

Is the facility American Disability Act (ADA) equipped?   YES ☑   NO ☐

Is there adequate parking for the facility?   YES ☑   NO ☐

Is the security adequate for students and staff?   YES ☑   NO ☐

Is there adequate space in classrooms, offices, and hallways?   YES ☑   NO ☐

Is the Lighting adequate in each classroom and office?   YES ☑   NO ☐

Is the Heating & Cooling adequate for the facility?   YES ☑   NO ☐

**Review their financial record keeping.** Is there an adequate record keeping system to show financial ledgers to include accounts receivable and payable for each student?   YES ☑   NO ☐

**Review the student record keeping system.**
Are the student records kept locked up?   YES ☑   NO ☐
Are records available for student review?   YES ☑   NO ☐     *Campus Vue*

What documents are kept in each student file?
*Ledger, application, transcripts, certs, attendance program of study*

Are adequate records kept to show student met admission criteria?   YES ☑   NO ☐
Adequate records to show attendance, grades, progress, transcripts, financial ledgers, and student conduct?
YES ☑   NO ☐

SAA-034
November 2016

| |
|---|
| Is facility in compliance with all state and federal regulations such as fire, safety, building codes, sanitation and health codes?   YES ☑   NO ☐ |
| Are the instructional tools, supplies and equipment adequate for the number of instructors and students? YES ☐   NO ☐   *online* |
| Does the school have their Arizona State Board for Private Postsecondary Education license displayed (if required)? YES ☐   NO ☐   N/A ☑ |
| Are there other certificates and accreditations displayed?   YES ☐   NO ☑ |
| Are professional procedures used to enroll students?   YES ☑   NO ☐ |
| **Review Institutions advertisements, brochures and /o marketing materials.**  Does the institution appear to utilize advertising of any type which is erroneous or misleading, either by actual statement, omission or intimation? YES ☐   NO ☑ |
| **Does the school contract with any other institutions or entities?  If yes, review and copy contracts if they have not already been provided.** YES ☐   NO ☑ |
| What is the institutions requested approval date(s)?  *July 10, 2017* |
| **Non-accredited Schools Only:** Facilities are available to train _____ students in all programs. |
| REMARKS: |

Signed _____

SAA Education &Training Specialist

Printed Name  *Leanne DeKing*

| | |
|---|---|
| **From:** | Marks, Michael W., VBAMUSK |
| **To:** | Ruhlman, James, VBAVACO |
| **Cc:** | Worley, Robert, VBAVACO; Amitay, Cheryl, VBAVACO; Alphonso, Thomas, VBAVACO; Swafford, Suzanne, VBAPHNX; Thompson, Bryan (OGC); Dworakowski, Patrick A., VBAVACO; Fisher, Janice, VBAVACO; Marks, Michael W., VBAMUSK |
| **Subject:** | RE: Ashford into AZ |
| **Date:** | Friday, July 28, 2017 2:06:07 PM |
| **Attachments:** | Ashford-Accreditor.pdf |

Spoke with Christopher Oberg who oversees Ashford University's portfolio.  I asked if WASC accredited any online programs originating from AZ?   He said the school has not provided anything indicating they were operating in AZ.  However, information in the approval package the ELR received conflicts with his statement.  .  See the attached letter signed by Mr. Oberg.  The ELR provided me a copy after my conversation with him this morning.

He made two statements regarding accreditation and Ashford.   First, in order to be accredited by WASC, Ashford's headquarters must be located in California, Hawaii, and the Pacific islands.  Since this meets this and other criteria they are recognized by WASC.  Secondly, since Ashford  offered on-line training could be taught to students regardless of location.

Ashford's suite listed on the application is 10 minutes away from the RO.  The ELR drove by and took two pictures.  The first show the main sign outside of the facility nothing to indicate Ashford is operating out of that complex.  She went inside and took a picture of the door.  Know the picture is blurry but the sign is metal and say Bridgepoint Education and the suite number.  Not Ashford University.

---

**From:** Ruhlman, James, VBAVACO
**Sent:** Wednesday, July 26, 2017 12:03 PM
**To:** Marks, Michael W., VBAMUSK
**Cc:** Worley, Robert, VBAVACO; Amitay, Cheryl, VBAVACO; Alphonso, Thomas, VBAVACO
**Subject:** FW: Ashford into AZ

Michael,

Please have somebody check with WASC to see if they have accredited any online programs emanating from a teaching location in Phoenix AZ.  There is nothing currently on the WASC website indicating a teaching location, much less a main campus, in AZ.

https://www.wscuc.org/institutions/ashford-university

The WASC Staff Liaison in charge is Christopher Oberg, coberg@wscuc.org, (510) 995-3175

James D. Ruhlman
Education Service
Acting Deputy Director for Program Management

---

**From:** Marks, Michael W., VBAMUSK
**Sent:** Tuesday, July 25, 2017 5:06 PM
**To:** Amitay, Cheryl, VBAVACO; Ruhlman, James, VBAVACO
**Cc:** Worley, Robert, VBAVACO; Stephens, Pam S., VBAMUSK; Baldwin, Gayle, VBAMUSK; Noles, Robyn L., VBAMUSK; McMullen, Mary Ann, VBAMUSK; Swafford, Suzanne, VBAPHNX; Galluzzi, Judy B., VBAMUSK; Scott, Sherry L., VBAMUSK; Young, Rusty, VBAMUSK
**Subject:** Ashford into AZ

FYSA

Just received a call from the AZ SAA she has accepted Ashford's approval to offer online courses.  The approval was sent to the ELR prior to our WAVES conference. Know if accepted there are roughly 6,000 student records that need to be transferred to the Muskogee jurisdiction if accepted.


Michael W. Marks
Chief Education Liaison Officer
918.781.4074 | Office
267.600.5185 | Cell



**WASC** Senior College and University Commission

June 30, 2017

Laura Noone, MBA, JD, Ph.D.
Senior Vice President of Academic Affairs and Chief Academic Officer
Accreditation Liaison Officer
Ashford University
8620 Spectrum Center Boulevard
San Diego, CA 92123

Dear Dr. Noone:

This letter confirms that Ashford University is accredited by the WASC Senior College and University Commission (WSCUC). Ashford University received Initial Accreditation from WSCUC on July 10, 2013, for a period of five years, with a scheduled reaffirmation review in fall 2017 (Offsite Review) and spring 2018 (Accreditation Visit). All programs, courses, and departments are included under this accreditation, including distance education programs. This accreditation covers the following locations:

Ashford University Main Campus
8620 Spectrum Center Boulevard
San Diego, CA 92123

Ashford University Clinton Campus
1310 19th Avenue NW
Clinton, IA 52732

You have notified the agency that you plan to establish an additional location at:

Ashford University Administrative Online Student Services Center
2555 E. Camelback Road, Suite 250
Phoenix, AZ 85016

This center will equally be authorized to operate under the institution's accreditation with the agency.

As you know, WSCUC is one of seven regional accrediting commissions in the United States recognized by the U.S. Department of Education and the Council for Higher Education Accreditation.

Sincerely,

Christopher N. Oberg, PhD
WSCUC Vice President and COO



# Ashford University Online
# Updates – Discussion Points
# July 21, 2017

| **GI Bill Impacts** |
| --- |

**Ashford** –  1 school in Iowa/CA
      –  8K beneficiaries, $38M in FY16
      –  6,683 students enrolled between August 1, 2016, and June 22, 2017

**ASHFORD UNIVERSITY ONLINE**

**ISSUE**

Ashford University, a for-profit school owned by Bridgepoint Education, has filed suit in Iowa to remain approved for the GI Bill in Iowa.  This impacts over 5,000 beneficiaries.  Should approval not be granted, those beneficiaries could not continue to be enrolled at Ashford.

**BACKGROUND**
- To date, have received approximately 18 complaints for Ashford University - Online
- Ashford is currently "approved" in Iowa
- For a fully on-line school to be approved for GI Bill *(Note:  approval is a function of the State Approving Agency (SAA))*
  - Approval should be in the state where the main campus is located
    - Ashford's HQ is California
    - Ashford is licensed to confer degrees in California
    - Ashford is accredited by the Western Association of Schools and Colleges (WASC) which covers CA, but not IA

**BRIEF HISTORY**
- 9/2013 – email from Iowa SAA notifies VA that Ashford is changing its accreditation to WASC but will continue to operate its online center and residential campus in Iowa
- 3/2016 – Conference call w/DoE and California AG questioning Ashford's approval in Iowa
- 3/2016 – VA reviewed relevant information, sends communication to Iowa SAA requesting an explanation…VA sends follow up email 4/2016
- 5/2016 – Iowa SAA issues letter to Ashford indicating their intent to no longer grant approval.  Ashford responds stating rationale for remaining under the Iowa SAA
- 5/2016 – VA sends 'informal' email to Ashford urging them to seek approval in California
- 5/2016 – Iowa Department of Education legal counsel sends formal reply to Ashford stating they will no longer have program approval once Ashford's residential campus closes on June 30
- 5/2016 – Ashford sends formal letter to California SAA expressing intent to seek program approval in California
- 6/2/2016, Ashford delivers application to California SAA
- 6/8/2016, California SAA informs Ashford application is complete

1

- o 6/18/2016 California SAA requests additional information
- o 6/20/2016 Iowa SAA issues a stay of withdrawal until September 18 in order for California/Ashford to resolve approval
- o 6/30/2016 Ashford withdraws its application to California SAA
- o 8/12/2016 Ashford notified CA SAA that they will seek continued approval in IA
- o 8/19/2016 IA SAA sent letter to Ashford reiterating its position that IA does not have jurisdiction to approve Ashford's online programs
- o 8/19/2016 Ashford filed an amended motion against the IA Dept of Education requesting a restraining order and reversal of the IA SAA's withdrawal of approval
- o 9/2/2016 Hearing on the above amended motion…awaiting the Court's decision/direction
- o 9/15/2016 Judge grants a stay with no timeline (in force until a decision is issued)
- o 01/09/2017 VA sends email to Ashford students
- o 06/23/2017 Judge holds hearing on the complaint
- o 07/17/2017 Judge dismissed Ashford's petition (i.e., ruled in favor of the IA SAA)
- VA has sent Ashford students 6 emails to date (most recent was July 20, 2017) – very little change in enrollments.

## ACTIONS/SCRUTINY BY OTHER ENTITIES

- Unrelated to the IA approval issue, after investigation, CFPB settles with Ashford for deceiving students into taking private loans that cost more than advertised resulting in $23.5M in loan forgiveness and an $8M penalty to CFPB.
  - o CFPB provided VA with their findings.  OGC has reviewed findings and concurs that VA can take action to remove Ashford's Principles of Excellence designation.  Letters in draft.
- CFPB referred us to CA AG office who has been investigating Ashford for four years
  - o VA made initial contact with CA AG office to discuss the investigation
  - o Sent them a written request for information on their investigation of Ashford
  - o VA sent follow up email to CA AG requesting to evidence they can share regarding their Ashford investigation
  - o Discussed the issue with CA AG representative at an AG Training Conference on Veterans issues…no information has been forthcoming
- There has been significant scrutiny of Ashford
  - o CFPB – settled with Ashford (per above)
  - o California Attorney General is investigating, expect 'settlement' soon
  - o SEC – currently investigating
  - o Iowa Attorney General – settlement in 2014 for $7.25 million
  - o Massachusetts and New York Attorney Generals have or currently investigating

## RELATED ISSUES

- The same approval issue was discovered in regard to 2 other online campuses:
  - o *Kaplan University Online* – VA worked with the FL and IA SAAs to have the approval moved to IA (the main campus is in Davenport, IA, the authority to grant degrees is from IA, and the accreditor recognizes the main campus in IA)
  - o *Strayer University Online* – VA is currently working with the UT and DC SAAs to have the approval moved to DC (the main campus is in DC, the authority to grant degrees is from DC, and the accreditor recognizes the main campus in DC)

2

## DISCUSSION

**COURSES OF ACTION**

It is the view of the IA SAA that the disapproval of Ashford's programs was effective as of the Court's decision on July 17, 2017.  However, the Court's decision is not final until the expiration of a 30 day appeal period which ends on August 16, 2017, unless Ashford University appeals the decision and the court delays implementation (i.e., issues a stay).

**VA –**

1.  Will continue to pay benefits.

    a.  If **Ashford** does not appeal or the appellate court does not delay implementation –

        **VA** would continue to pay benefits for classes that started before August 16, 2017.  Ashford works on 5-week terms that start every Monday.  VA would have no basis upon which to pay benefits for any future classes.

    b.  If **Ashford** appeals the decision and the court delays implementation, the finalization of the IA SAA's withdrawal of approval could be delayed for months or years, or be reversed by a Court.

2.  Could take action under the Department's independent authority to suspend new enrollments and reenrollments due to Ashford University's defective program approvals that aren't aligned with VA's regulations regarding SAA jurisdiction.  The process to disapprove enrollments, as detailed in VA regulations (38 C.F.R. § 21.4210(d)), is undertaken at the discretion of the Director of the Regional Processing Office of jurisdiction (St. Louis, MO), and would take a minimum of 60 days.  A draft notification letter has been drafted and vetted through the Office of General Counsel.  This process would allow for Ashford to request a hearing (Committee on Educational Allowances at the RPO) with appeal rights to Education Service.

3.  Could pursue both options (1) and (2).  Since VA's statutory is separate from the SAA's statutory authority, this "dual track" approach would prevent the payment of benefits for an indefinite period of time due to continued litigation between Ashford and the IA.  However, if the SAA's withdrawal action becomes final before VA's action is completed, action under (2) would cease since the programs would be disapproved, thus preventing the approval of new enrollments and reenrollments.

**QUESTIONS & ANSWERS**

**Question:**  Do VBA and OGC believe that the Iowa SAA has the jurisdiction to approve Ashford University's online programs?

**Answer:**  No.  The evidence of record indicates that the California SAA has the jurisdiction to approve those programs.

3

**Question:** Does VA have the authority to "temporarily approve" Ashford University's online programs until the appropriate SAA approves them?

**Answer:** No. No temporary approval authority exists in statutory or regulatory provisions governing program approval. Once a program is approved, it remains approved unless it is determined that the program isn't complying with an applicable statutory or regulatory requirement.

**Question:** Since there is no temporary approval authority, could VA just "approve" Ashford University's online programs?

**Answer:** VA may only approve accredited courses when acting in the role of the SAA. Consequently, VA would only have the authority to approve those programs if the Department either (a) terminated the contract, or (b) did not renew the contract, with the State which would otherwise have jurisdiction (which, in the present case, is California).

**Question:** If VA were to act as the SAA, would the Department have to follow the same detail oriented and resource intensive process used by the SAAs in order to determine approvability on a program-by-program basis (e.g., the submission of applications, supporting documents, catalogs certified as "true and correct," etc.)?

**Answer:** Yes. The statutory and regulatory requirements for program approval are the same regardless of whether the activities are performed by VA or a State entity. Consequently, it would likely be an extremely time-consuming and laborious process.

4

# IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | | |
|---|---|---|
| **ASHFORD UNIVERSITY, LLC, and,** | ) | |
| **MICHAEL BLACKWELL,** | ) | **Case No. 05771 EQCE080188** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **PLAINTIFFS' MOTION TO** |
| **v.** | ) | **RECONSIDER, AMEND OR** |
| | ) | **ENLARGE FINDINGS** |
| **IOWA DEPARTMENT OF** | ) | |
| **EDUCATION and the IOWA STATE** | ) | |
| **APPROVING AUTHORITY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Pursuant to Iowa Rule of Civil Procedure 1.904(2), Plaintiffs Ashford University, LLC (the "University") and Michael Blackwell hereby submit this Motion to Reconsider, Amend, or Enlarge Findings with respect to the Court's Ruling on Petition for Judicial Review dated July 17, 2017 (the "Ruling").[1] The Ruling (1) overlooks multiple, material facts and legal issues, (2) fails to specify or to provide any support for several key (and erroneous) legal conclusions, (3) fails to make necessary factual findings, (4) contains critical factual mistakes, and (5) misapplies the law to the facts in the record. The Ruling simply cannot stand and could, *inter alia*, jeopardize the educations and finances of thousands of Veteran Students if it is not amended and enlarged to address its deficiencies. Plaintiffs respectfully suggest that this Court should address the errors and deficiencies in the Ruling now, thereby preventing further protracted proceedings that would be to the detriment of the parties hereto, the Veteran Students, and the general public.

The University has thousands of Veteran Students and is highly regarded for its provision

---

[1] The terms defined in Plaintiffs' Brief in Support of Petition for Declaratory Judgment and Injunctive Relief ("Brief" or "Pls. Br") and Plaintiffs' Reply in Further Support of Petition for Declaratory Judgment and Injunctive Relief ("Reply") shall have the same meanings in this Motion.

Notwithstanding IDOE's clear use of "withdrawal" in its correspondence with the University and its express application of 38 U.S.C. § 21.4259-1 to the situation of a campus closure—which is what it erroneously claims occurred in this case—the Ruling, without citation to any authority, simply concludes that "[t]his rule does not apply to the situation presented in this case, and Ashford [University] has not proven that IDOE's interpretation of this regulation is erroneous or that IDOE failed to follow prescribed procedures or decision-making process, in violation of Code Sections 17A.19(10)(c) or (d)." Ruling at 12. Because 38 C.F.R. § 21.4259 is the only applicable regulation, and because there is nothing in the record before this Court reflecting IDOE's consideration and application of the legal requirements pertaining to a withdrawal of approval, the Ruling should be amended to find that IDOE failed to follow the prescribed procedures or decision-making process for withdrawing approval for GI Bill benefits purposes.

## III.  THE RULING MISAPPLIES THE MOOTNESS DOCTRINE, 38 C.F.R. §§ 21.4250 AND 21.4266, AND THE SUBSTANTIAL EVIDENCE STANDARD.

### A.  The Ruling Errs in Finding the Continued Status and Operation of the Teach-Out to Be Moot.

The Ruling finds moot the issue of whether the ongoing teach-out contradicted IDOE's sudden determination (under pressure from the VA) that the University's "main campus" within the meaning of 38 C.F.R. §§ 21.4250 and 21.4266[8] was in California by the summer of 2016. The Ruling reaches that conclusion on the sole basis that "the residential teach-out program ended June 1, 2017." Ruling at 14. However, this finding is factually inaccurate, as reflected both in the undisputed record and in the arguments of IDOE's counsel. *See* Pls. Br. at 3; Reply at 3-4; Transcript of June 23, 2017 Hrg. (Ex. A) at 23. As of July 2016, the residential teach-out

---

[8] Assuming that these regulations apply, for which, as stated above, the Ruling provides no basis.

program was "scheduled to remain in operation through ***at least June 1, 2017***, ***and is now scheduled to continue in operation indefinitely thereafter***." Reply at 4, citing Third Am. Ptn. ¶ 42 (emphasis added); *see also id.* at 3 (stating that the teach-out program "will not conclude until after June 30, 2017"); *id.* at 15-16; Transcript of June 23, 2017 Hrg. (Ex. A) at 23. The Ruling ignores these material facts and should be amended to address them and to find the issue is not moot.

The Ruling should be further amended to correct the misapplication of the public-interest exception to the mootness doctrine and enlarged to specify the Court's findings under all of the exception's factors. The public-interest exception depends on the following three factors: "(1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or similar problem." *Rush v Ray,* 332 N.W.2d 325, 326 (Iowa 1983) (quotation omitted). The Ruling states that "[t]he court has considered the elements of public interest exception," but the Ruling fails to provide any findings on the first two, *see* Ruling at 14, even though Plaintiffs addressed both in their reply brief, *see* Reply at 9.

The Ruling only finds that the Court could not "find a likelihood of future occurrence of the same or similar problem" involving an educational institution offering courses that are predominantly online. Ruling at 14.[9] However, the Ruling itself expressly acknowledges that the issue of what constitutes an online educational institution's "main campus" is already recurring with the University itself in relation to the Hybrid MBA program. *See, e.g.*, Pls. Br. at 27 ("[A]fter [the] teach-out is completed, the University's Iowa CSAC-approved Hybrid MBA

---

[9] Indeed, at the hearing on this matter, one point of agreement between counsel for both parties was that the applicable regulations have not kept pace with developments in on-line education. *See* Transcript of June 23, 2017 Hrg. (Ex. A) at 25 (regulations are "obviously a little bit dated").

**Appx1195**

program will continue operations at the University's main campus in Clinton, Iowa."); Ruling at 11 ("Of course Ashford [University] can present the facts relevant to this new program to IDOE and ask IDOE to determine whether it is a basis to find that Ashford [University]'s 'main campus' is in Iowa."). Moreover, that issue has arisen recently with respect to at least two other online educational institutions that IDOE has considered for approval concerning GI Bill benefits eligibility: Kaplan University and the University of Phoenix. As the Ruling observed, IDOE's approval of Kaplan is based on a "main campus" consisting of "classrooms for instruction of students" that are "located in a strip mall." Ruling at 20.

**B.   The Ruling Fails to Address Both the Appropriateness of Applying 38 C.F.R. §§ 21.4250 and 21.4266 to IDOE's Conduct, and All of Plaintiffs' Claims Arguments When Analyzing the "Main Campus" Issue.**

As stated above, the only regulation governing withdrawal of approval is 38 C.F.R. § 21.4259. The Ruling accepts, without any analysis, that this case concerns "regulations governing approval" (38 C.F.R. §§ 21.4250 and 4266). The Ruling fails to address how such regulations could be applicable when there was no pending application for approval, because the University's programs had ***already been approved two months before*** the withdrawal letter was sent. *See* Ruling at 1 ("The central issue in this case involves interpretation of two federal regulations governing approval…."); *id.* at 4 (correctly stated that approval was given on March 8, 2016). The Ruling should be amended or enlarged to address this threshold issue. *See Homan*, 887 N.W.2d at 162 (holding that the district court should have responded to a Rule 1.904(2) motion by specifying the basis for the court's finding on the disputed issue of certain constitutional and statutory provisions' applicability).

The Ruling also errs in its application of 38 C.F.R. §§ 21.4250 and 21.4266 to this case's facts. As an initial matter, the applicable "erroneous" standard of review is non-deferential, but

the Ruling improperly defers to IDOE's interpretation of the regulations, as it solely focuses on

IDOE's reasoning and, in effect, whether it was rational.  *See* Ruling at 15.  Under the

"erroneous" standard, the Court interprets the legal provision *de novo*, which means that the

court is "not bound by [the agency's] determinations of law but instead interpret[s] the law on

[its] own and determine[s] whether [its] conclusion mirrors that already made." *Thoms v. Iowa*

*Pub. Employees' Ret. Sys.*, 715 N.W.2d 7, 11 n.3 (Iowa 2006) (citations omitted).  In focusing

solely on IDOE's legal interpretation, the Ruling does not interpret the law on its own and is as

cursory as IDOE's letters to the University, which themselves never explained what IDOE did

consider, other than a demonstrably incorrect description of the duration of the teach-out and the

timing of the move of certain University operations to California.  Like IDOE's Opposition

Brief, the Ruling never even addresses Plaintiffs' arguments demonstrating why IDOE's

interpretation was erroneous.

The Ruling errs in determining that the University's teach-out, online center and

administrative capabilities were insufficient to qualify as a "main campus" under 38 C.F.R. §

21.4266.  The Ruling finds that a "main campus" is "where the primary teaching facilities of an

educational institution are located," and that if there is "only one teaching location," that is the

"main campus."  *See* Ruling at 12 (citing 38 C.F.R. § 21.4266(a)(3)).  The Ruling, however,

ignores the undisputed facts in the record that the University's "only one [residential] teaching

location," was in 2016 and still is in Clinton, Iowa.  *See* Pls. Br. at 27; Reply at 18-19.  Instead,

without reference to any other facts, the Ruling simply adopts IDOE's conclusion that "the

existence of the teach-out program, which was slated to end in the near future, does not cause

Clinton, Iowa to be [the University's] main campus," and because the University's CEO is in

California, approval is only appropriate in California.  *See* Ruling at 15.

15

But the record is clear that in the summer of 2016 and as of the date hereof, the University had and has only one location where residential instruction occurs, and thus only one teaching facility, which is located in Clinton, Iowa.  Pls. Br. at 27.  Accordingly, IDOE's conclusion, adopted by the Ruling, that the University's "main campus" for GI Bill benefits purposes is in California is just wrong.  In addition to ignoring the fact, as explained above, that the teach-out has not ended, the Ruling simply ignores the information that the University provided to IDOE in 2016 about *students located in Iowa*, including that:

- 40 University online students were then located in Iowa.

- The University then had 25 residential students at the Clinton, Iowa campus.

- Approximately 120 University students located in Iowa were then part of the teach-out.

Joint Ex. 10.[10]  The Ruling also ignores whether the University's Online Center in Clinton, Iowa, qualifies as a "teaching facility" under the definition of "main campus," *see* Pls. Br. at 3, 15-16, but instead simply finds, deferentially, that "IDOE concluded the online processing center was not a 'main campus' within the definition of the regulation," *see* Ruling at 15.   Plaintiffs respectfully request that the Ruling be enlarged to address the threshold issue of 38 C.F.R. §§ 21.4250 and 21.4266's applicability, be amended to correct those approval regulations' misapplication, and be enlarged to address Plaintiffs' claims and arguments that were overlooked.

---

[10] This information was cited by the Ruling (at page 3), but never considered in the Ruling's analysis.

~~McCarthy, Jennifer, VBAVACO~~

| | |
|---|---|
| **From:** | Ruhlman, James, VBAVACO |
| **Sent:** | Friday, May 27, 2016 8:53 AM |
| **To:** | Amitay, Cheryl, VBAVACO |
| **Subject:** | Control of State Approving Agencies |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Cheryl,

Jeff H. is correct that "demand" is too strong a word.  While we can award an unsatisfactory rating at the end of the year and/or refuse to renew the contract, we are statutorily prohibited from exercising control over SAAs.

### 38 U.S.C. §3682. Control by agencies of the United States

Except as provided in section 3674A of this title, no department, agency, or officer of the United States, in carrying out this chapter, shall exercise any supervision or control, whatsoever, over any State approving agency, or State educational agency, or any educational institution. Nothing in this section shall be deemed to prevent any department, agency, or officer of the United States from exercising any supervision or control which such department, agency, or officer is authorized by law to exercise over any Federal educational institution or to prevent the furnishing of education under this chapter or chapter 34 or 35 of this title in any institution over which supervision or control is exercised by such other department, agency, or officer under authority of law.

We can punish (and, thus, deter), but we can't compel.

James D. Ruhlman
Education Service
Assistant Director for Policy and Procedures

**From:** Harbeson, Jeffrey, VBAVACO
**Sent:** Friday, May 27, 2016 8:45 AM
**To:** Amitay, Cheryl, VBAVACO; George, Marie L., VBASLOU; Spruce, Bill, VBAVACO
**Cc:** Ruhlman, James, VBAVACO
**Subject:** RE: [EXTERNAL] FW: Ashford

Demand might be too strong a word...I would suggest it is prudent to have a contact on the ground we can have immediate real time comms with to resolve any questions and concerns.  There are too many high level folks getting involved with this issue (Sen Bob Dole just sent a letter yesterday and I was on the phone with SVAC last evening answering questions) ...and we are on an incredibly short timeline...so we need a VA point person on the ground who can talk to us now and is not 'lawyering up.'

Make sense?

1

**Appx1293**

**From:** Amitay, Cheryl, VBAVACO
**Sent:** Thursday, May 26, 2016 9:11 AM
**To:** Harbeson, Jeffrey, VBAVACO; George, Marie L., VBASLOU; Spruce, Bill, VBAVACO
**Subject:** RE: [EXTERNAL] FW: Ashford

Per our conversation, I sent Tom an email around 5 PM assuring him that we want to discuss the situation on the ground and what actions the anticipate taking.
No response.  I'll follow up later today.
If you want me to force the issue and demand  a name of a participant by day's end, I will.

---

**From:** Harbeson, Jeffrey, VBAVACO
**Sent:** Thursday, May 26, 2016 8:29 AM
**To:** Amitay, Cheryl, VBAVACO; George, Marie L., VBASLOU; Spruce, Bill, VBAVACO
**Subject:** RE: [EXTERNAL] FW: Ashford

So what is the current status today with regard to a phone call among all the players?  Thanks

---

**From:** Amitay, Cheryl, VBAVACO
**Sent:** Wednesday, May 25, 2016 5:05 PM
**To:** George, Marie L., VBASLOU; Harbeson, Jeffrey, VBAVACO; Spruce, Bill, VBAVACO
**Subject:** RE: [EXTERNAL] FW: Ashford

I knew 222 at least!

---

**From:** George, Marie L., VBASLOU
**Sent:** Wednesday, May 25, 2016 4:22 PM
**To:** Amitay, Cheryl, VBAVACO; Harbeson, Jeffrey, VBAVACO; Spruce, Bill, VBAVACO
**Subject:** RE: [EXTERNAL] FW: Ashford

331 is the STL RPO number.  VACO is 222

Marie L. George
Chief Education Liaison Officer
314.552.9855

---

**From:** Amitay, Cheryl, VBAVACO
**Sent:** Wednesday, May 25, 2016 3:17 PM
**To:** Harbeson, Jeffrey, VBAVACO; George, Marie L., VBASLOU; Spruce, Bill, VBAVACO
**Subject:** FW: [EXTERNAL] FW: Ashford

OK….
And I know I should probably know this reference by now but "331?"

---

**From:** Beasley, Thomas [IDOE] [mailto:Thomas.Beasley@iowa.gov]
**Sent:** Wednesday, May 25, 2016 4:15 PM
**To:** Amitay, Cheryl, VBAVACO
**Subject:** RE: [EXTERNAL] FW: Ashford

Ms. Amitay,

I will ask again.  I will also ask Mr. Jeremy Verner, Division Administrator, Iowa DE.  The SAA is housed in his Division, so he is the manager.

**Appx1294**

I regret this issue so complicated. I trust we will be able to talk soon. I feel I need some professional guidance so that everyone is confident in the work of this SAA. We've tried to remain below the radar and in doing so regarded favorably by the 331.

Cordially,

Tom

**From:** Amitay, Cheryl, VBAVACO [mailto:Cheryl.Amitay@va.gov]
**Sent:** Wednesday, May 25, 2016 3:11 PM
**To:** Beasley, Thomas [IDOE] <Thomas.Beasley@iowa.gov>
**Cc:** Spruce, Bill, VBAVACO <Bill.Spruce@va.gov>; George, Marie L., VBASLOU <marie.george@va.gov>; Harbeson, Jeffrey, VBAVACO <Jeffrey.Harbeson@va.gov>
**Subject:** FW: [EXTERNAL] FW: Ashford

Hi Tom:

My colleague Marie forwarded your message below. Thanks for your response. As you were not on the call, I assume you did not yet get permission from Ms. Proesch to participate. Might you tomorrow so we can try to schedule in the afternoon? Ms. Proesch, of course, is welcome to join in a dialogue as well, or another representative of your office may or counsel, if you are more comfortable with that. Our intent was just to have a brief meeting of the minds and discuss thoughts on the way forward.

We look forward to hearing from you. Please also include me on future correspondence on this.

Best.


Cheryl Aviva Amitay
Compliance and Liasion
VA Education Service
202-632-8907


**From:** Beasley, Thomas [IDOE] [mailto:Thomas.Beasley@iowa.gov]
**Sent:** Wednesday, May 25, 2016 1:21 PM
**To:** Proesch, Nicole [IDOE]; Kotamraju, Pradeep [IDOE]; Varner, Jeremy [IDOE]
**Cc:** Harbeson, Jeffrey, VBAVACO; Spruce, Bill, VBAVACO; George, Marie L., VBASLOU; Beasley, Thomas [IDOE]
**Subject:** [EXTERNAL] FW: Ashford

To All,

My Department leadership has informed me I cannot participate in this call unless Ms. Proesch, Legal Counsel, Iowa Department of Education, authorizes it.

I just returned to the office from a school visit this morning and upon doing so shared your request with my immediate department superior, Dr. Pradeep Kotamraju. Dr. Kotamraju is in DC on official department business.

Ms. Proesch,

3

**Appx1295**

The request was made by VA's Deputy Education Director, Jeffery Harbeson.   Mr. Habeson would be the highest official from VA in education.  Please let me know if the department can participate in this call.

I apologize for any inconvenience or confusion.

Tom



**DEPARTMENT OF VETERANS AFFAIRS**
**VA REGIONAL OFFICE**
**3333 North Central Avenue**
**Phoenix, AZ 85012-2458**

DECEMBER 4, 2017

LEANNA DEKING
PROGRAM DIRECTOR
ARIZONA STATE APPROVING AGENCY
3839 N 3RD ST SUITE 209
PHOENIX AZ 85012-2068

Dear Ms. DeKing:

Per previous written and verbal communications, the Department of Veteran Affairs (VA) believes that the Arizona State Approving Agency (AZ SAA) has improperly approved Ashford University's on-line programs for VA education assistance.  We are now addressing this performance concern under the terms of the AZ SAA FY18 signed contract. The reasons for this decision are as follows:

1.  VA does not believe that the requirements of 38 U.S.C. §3672(a) are met. We can find no evidence that Ashford University is recognized as a provider of a course of education offered by an Arizona educational institution.  No information on Ashford University could be found on the Arizona State Board for Private Postsecondary Education's website as an approved in-state institution; however, the website does indicate Ashford University is an approved out-of-state institution.  It should also be noted that Ashford University is approved by the California Department of Consumer Affairs' Bureau for Private Postsecondary Education.

2.  VA does not believe that there is a location of Ashford University in Arizona that meets the definition of a "main campus."  While section 3672(a) affords jurisdiction for approvals to the SAA "where such educational institution is located," it does not provide a process for assessing the location of online or other programs.  VA has clarified via regulation that courses offered by independent study or correspondence shall be approved by the SAA of the State in which the institution's main campus is located and views this definition as applicable to online courses.  38 C.F.R. §21.4250(a)(3).  "[M]ain campus" is defined relative to "branch" and "extension" campuses in 38 C.F.R. § 21.4266(a)(3), with the focus being on primary teaching facilities.  The website of the Western Association of Schools and Colleges (WASC) indicates that Ashford University's main campus is located in San Diego, CA.

3.  VA does not believe that the requirements of 38 U.S.C. § 3675(a) are met.  We can find no evidence from an accrediting agency recognized by the Secretary of Education showing accreditation for programs offered at any location of Ashford University in Arizona.  WASC's website only lists an approved location in San Diego, CA, which also serves as the institution's main campus.

Please provide information showing that the current approval of Ashford University's online programs does meet the requirements listed above, or that the deficiencies have been

corrected, within 14 days of the date of this letter as required in accordance with the Business Plan.

It should be noted that VA is authorized to independently determine whether the institution, its programs, or its courses fail to meet any of the requirements of chapter 36 of title 38, United States Code.  Since the AZ SAA's approval of Ashford does not meet the requirements of 38 U.S.C. §3672(a), VA issued a 60-day cure notice to Ashford on November 9, 2017, in a final attempt to allow the school to become compliant with the law before discontinuing GI Bill benefits.  If Ashford corrects its deficiencies within this 60-day period, VA will take no further action, and beneficiaries will not see a disruption of their GI Bill benefits.

Furthermore, VA is required, under 38 U.S.C. § 3674A(a)(1)(A), to conduct annual evaluations of your performance.  This review includes whether school approvals comply with the terms of the contract for reimbursement between VA and the AZ SAA and with statutory and regulatory standards.  In accordance with your attachment to SF30 Fiscal Year 2018 (FY18) SAA contract, please refer to Article II - Applications and Approvals, paragraphs #2 for approval information and #5 for suspension and/or disapproval information.   Additionally, in accordance with your FY18 signed business plan, 100% of corrective actions will be taken within 14 calendar days of notice for approval and disapproval actions not in compliance with title 38 U.S.C, title 38 C.F.R, case law applying that authority, and will take into account VA's published interpretation of statute, regulation, and case law.  Failure to meet performance measures will have an impact on our evaluation of the SAA and performance concerns will be reported to the Contracting Officer. This letter serves as notice that your failure to adhere to the requirements of 38 U.S.C. §3672(a) has endangered the performance of the contract and may be subject to a more formal Cure Notice process which could result in contract termination in accordance with FAR clause 52.249-6, Termination (Cost-Reimbursement).

If you have any questions, please contact me at (602) 627-3227 or suzanne.swafford@va.gov.

Sincerely,

*Suzanne Swafford*

Suzanne Swafford
Education Liaison Representative



On Thursday, November 9, 2017 1:47 PM, VA Office of Economic Opportunity
<Veteransbenefits@public.govdelivery.com> wrote:

I'm writing to share the latest information we have on Ashford University's (Ashford) status as a school approved for GI Bill payments for its online programs. As of the date of this message, you are still able to attend Ashford online using your GI Bill benefits; **however, that all could be changing in 60 days.**

At this time, **Ashford's online programs are not fully compliant with GI Bill approval requirements**, which may force VA to stop paying benefits for them.

For you to be eligible to receive GI Bill benefits for Ashford's online programs, Ashford must abide by certain legal requirements; namely, its online programs must be approved by the state in which its main campus is located. Although Ashford's main campus is in California, Ashford has not yet obtained approval from California, as is required by law.  Consequently, Ashford must take steps to correct this problem, or VA will no longer be able to legally pay you benefits. VA has issued Ashford a "cure letter," giving them 60 days to apply for approval in the same state as their main campus, which at this time is California, or to relocate its main campus to Arizona.

**What does this mean for you?**

**In order to avoid the disruption of benefits, VA will continue to make payments to students attending Ashford for the next <u>60 days</u>, giving Ashford time to come into compliance with GI Bill approval requirements.**

**If Ashford doesn't come into compliance, VA will not make benefit payments after the end of the 60-day period.**

VA aims to help you pursue and reach your educational goals, and strongly urges Ashford to do the right thing for GI Bill students – seek and gain approval from the appropriate SAA, which is currently the SAA in California. **VA remains committed to protecting students from education institutions and schools that do not comply with Federal law.**

We understand this decision may cause you hardship, and in an effort to avoid or limit that hardship, VA encourages you to contact us with questions or reach out to a VSO. Please take advantage of the resources you have available to make the best decision, including:

- Several of our Veterans Service Organization partners and Veteran community advocates can help with your decisions, answer questions, and have financial programs that can help; among them are Veterans of Foreign

Wars, American Legion, Student Veterans of America, and Veterans Education Success.

- Our online GI Bill Comparison Tool can help you review and evaluate alternatives to Ashford and our Education Call Center is available at 1-888-442-4551 (Monday – Friday, 7 a.m. – 6 p.m. CST) for questions about your benefits and remaining entitlement.  You may also securely email questions here.

I will continue to stay in touch with any changes so you have the latest information on which to make your educational choices.  I also encourage you to contact Ashford to inquire into their status with regards to their efforts to come into compliance before the 60 day deadline.

Please feel free to send this to other Ashford students you may know in case we missed them.

As always, thank you for your service.

Regards,

Curtis L. Coy
Deputy Under Secretary for Economic Opportunity
Veterans Benefits Administration
U.S. Department of Veterans Affairs
Washington, DC 20420
**VA Core Values:  Integrity, Commitment, Advocacy, Respect, Excellence ("I CARE")**

---

SUBSCRIBER SERVICES:
Manage Preferences  |  Unsubscribe  |  Help
Update your subscriptions, modify your password or email address, or stop subscriptions at any time on your Subscriber Preferences Page. You will need to use your email address to log in. If you have questions or problems with the subscription service, please visit subscriberhelp.govdelivery.com.
Sent to psujunqlist37@yahoo.com on behalf of US Department of Veterans Affairs
Veterans Benefits Administration · 810 Vermont Avenue, NW · Washington, DC 20420 · 1-800-827-1000



VA Comments Related to Discussion of Evidence for Main Campus
Oct 26, 2017 with Bridgepoint Education

The term "main campus" is a term commonly utilized by a number of entities involved in the area of higher education such as the U.S. Department of Education, accrediting agencies, and State licensing bodies. However, this term is rarely, if ever, defined. For example, the U.S. Department of Education mentions main campus in the definition of "branch campus" (in 34 C.F.R. § 600.2), without also providing a definition of main campus, and the accrediting bodies follow suit. Therefore, it appears that in many cases involving Department of Education and accrediting bodies it is the school that defines the term "main campus" when it designates a main campus. However, it should be mentioned that the term main campus, as used by VA, the U.S. Department of Education, and accrediting bodies, is not qualified –, meaning there is no mention of a main campus for a specific, narrow purpose (such as for VA benefits, accreditation, or Federal Student Aid) – and the plural term "main campuses" is not used in reference to a single educational institution in any authority of which we are aware.

VA's definition of main campus (as specified in 38 C.F.R. § 21.4266) mentions the primary teaching location. While this definition works well for identifying the main campus for residence courses (i.e., in the world of brick-and-mortar classrooms), it is arguably not as well suited to institutions that provide training solely through an online modality. While teaching is certainly taking place via courses provided by online modality, the course itself emanates from server farms, not classrooms, and may be geographically separate, and distant, from the institution's administrative, faculty, and organizational personnel.

Although authority from sources other than VA is not controlling on VA, because the term main campus is used by other agencies (some of which directly impact approval for VA educational assistance benefits, such as accreditation), VA evaluates information from those other sources to help identify the main campus. Sources that can be used to aid in such a determination include, but are not limited to, the following:
- Information submitted to, or published by, a school's accreditor;
- The school's catalog, website, and/or advertising materials;
- Documentation supplied by the school to other Federal or State governmental agencies that identify a main campus.

The following documents and websites all indicate that Ashford University's main campus is located in San Diego California:
- The "Locations" tab of Ashford University's Statement of Accreditation Status page on the Western Association of Schools and Colleges' (WASC) website (https://www.wscuc.org/institutions/ashford-university).
- A letter from Mr. Christopher Oberg (WASC) to Ms. Laura Noone (Ashford) dated August 21, 2017, which lists the San Diego location as the "main campus," and adds the Phoenix Online Student Services Center as an "additional location" for accreditation purposes. This document was supplied to VA by the Arizona State Approving Agency as part of the approval package.
- Page 19 of SEC form 10-Q, filed on October 25, 2017, where it is stated that "…Ashford effected its transition to WSCUC accreditation and designated its San Diego, California facilities as its main campus…." There is nothing elsewhere indicating a subsequent designation of some other location as the main campus to the SEC.

We also note the following information from various State licensing agencies:

**Appx1304**

- Ashford University is licensed by the Arizona State Board for Private Postsecondary Education as an "out of state" institution.  Documentation verifying this status was supplied to VA by the Arizona State Approving Agency as part of the approval package and is also available on the Board's website (http://archiveppse.az.gov/Licensee/OutOfStateLicenseeStart.aspx).
- The Iowa College Student Aid Commission's website states that "Ashford University is registered in Iowa in order to continue offering residential programs at an Iowa site and to offer distance education programs through its main campus location in San Diego, CA" (https://www.iowacollegeaid.gov/content/postsecondary-applications).

At our October 26th meeting, we committed to suggesting the kinds of evidence that we consider in assessing the location of the main campus pursuant to 38 C.F.R. § 21.4250(a)(3).  The aforementioned evidence is the type of evidence typically considered, and we again note that it does not appear to indicate that Ashford's main campus is in Arizona.  Indeed, the Department is not aware of any official documentation formally declaring that the school's main campus is in Arizona, or to otherwise establish Ashford University as an "Arizona educational institution."  In order to establish that the school's main campus is presently located in Arizona, Ashford University revising its submissions to the various Federal, State, and accrediting agencies (including the Arizona State Approving Agency) discussed above to formally designate the Phoenix, Arizona, location as the main campus would certainly be considered by VA.



**ANGEL A. WEST**

Direct Number: (515) 283-3127 | Facsimile: (515) 283-3108 | E-Mail: aaw@nyemaster.com
700 Walnut, Suite 1600 | Des Moines, IA 50309-3899 | (515) 283-3100

Attorneys at Law | Offices in Des Moines, Ames and Cedar Rapids

**www.nyemaster.com**

September 18, 2017

**VIA E-Mail and U.S. Mail**
Robert M. Worley, II
Director, Education Service
Veteran Benefits Administration
Washington, DC 20420

RE:   *Ashford University, LLC et al. v. Iowa Department of Education et al.*
        NO. EQCE080188

Dear Mr. Worley,

We are counsel for Ashford University in the above-captioned matter. This letter is written in partial response to your letter dated September 15, 2017, directed to Bobbye Stull (the "Letter"). Therein, you appear to take the position that the supersedeas bond filed by Ashford University on August 25, 2017, is ineffective to stay proceedings in this matter pending final adjudication of the appeal by the Supreme Court of Iowa. Your position is incorrect, contravenes Iowa law and the Iowa Rules of Appellate Procedure, and reveals a fundamental misunderstanding of the current posture of this matter – to which, of course, the Department of Veterans Affairs ("VA") is not even a party.

First, Iowa Rule of Appellate Procedure 6.601(1) speaks to situations where an appeal stays proceedings under a judgment or order. See Iowa R. App. P. 6.601(1). Under that rule, "no appeal shall stay proceedings under a judgment or order unless the appellant executes a bond with sureties, to be filed with and approved by the clerk of court where the judgment or order was entered." *Id.*

On August 25, 2017, Ashford University posted a cash bond in the amount of $1,000.00. *See* Iowa R. App. P. 6.601(2). The Clerk of Court accepted this amount of the bond and issued a receipt. The Clerk of Court's acceptance of the bond is approval of the sureties. The Clerk of Court has the ability to reject the posting of the bond but did not do so in this case. The Clerk's approval of the bond satisfies Iowa Rule of Appellate Procedure 6.601(1). Moreover, the Clerk has issued an order staying the proceedings and judgment pending the appeal. See the enclosure.

More importantly, your letter indicates that you are under the misimpression that the Court's ruling resulted in the Iowa SAA withdrawing its approval. This is factually and legally incorrect. This matter is currently on appeal, and the Assistant Attorney General handling this matter on behalf of the Iowa SAA has advised Ashford's counsel that no action would be taken pending the post-ruling motions and appeal.

Robert M. Worley, II
September 18, 2017
Page 2

As a result, even if a supersedeas bond had not been filed, the position taken in your Letter that Ashford University's approval has been withdrawn would still be incorrect. Consistent with the Assistant Attorney General's representation and the Clerk's order, the Iowa SAA has taken no further action to attempt to withdraw its approval of Ashford University.

We trust that this letter satisfies your concerns regarding whether this matter is currently stayed.

Very truly yours,

Angel A. West

Angel A. West

Encl.

Cc:

Curtis Coy (via e-mail w/ encl)
James Ruhlman (via e-mail w/ encl)
Bryan Thompson (via e-mail w/ encl)
Bobbye Stull (via e-mail w/ encl)
Vickie Schray (via e-mail w/ encl)
Gerard Kelly (via e-mail w/ encl)
Diane Thompson (via e-mail w/ encl)

E-FILED  2017 SEP 18 8:11 AM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

MICHAEL BLACKWELL
ASHFORD UNIVERSITY LLC

     Plaintiff

v.

IOWA STATE APPROVING AUTHORITY
IOWA DEPARTMENT OF EDUCATION

     Defendant

Case No. 05771  EQCE080188

**Notice Re: Posting of Appeal Bond**

**Charge(s):**

Petition for Judicial Review is denied. Plaintiff posting appeal bond to stay case.
Notice is hereby given to the Court that bond has been posted in the above entitled matter.

**Bond Type:** CASH

**Posted in Polk County**

**Bond Amount:** $1000.00

**Posted By:** Matthew Eslick, ,

The proceedings and judgment are stayed due to an appeal.
                  * * * * * * * * * *

The  is hereby notified to discharge the above named defendant from custody in regard to the above named charge(s) as
sufficient bail has been posted in this case.

Dated: 09/18/2017

                                   /s/ Jennifer Tietjen

E-FILED  2017 SEP 18 8:11 AM POLK - CLERK OF DISTRICT COURT

**Clerk of District Court/Designee**
**POLK County Iowa**





**DEPARTMENT OF VETERANS AFFAIRS**
**Veterans Benefits Administration**
**Washington DC 20420**

**JAN 2 3 2018**                                    In Reply Refer To:  223C

Ms. Leanna DeKing, Director
Arizona Department of Veteran's Services
3839 North 3rd Street, Suite 209
Phoenix, AZ  85012

Dear Ms. DeKing:

      The members of the Joint Peer Review Group (JPRG) have reviewed the State Approving Agency (SAA) self-evaluation and the Department of Veterans Affairs (VA) Contracting Officer's Representative's assessment for the FY 2017 contract year.

      Upon completion of a thorough review by the VA of the JPRG recommendations and SAA performance in FY 2017, the VA has rated the Arizona SAA (AZ SAA) as "**Minimally Satisfactory**."

      The VA is rating the AZ SAA as "minimally unsatisfactory" based on the AZ SAA's approval of Ashford.  Federal statute provides both that the SAA "for the State where [an] educational institution is located" must provide approval in order for VA to provide benefits based on attendance at that institution, and that "[a]pproval of courses by [SAAs] shall be in accordance with the provisions of this chapter and chapters 34 and 35 of this title." 38 U.S.C. § 3672(a); *see also* 38 U.S.C. § 3674(a)(1) (requiring each contract with an SAA "be conditioned upon compliance with the standards and provisions of [chapters 30 through 36 of title 38]"). VA's regulation also requires compliance with "the standards and provisions of the contract and the law" in order for VA to reimburse expenses. 38 C.F.R. § 21.4153(f).  While noting that the AZ SAA met the business-plan goal of submitting 90% accurate approvals insofar as the Ashford approval was the only mistake, nonetheless, a <u>minimally satisfactory</u> rating is justified because the AZ SAA separately violated statute and regulation by refusing to correct the improper approval of Ashford after it was notified of that violation by VA. All entities are generally required to comply with the law regardless of a contract, but the contract also makes the SAA responsible "for approval … of courses … in accordance with chapters 30, 32, 33, 34, 35, and 36 of title 38 [of the U.S.C.] and title 38 [of the C.F.R.]." FY14 AZ SAA Contract, Preamble. Therefore, VA views the refusal to correct the approval of Ashford as a violation of statute, regulation, and the contract. Business-plan goals are specific articulations of standards not addressed in law or elsewhere in the contract, not a means of excusing non-compliance with statute, regulation, or express terms of the contract.

      Consequently, the SAA acted contrary to the requirements of Title 38 in the approval of Ashford University's online programs, as outlined in VA guidance issued on August 3, 2017, and August 17, 2017, resulting in uncertainty and

confusion for the enrolled Veterans.  Furthermore, you were notified in a letter dated September 13, 2017, that this action could impact your rating for FY 2017.

VA believes better collaboration between the SAA and the VA Education Liaison Representative will ensure strict adherence to all statutory requirements as well as all VA regulations and policies.  The SAA is again reminded that guidance in procedural and policy matters is available through the VA and the National Association of State Approving Agencies.

On December 4, 2017, the Arizona SAA was again notified by VA of the failure to adhere to the requirements of 38 U.S.C. §3672(a) and that this action may be subject to a more formal Cure Notice process, which could result in contract termination in accordance with FAR clause 52.249-6, Termination (Cost-Reimbursement).  Please also be advised that failure to meet FY18 contract performance measures will have an impact on the SAA's FY18 rating and will be considered in deciding whether to offer a FY19 contract.

A copy of this rating was provided to your Education Liaison Representative.

If the SAA chooses to appeal this rating, the appeal must be submitted within 30 days from receipt of its rating.  The appeal must be in writing and may be mailed to the Department of Veterans Affairs, 22/223C, 810 Vermont Ave, Washington, DC 20420 or may be e-mailed to the Approval Compliance & Liaison Chief, Janice Fisher at Janice.fisher1@va.gov with a cc to 223c.vbaco@va.gov. The appeal may be by teleconference or in person, if funding is available and will be heard by the Director, Education Service, and the President of the National Association of State Approving Agencies.

We appreciate the service that you provide for our Veterans, Servicepersons, Reservists, Guard members, and their eligible dependents.

Sincerely,

Robert M. Worley II
Director, Education Service

cc:  Wanda Wright



**DEPARTMENT OF VETERANS AFFAIRS**
**Veterans Benefits Administration**
**Education Service**
**Washington, D.C.  20420**

JAN 0 2 2019

Mr. Keith Boylan, Deputy Director, Veterans Services
California Department of Veterans Affairs
P.O. Box 942895
Sacramento, CA  94295

Dear Mr. Boylan:

The purpose of this letter is to notify California State Approving Agency for Veterans Education (CSAAVE) that Education Service received a copy of CSAAVE's correspondence, dated December 14, 2018, sent to Ashford University detailing CSAAVE's "Intention Not to Act" on Ashford's application for approval, and that VA views California's proposed intention not to act as violating the VA/SAA Cooperative Agreement for Fiscal Year 2019.

Specifically, Article II of the agreement requires the SAA to "approve, suspend, and/or disapprove programs" that apply for approval, not to take no action.  In prior conversations between VA and CSAAVE, CSAAVE expressed concern that it was not authorized to deny an application.  VA informed CSAAVE that the contract term "disapprove programs" includes the authority to deny approval of an application to CSAAVE.  Further, while VA regulations discuss SAA "approval," "suspension of approval," "disapproval," or "failure to act" in response to an application (38 CFR § 21.4250(b)), CSAAVE may only approve or disapprove (i.e., deny approval of) a program it has not currently approved according to the terms of the current agreement between VA and CSAAVE. Consequently, VA believes that continued inaction on Ashford's application may provide sufficient grounds to terminate the current agreement for Fiscal Year 2019 and/or to take other actions.

This is a time sensitive matter.  Please contact me upon receipt of this letter at (202) 461-9800 so that we can further discuss. Thank you in advance for your cooperation.

Sincerely,

Charmain Bogue
Acting Executive Director
Education Service

STATE OF CALIFORNIA                                                    GAVIN NEWSOM, Governor

**DEPARTMENT OF VETERANS AFFAIRS**
1227 O Street
Sacramento, California 95814
Telephone: (800) 952-5626
Fax: (916) 653-2456



January 15, 2019

**SENT VIA E-MAIL & U.S. MAIL**:
Charmain Bogue, Acting Executive Director
Department of Veterans Affairs
Veterans Benefits Administration
Education Service
Washington, D.C. 20420

Dear Ms. Bogue:

The purpose of this letter it to provide a detailed response to your earlier correspondence received on January 2, 2019, regarding CSAAVE's election "not to act" with respect to the application of Ashford University for approval in California. Specifically, you raised concerns that the lack of a concrete approval or disapproval on the application by CSAAVE appeared to violate our Cooperative Agreement for Fiscal Year 2019 ("agreement"). Please note that compliance with the cooperative agreement as well as the federal statutes and regulations governing the administration of its program remains CSAAVE's primary focus. We therefore wish to explain the legal and policy rationales behind our decision with the hope that a compromise may be reached between our agencies that is in conformity with both the law and the agreement.

The "Failure to act" on a given application is expressly recognized in Title 38 of the Code of Federal Regulations. In 38 C.F.R. § 21.4250(b)(1)-(3), we find authority for state approving agencies to approve courses, suspend the approval of courses, disapprove courses, and "not intend to act on the application of a school," respectively. Where the state approving agency elects the last option, the school may "request approval by the Department of Veterans Affairs." (38 C.F.R. § 21.4250(b)(3).) Though the circumstances under which inaction is warranted are not specified in the regulations, it is generally understood that the option exists to prevent denial that might result from a rigid and perhaps premature application of the required standards of eligibility. More specifically, it provides the opportunity for a school to seek approval by the USDVA where further investigation may be more appropriately conducted by the USDVA or other outside entity.

Title 38 of the United States Code, Section 3696 limits the approval of enrollment of veterans where an institution utilizes advertising, sale, or enrollment practices of any type which are erroneous, deceptive, or misleading. In cases where such allegations exist, the State Approving Agency or the Secretary of the USDVA is required to investigate. In light of the pending litigation initiated by the Attorney General of California against Ashford for fraudulent business practices involving their advertisements (allegations which, if proven true, would violate Title 38), CSAAVE exercised the option not to act until such allegations are resolved by the courts or USDVA.

HONORING CALIFORNIA'S VETERANS

Page 2

In our view, to act otherwise based on the allegations alone would be slovenly and inequitable, while issuing an approval with such grave legal allegations unresolved would amount to a dereliction of our duty to protect our veteran students. In either case, a decision on the merits of the application at this time would constitute an impermissible conflict of interest due to litigation being maintained against Ashford by CSAAVE's own legal advisor, the Attorney General of California, on issues germane to Ashford's application. CSAAVE's failure to act also allows Ashford the ability to exercise its right to seek approval by USDVA, as prescribed by law.

Although "failure to act" is supported in regulation, your letter indicates that CSAAVE's options for responding to an application are circumscribed by the terms of Article II of our agreement: "CSAAVE may only approve or disapprove (i.e. deny approval of) a program it has not currently approved according to the terms of the current agreement between VA and CSAAVE." However Title 38 limits "disapproval" to those courses previously approved and where the requirements for approval are not being met (38 U.S.C. 3672(a), 38 U.S.C. 3679, 38 C.F.R. 21.4259, 38 C.F.R 21.4250(b)(2). Since Ashford submitted an initial application for approval, CSAAVE is unable to disapprove courses not previously approved. More so, CSAAVE finds no authority within Title 38 to "deny" approval.

It is the position of CSAAVE that our agreement did not purport to curtail legal options granted to state approving agencies in the Code of Regulations. Rather, the agreement serves to facilitate implementation of those governing regulations. This view finds support in the opening line of Article II, section 1 of the agreement, which recognizes the incorporation of all governing laws found in Title 38 by providing: "Except to the extent otherwise provided by law. . ."

If it is the position of the USDVA that the option to refrain from action on an application under 38 C.F.R. § 21.4250(b)(3) has been eliminated by the agreement, please issue CSAAVE a written advisory so that we may eliminate any further misunderstanding.

CSAAVE appreciates your prompt referral of this matter to our attention and stands ready to work toward a mutually agreeable position that will guide our decisions on future applications. I look forward to successful collaboration in this new year.


Sincerely,



KEITH BOYLAN
Deputy Secretary, Veterans Services Division
California Department of Veterans Affairs

E-FILED  2018 APR 26 3:41 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| **ASHFORD UNIVERSITY, LLC,** | |
| **Plaintiff,** | |
| **vs.** | **CASE NO. CVCV 54775** |
| **IOWA DEPARTMENT OF EDUCATION and the IOWA STATE APPROVING AUTHORITY,** | |
| **Defendants.** | |
| **ASHFORD UNIVERSITY, LLC and MICHAEL BLACKWELL,** | |
| **Plaintiffs,** | |
| **vs.** | **CASE NO. EQCE 80188** |
| **IOWA DEPARTMENT OF EDUCATION and the IOWA STATE APPROVING AUTHORITY,** | |
| **Defendants.** | |

## RULING ON REQUESTS TO VACATE JUDGMENT

A contested hearing on the plaintiffs' requests to vacate judgment was held before the undersigned on April 11, 2018 as previously scheduled.  Upon consideration of the arguments made at the hearing, and having reviewed the files and being otherwise duly advised in the premises, the court rules as follows:

This court has been directed by the Iowa Supreme Court following a limited remand ordered in Case No. 17-1357 to address outstanding requests to vacate judgment filed by the plaintiffs in these consolidated proceedings.  The procedural backdrop for

E-FILED 2018 APR 26 3:41 PM POLK - CLERK OF DISTRICT COURT

what has been presented to the district court is uncommon, yet straightforward.  The initial dispute between these parties began as a judicial review proceeding in Polk County Case No. EQCE 80188, in which the plaintiffs challenged the Iowa Department of Education's interpretation of federal statutes governing eligibility for G.I. Bill benefits.  In 2017, the case rotated to the docket of Judge Eliza Ovrom; while on her docket, Judge Ovrom denied the plaintiff's motion to compel further discovery and ultimately dismissed the petition for judicial review in a ruling dated July 17, 2017.  A subsequent motion to reconsider was denied on August 17, 2017, and an appeal was taken on August 29.  A stay order was entered in the Iowa Supreme Court following the posting of an appeal bond.

After EQCE 80188 was dismissed, but prior to the notice of appeal, the plaintiffs filed a second action in Case No. CVCV 54775 pursuant to Iowa Rule of Civil Procedure 1.1012(6), seeking to vacate the ruling of July 17 in EQCE 80188 on the grounds of newly discovered evidence.  That case was transferred to the docket of Judge Ovrom, as she had been the presiding judge in EQCE 80188.  During a hearing on October 12, 2017 on the defendants' motion to dismiss, Judge Ovrom addressed what she described as a "housekeeping matter" due to the fact that the Attorney General's office was of record in both cases; namely, that her husband is the Consumer Advocate with the Iowa Utility Board by virtue of an appointment made by the Attorney General and that her son is an assistant attorney general working with the Child Support Recovery Unit in Council Bluffs.  She acknowledged that she ordinarily brings these issues up on every case in which the Attorney General's office is of record, but neglected to do so in EQCE 80188.[1]  She gave counsel for the plaintiffs an opportunity to confer with their clients; plaintiffs'

---

[1] A formal disclosure order was also entered that same date in both cases.

E-FILED 2018 APR 26 3:41 PM POLK - CLERK OF DISTRICT COURT

response was to authorize a formal motion for her recusal in CVCV 54775, which was granted and the undersigned was assigned the case.

At about the same time, plaintiffs/appellants filed a motion to vacate judgment, or in the alternative for limited remand, in the appeal from EQCE 80188 (S.Ct. Case No. 17-1357). This request was premised on the argument that Judge Ovrom's failure to timely disclose her family's connections to the Attorney General's office, while inadvertent, necessitated the vacation of her prior rulings in EQCE 80188, either by the supreme court directly, or by the district court upon limited remand. The Iowa Supreme Court elected to provide for a limited remand to allow the undersigned (having been assigned the case in the interim) to address the issues raised in the motion to vacate filed in the appeal of EQCE 80188. At the supreme court's suggestion, this court then consolidated EQCE 80188 and CVCV 54775 so that both requests could be heard in a single hearing. While the separate requests seek the vacation of Judge Ovrom's rulings on different grounds, the court believes that the issues raised in the motion filed in EQCE 80188 are dispositive of the matter.

One of the grounds for vacating a final order or judgment is "[i]rregularity… practiced in obtaining it." IowaR.Civ.P. 1.1012(2).[2] A party seeking relief under this rule must establish the following: 1) the party has suffered an adverse ruling because of some action or inaction on the part of the court or some court personnel; 2) the action or inaction must be contrary to some prescribed rule, mode of procedure or court practice

---

[2] The defendants make the argument that the procedure available under this rule is not applicable to a judicial review proceeding undertaken pursuant to Iowa Code chapter 17A. The court disagrees. Unless a rule of civil procedure is inconsistent with any provision of the Iowa Administrative Procedure Act, those rules "shall be applicable to proceedings for judicial review of agency action brought under that Act." IowaR.Civ.P. 1.1601. The defendants have not established that allowing a party on judicial review to challenge the viability of a final order entered in a judicial review proceeding based on a purported irregularity is in any manner inconsistent with the procedure set out in Iowa Code chapter 17A. Accordingly, the rules governing vacation of a final order or judgment should apply.

3

E-FILED 2018 APR 26 3:41 PM POLK - CLERK OF DISTRICT COURT

involving the conduct of a lawsuit; and 3) the complaining party must not have caused, been a party to, or had prior knowledge of the breach of the rule, the mode of procedure or the practice of the court.  Costello v. McFadden, 553 N.W.2d 607, 612 (Iowa 1996) (predecessor to rule 1.1012) (citations omitted).  It is well-settled that a trial judge's failure to identify a potential conflict of interest that deprives a party of the opportunity to make a timely request that the judge recuse herself constitutes the type of "action or inaction" that could constitute an irregularity under the rule.  Forsmark v. State, 349 N.W.2d 763, 768 (Iowa 1984) (denial of petition to vacate judgment reversed).

The defendants appear to concede this point, but argue that Judge Ovrom's ruling dismissing the judicial review petition was not entered "because of" her failure to disclose the aforementioned conflict.  The gist of this argument is that her ruling was correct and unaffected by her participation in the proceeding.  The flaw in this position is that it ignores the fact that an attempt to vacate an order or judgment based on irregularity does not concern itself with the merits of the challenged ruling, but rather with whether a proceeding has been conducted in a fair and orderly manner.  Costello, 553 N.W.2d at 612; In re Marriage of Cutler, 588 N.W.2d 425, 429 (Iowa 1999).  The issue is not whether Judge Ovrom's ruling was correct or incorrect, but rather whether she should have been in a position to rule at all.  As in many ethical issues, it is the appearance of a lack of impartiality that is at the heart of Judge Ovrom's failure to disclose a potential conflict.  Had she done so, and assuming she would have recused herself at an earlier stage of the proceedings in response to a similar request, she would logically have not been the author of any such rulings.  This connection between her action or inaction and the rulings at issue herein satisfies the "because of" element of a claimed irregularity.

E-FILED  2018 APR 26 3:41 PM POLK - CLERK OF DISTRICT COURT

The first and second prongs of the test to establish an "irregularity" have been met.

There is no indication that the plaintiffs had any involvement or prior knowledge in Judge

Ovrom's failure to disclose her conflict; accordingly, that factor has also been

established.  As a result, this court concludes that Judge Ovrom's prior rulings in EQCE

80188 were the result of an irregularity and should be vacated pursuant to rule

1.1012(2).[3]

     **IT IS THEREFORE ORDERED** that the plaintiffs' motion to vacate judgment

in EQCE 80188 is granted, pursuant to Iowa Rule of Civil Procedure 1.1012(2).  Further

proceedings shall be scheduled in that matter, once procedendo issues in the pending

appeal of that case.  The prior order consolidating EQCE 80188 and CVCV 54775 is set

aside

     **IT IS FURTHER ORDERED** that the petition to vacate judgment in CVCV

54775 filed pursuant to Iowa Rule of Civil Procedure 1.1012(6) is dismissed with

prejudice, at the cost of the plaintiffs.

In addition to all other persons entitled to a copy of this order, the Clerk shall provide a
copy to the following:


Clerk of Supreme Court
Iowa Judicial Branch Building
1111 East Court Avenue
Des Moines, IA 50319
     Re:  Case No. 17-1357

Hon. Eliza Ovrom

---

[3] As noted earlier, this moots the issue of whether those rulings should be vacated on the grounds of newly discovered evidence.  Whether the plaintiffs will be able to utilize what they claim is new evidence, either at the agency level or before the court, is for another day.

5

E-FILED  2018 APR 26 3:41 PM POLK - CLERK OF DISTRICT COURT



State of Iowa Courts

**Type:**  OTHER ORDER

**Case Number**  **Case Title**
EQCE080188  CV54775**ASHFORD UNIVERSITY ET AL VS IOWA DEPT OF ED ET AL

So Ordered

Michael D. Huppert, District Court Judge,
Fifth Judicial District of Iowa

Electronically signed on 2018-04-26 15:41:19    page 6 of 6

**Appx1321**



**CSAAVE**
CALIFORNIA STATE APPROVING AGENCY FOR VETERANS EDUCATION

1227 O Street, Suite 625, Sacramento, CA 95814 ✦ tel 916.503.8317 ✦ fax 916.653.1035 ✦ email csaaveinfo@calvet.ca.gov

December 14, 2018

Stephanie Cowsert, AVP Financial Aid Policy and Compliance
Ashford University
8620 Spectrum Center Boulevard
San Diego, CA 92123

**TITLE 38 - NOTICE OF INTENTION NOT TO ACT**

Dear Ms. Cowsert:

The California State Approving Agency for Veterans Education (CSAAVE), a division of the California Department of Veteran Affairs (CalVet) gives notice of our **INTENTION NOT TO ACT** on the Initial Application for Approval of Accredited Proprietary Institutions for the training of veterans and other eligible persons at Ashford University (Ashford), 8620 Spectrum Boulevard, San Diego, CA 92123.

On November 20, 2018, CSAAVE received an application from Ashford University. After a summary review of Ashford's application, CSAAVE has determined that the application includes information that exceeds CSAAVE's scope of approval authority.  Specifically, Section 6 of CSAAVE's application requires the applicant institution to disclose any and all material facts regarding regulatory actions pertaining to the current status of the institution, its owners or ownership structure, policies, branch locations and educational programs, certificates, diplomas and degrees. Ashford's supplemental materials lists pending lawsuits alleging Ashford used erroneous, deceptive or misleading advertising practices relating to the enrollment of veterans.  In such matters, under 38 U.S. Code §3696, these allegations shall be referred to the Federal Trade Commission by the Secretary of the U.S. Department of Veterans Affairs.

Because of the pending lawsuits related to Ashford's advertising practices, CSAAVE cannot act on Ashford's Initial Application for Approval of Accredited Proprietary Institutions.

Under 38 CFR §21.4250(b)(3), Ashford University may request approval by the U.S. Department of Veterans Affairs.

Should you have any questions regarding CSAAVE's notice, please contact me at Shane.Ferrebee@calvet.ca.gov.

Sincerely,

Shane R. Ferrebee
Senior Education Specialist

1



# COMMONWEALTH *of* VIRGINIA

### *Office of the Governor*

Carlos L. Hopkins
Secretary of Veterans
and Defense Affairs

January 14, 2019

The Honorable Robert Wilkie
Secretary, U.S. Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, DC  20420

### RE: <u>USDVA/Virginia SAA Cooperative Agreement FY19-23</u>

Dear Secretary Wilkie:

Thank you for your October 12, 2018 letter to Governor Ralph Northam and for your continuing support of Virginia veterans.  Indeed, I would like to thank you for your Agency's most recent examples of supporting Virginia's veterans—the October approval of $67M in matching funds for the construction of two new veterans homes in Virginia, and the record $10.2M grant for expansion of the Albert G. Horton, Jr. Memorial Veterans Cemetery in Suffolk. And thank you in advance for the honor of being invited to be one of only five states to execute the USDVA/SAMHSA Governor's Challenge to Prevent Veterans Suicide, which Virginia sees not merely as an opportunity, but as part of a continuing obligation to take care of our veterans.

Since the receipt of your letter, my staff  and I have been in communication with Undersecretary Paul Lawrence and his team to address the concerns raised in your letter and to outline Virginia's concerns with the amended language in the Cooperative Agreement. The purpose of this letter is to advise you that Virginia will, under protest, execute the proposed FY19-23 Cooperative Agreement between the U.S. Department of Veterans Affairs (USDVA) and Virginia's State Approving Agency (SAA).  Virginia's SAA is among the best in the nation. As Virginia's "Defenders of the G.I. Bill," the Virginia SAA has, since 1947, done the hard work of certifying, supervising, and auditing what are now more than 1,100 facilities, routinely earning USDVA's highest rating of "Satisfactory."  Virginia also continues to maintain leadership in the National Association of State Approving Agencies (NASAA), including serving as NASAA Vice President and serving on several committees.

The Virginia SAA team is "all in" with ensuring that the $817 million in G.I. Bill funds expended in Virginia annually results in useful educational opportunities for our veterans and their dependents.  Given the recent November 2018 General Accounting Office report highlighting your Education Office's resource constraints, we do not believe the veterans in our

The Honorable Robert Wilkie
January 14, 2019
Page 2

Commonwealth would be best served by allowing USDVA to take over the SAA duties in Virginia, particularly with no guarantees that the current SAA team will be retained. Taking into consideration the best interests of Virginia's veterans, Virginia will execute the FY19 Cooperative Agreement, but we continue to have many concerns and will work with your staff for future appropriate amendments.

First, we do not disagree that your agency has controlling authority over payment related matters, or that the USDVA has authority to issue regulations implementing the provisions of Title 38. We strongly disagree, however, that USDVA has sole authority over the approval matters worked by SAAs. Instead, we believe that the explicit authorities Congress granted the SAAs in Title 38 indicate that Congress intended USDVA and the SAAs to have co-existing authorities regarding approvals—with SAAs having primary authority for non-federal approvals and the USDVA's authority for such approvals commencing only when there is no SAA to act on the matter—thus resulting in a statutory limit on USDVA's authority. Indeed, as you may be aware, there are several instances in Chapter 36 of Title 38 where Congress expresses its intention that USDVA and SAAs act "in conjunction with," "in coordination with" and "in cooperation with" each other. Nowhere in Title 38 is there any language to the effect that the SAAs must act in accordance with USDVA direction. Yet, the wording referenced above imposes such a requirement, contrary to clear congressional intent.

Second, the key issue involved in our objection is not whether federal law or regulations preempt state law; nor is the key issue one of interpreting or applying state law to the approval process (setting aside the matter of there being provisions in Title 38 that authorize or require us to ensure programs comply with state law). Instead, the key issue here is the USDVA usurping the clear authority that Congress granted the SAAs to interpret and apply federal law in the form of the approval provisions of Title 38. Indeed 38 USC §3673(a) directs the USDVA, as well as SAAs, to "take cognizance of the fact that definite duties, functions, and responsibilities are conferred upon the Secretary and each State approving agency" under Chapters 34, 35, and 36 of Title 38, US Code. An inextricable requirement for anyone to carry out their duties, functions, and responsibilities is to make decisions and to interpret applicable laws. We believe Congress has clearly given the SAAs the authority to interpret the statutory provisions that set out our duties, functions, and responsibilities. In saying this, we do not mean that the USDVA has no authority to arrive at and to express its own interpretations; and we do not mean that SAAs should not consult USDVA regarding issues they encounter. What we are saying is that VA interpretations are not necessarily controlling simply because the statutes in question are federal. Our position is that when it comes to approvals worked by SAAs, Congress intended that SAAs have autonomy in the process, including an independent, inherent authority to interpret the applicable statutes. The legislative history of the various GI Bills, as amended through the years, and the SAA-related statutes discussed in that legislative history, supports our position.

The Honorable Robert Wilkie
January 14, 2019
Page 3

Third, for an SAA to comply with what it believes to be an incorrect VA interpretation of the statutes but with which the SAA is obligated to comply, is a violation of 38 USC § 3682 which provides that, with one limited exception, "no department, agency, or officer of the United States, in carrying out [Title 38, chapter 36] shall exercise any supervision or control, whatsoever, over any State approving agency...." . The one exception to this prohibition is the USDVA's authorities set out in 38 USC 3674A regarding VA participation in SAA evaluations and in the development of SAA personnel qualifications and performance standards. We note that even these USDVA authorities are to be conducted "in conjunction" or in cooperation with the SAAs, or upon request of the SAAs.

Fourth, the <u>Splane v. West</u> case, cited by former Director Robert Worley in his August 23, 2018 letter to the SAA Directors supports our argument that federal agency interpretations are not necessarily controlling. In the <u>Splane</u> case, the interpretations may not be in accordance with the law. We are aware of the general proposition that federal agency interpretations of the federal laws they implement are generally to be given deference. Deference is not warranted when the interpretation is arbitrary, capricious, an abuse of discretion or power, or otherwise not in accordance with the law. Deference also is not warranted when the interpretation is in the form of agency guidance or policies not issued pursuant to notice-and-comment procedures, especially on matters where the federal agency has no specialized expertise. It is important, therefore, that an SAA have the ability to contest USDVA interpretations. Imposing a blanket requirement in the cooperative agreement that the SAA comply with USDVA interpretations robs the SAA of this ability. A blanket USDVA requirement that SAAs comply with USDVA interpretations is "not in accordance with the law."

Finally, as the <u>Fidelity</u> case cited in Worley's letter points out, it is a "well-settled rule that all parts of a statute, if possible, are to be given effect," and not rendered meaningless. We believe that your agency's position on this matter constitutes a wrongful "reading out" of the statutory provisions that set out the SAA's co-equal authorities and autonomy in the approval process, and we request that you reconsider the wording in question and issue an amendment to strike it from the cooperative agreement or revise the wording to that which ultimately was used in the FY17-18 contracts, or similar language.

Virginia has a positive and productive working relationship with your agency, and history has illustrated that we will consider and at times seek out your guidance when making approval decisions. However, final approval decisions remain the responsibility of each individual State Approving Agency, and the states maintain sole liability for the ramifications of any decisions that we make, including any legal actions against Virginia for Virginia's decisions. I ask that USDVA work with Virginia to find language agreeable to both Virginia and VA and amend the Cooperative Agreement at the end of the base year ending September 30, 2019. All

The Honorable Robert Wilkie
January 14, 2019
Page 4

SAAs in the Nation objected to USDVA's deletion of the phrase "will take into account" from the FY19 Agreement, as reflected in NASAA's 26 July 2018 memorandum to your agency. At the end of the day, we all are interested in serving our veterans.

Thank you for the opportunity to outline Virginia's concerns. Virginia shares a wonderful partnership with USDVA which we value greatly. This great partnership is essential to us continuing to provide the highest levels of care to our veterans and their families. We look forward to continuing to work with you.

Sincerely,

Carlos L. Hopkins

cc:    Under Secretary Paul Lawrence, Veterans Benefits Administration
       Charmain Bogue, Acting Director, Education Service, USDVA

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2019, I caused the

foregoing Joint Appendix to be electronically filed with the Clerk of the

Court for the U.S. Court of Appeals for the Federal Circuit using the

CM/ECF System, which will send notice of such filing to all registered

CM/ECF users.

/s/ Carter G. Phillips
Carter G. Phillips